1   VICTOR J. CASTELLUCCI (CA SBN 203303)
    vcastellucci@kenyon.com
2   KENYON & KENYON LLP
    333 W. San Carlos Street, Suite 600
3   San Jose, CA  95110-2731
    Telephone: (408) 975-7988
4   Facsimile: (408) 975-7501

5   *Attorney for Third-Party Plaintiff*
    *Sony Electronics Inc.*
6

7              **UNITED STATES DISTRICT COURT**

8            **NORTHERN  DISTRICT OF CALIFORNIA**

9               **SAN FRANCISCO DIVISION**

10

11  PHOENIX SOLUTIONS, INC.,
    a California corporation,
12
                                        Case No.: C07-02112 (MHP)
13            Plaintiff,
          v.
14                                      The Honorable Marilyn Hall Patel
    SONY ELECTRONICS INC.,
15  a Delaware corporation,

16            Defendant.               **DECLARATION OF JAIME A. SIEGEL
                                       IN SUPPORT OF THIRD-PARTY
17  SONY ELECTRONICS INC.,             PLAINTIFF SONY ELECTRONICS
    a Delaware corporation,            INC.'S MOTION FOR CONTENTIONS
18                                     AND FOR SUMMARY JUDGMENT
            Third-Party Plaintiff,
19        v.                           **PUBLIC VERSION**

20  INTERVOICE, INC.,
    a Texas corporation
21
            Third-Party Defendant.
22

23

24

25

26

27

28
                                              C07-02112 (MHP)

I, Jaime A. Siegel, declare as follows:

1.      I submit this declaration in support of Sony Electronics Inc.'s ("SEL") Motion for Contentions and for Summary Judgment.  I have personal knowledge of the matters stated herein and, if called upon to do so, could and would give competent testimony thereto in a court of law.

2.      I am the Senior IP Counsel, Intellectual Property Department, for Sony Corporation of America, and among other duties, I represent SEL in intellectual property matters.

3.      In June 2006, Phoenix Solutions, Inc. ("Phoenix") informed SEL that the interactive voice response ("IVR") system it was using in connection with SEL's telephone customer support line infringed four Phoenix patents.  SEL had purchased the IVR system from Edify Corporation ("Edify"), which was subsequently acquired by Intervoice, Inc. ("Intervoice").

4.      By letter dated August 9, 2006, SEL notified Intervoice of Phoenix's claims.  A true and correct copy of this letter is attached hereto as Exhibit A.  SEL and Intervoice engaged in a series of communications in which SEL asked Intervoice to defend it against Phoenix's patent infringement claims and offered to allow Intervoice to control the conduct of the matter with Phoenix.  However, no agreement was reached.

5.      On December 13, 2006, Phoenix sued SEL, alleging infringement of its four patents.

6.      On December 14, 2006, by e-mail, SEL notified Intervoice about the filing of the Phoenix lawsuit.  In an e-mail on December 15, 2006, a telephone conversation on December 17, 2006, and a letter dated January 22, 2007, SEL again requested that Intervoice indemnify and defend SEL.  A true and correct copy of the e-mails and the letter are attached hereto as Exhibit B, C and D, respectively.

7.      Intervoice repeatedly refused to accept its obligations to defend and indemnify SEL.  By letter of January 11, 2007, Intervoice explicitly refused to take over SEL's defense.  A

C07-02112 (MHP)

DECLARATION OF JAIME A. SIEGEL IN SUPPORT OF SONY ELECTRONICS INC.'S
MOTION FOR CONTENTIONS AND FOR SUMMARY JUDGMENT

1  true and correct copy of this letter is attached hereto as Exhibit E.

2     8.     From experience, SEL knew that taking the four-patent Phoenix infringement case

3  to trial could cost millions of dollars, with no assurance of victory.  For significantly less than the

4  anticipated cost of litigation, SEL settled Phoenix's claims in November 2007 by agreeing to pay

5  Phoenix ███████████████████████████████████████████████

6

7  ████████████████████████

8     9.     As a direct result of the terms of the settlement with Phoenix, SEL disabled the

9  IVR aspect of the phone system, and reverted to using a classic touch tone interface.

10 Consequently, SEL has not incurred any running royalties to Phoenix since the transition to the

11 touch tone interface.

12    10.    Up to the point when SEL settled with Phoenix, SEL had spent approximately

13 ███████ in legal fees, costs and other expenses relating to the defense of the suit against

14 Phoenix.

15    I declare under penalty of perjury under the laws of the United States of America that the

16 foregoing is true and correct.

17

18

19 Executed on September  5 , 2008

20

21                                                Jaime A. Siegel

22

23

24

25

26

27

28
- 3 -

# Exhibit A

# SONY

Sony America, Intellectual Property Department

-7415    E-MAIL: jaime.siegel@am.sony.com

August 9, 2006

Mr. Robert Ritchey
Chief Executive Officer and President
Intervoice, Inc.
17811 Waterview Parkway
Dallas, TX 75252

       **Re:**    ***Request for Indemnification***

Dear Mr. Ritchey:

I am writing to inform you of a claim of patent infringement that Sony Electronics Inc. has received from Phoenix Solutions, Inc. Phoenix Solutions, Inc., represented by the Trojan Law Offices, is accusing Sony Electronics Inc.'s MAXX system of infringing several of its United States Patents.

We are formally notifying you of a request for defense and indemnification pursuant at least to Paragraph 5.1 of the Software License and Maintenance Purchase Agreement dated March 29, 1996 between Edify and Sony Electronics Inc. along with the RIDER TO THE EDIFY SOFTWARE LICENSE AND MANTENANCE AGREEMENT. It is our understanding that Intervoice has recently acquired Edify Corporation and therefore should have assumed its contractual obligations. For your reference, I am enclosing copies of correspondence we have received from the Trojan Law Office.

Please contact me at your earliest convenience to discuss Intervoice's obligations in handling this matter for Sony Electronics Inc.

Very truly yours

Jaime A. Siegel
Senior IP Counsel
Intellectual Property Department
Sony Corporation of America

JAS:jmm

Exhibit B

**Tse, Elizabeth S.**

---

| | |
|---|---|
| **From:** | Siegel, Jaime [Jaime.Siegel@am.sony.com] |
| **Sent:** | Thursday, December 14, 2006 4:28 PM |
| **To:** | Tannenbaum, David |
| **Subject:** | Phoenix Solutions |
| **Attachments:** | PhoenixSolutions.pdf |

David,

Attached, please find a copy of the complaint filed by Phoenix.  I look forward to speaking with you on Monday.

Regards,

Jaime


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Jaime A. Siegel
Sr. IP Counsel
Sony Corporation of America
1 Sony Drive
MD 2F-2
Park Ridge, NJ 07675

(201)930-7415
Fax: (201)930-6854
e-mail: jaime.siegel@am.sony.com
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

9/4/2008

1  R. Joseph Trojan  CA Bar No. 137,068
   trojan@trojanlawoffices.com
2  Olga Kay          CA Bar No. 227,722
   kay@trojanlawoffices.com
3  TROJAN LAW OFFICES
4  9250 Wilshire Blvd., Suite 325
   Beverly Hills, CA  90212
5  Telephone:  310-777-8399
6  Facsimile:   310-777-8348

7
   Attorneys for Plaintiff,
8  PHOENIX SOLUTIONS, INC.

9

FILED
CLERK, U.S. DISTRICT COURT

DEC 1 3 2006

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

CASE NO. CV 06 7916 PA(FMCx)

|  |  |
|---|---|
| PHOENIX SOLUTIONS, INC, a California corporation | |
| Plaintiff, | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR INFRINGEMENT OF U.S. PATENT NOS. 6,615,172, 6,633,846, 6,665,640 AND 7,050,977 UNDER 35 U.S.C. § 271** |
| v. | |
| SONY ELECTRONICS, INC., a Delaware corporation, | |
| Defendant | |
| | **DEMAND FOR JURY TRIAL** |

Plaintiff, PHOENIX SOLUTIONS, INC., (hereinafter "Plaintiff" or "Phoenix") hereby complains against Defendant, SONY ELECTRONICS, INC., (hereinafter "Defendant" or "Sony") as follows:

1.    This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 271 *et seq.*

-1-

# I. **THE PARTIES**

2.     Plaintiff is a corporation organized and existing under the laws of the State of California with a place of business at 634 Georgia Avenue, Palo Alto California, 94306.

3.     Upon information and belief, Defendant is a corporation organized and existing under the laws of the State of Delaware with a place of business at 16450 West Bernardo Street, San Diego, California, 92127.

# II. **FACTUAL BACKGROUND**

4.     Plaintiff is the owner by assignment of the U.S. Patent Nos. 6,615,172, 6,633,846, 6,665,640 and 7,050,977 (hereinafter "Patents in Suit") directed to the technology generally known as "speech recognition software".

5.     Plaintiff, Phoenix Solutions, Inc., was established to develop the next generation of speech recognition systems that gives users the ability to have a verbal conversation with a computer about a subject on which the computer had been educated and receive intelligent responses.  One of the first applications of this new technology is its use in telephone customer service lines where the customer calls a computer and a "virtual customer service agent" answers the line and interacts with a caller using "natural speech" akin to a live person.

6.     Phoenix Solutions encompasses the life's work of a pioneer in the field of computer-based speech recognition, Dr. Ian Bennett.  Originally from Jamaica, Dr. Bennett graduated with honors from the University of British Columbia and went on to receive his Master's and Doctorate degrees in electrical engineering from Stanford University.   While at Stanford, Dr. Bennett developed the first practical processor for speech compression.   Dr. Bennett founded Phoenix Solutions, dedicated to developing a natural language query system (NLQS). Under Dr. Bennett's guidance, Phoenix developed algorithms based on statistics and semantics that allow a computer to take in natural speech questions and return

TROJAN LAW OFFICES

1   answers that also sound like natural speech.   Dr. Bennett developed various
2   applications for his technology, including interactive conversational systems and
3   interactive guides, intelligent tutoring systems and form-filling systems.    Dr.
4   Bennett is currently at the National Science Foundation serving as a Program
5   Director within the Directorate of Engineering, Division of Industrial Innovation &
6   Partnerships.

7        7.      Defendant Sony is in the business of manufacturing, selling and
8   distributing various consumer electronic products.  In connection with its electronic
9   products, Defendant (or others on its behalf) established and operates a number of
10  customer support lines, which can be reached for example at (800) 476-6972, (800)
11  222-7669, (866) 909-7669 or (877) 760-7669.  The customer support lines employ
12  a natural language interactive voice response (IVR) system that includes a virtual
13  person identified as "Maxx" (hereinafter interchangeably referred to as "IVR
14  system" or just "Maxx").

15       8.      The plaintiff's natural language IVR system is superior to conventional
16  touch-tone systems because the caller can simply talk to the system using normal
17  language.   In contrast, touch-tone IVR systems require the caller to select from a
18  series of choices using the telephone keypad.  IVR touch tone systems are also less
19  efficient since they require callers to listen to an entire menu of choices and wade
20  through a series of menus before providing a response to the caller.   Consumers
21  hang up at a greater rate in frustration when they become lost in a maze of menus.

22       9.      The alternative to touch tone menu systems is to employ live
23  operators.   When compared to live operators, the Plaintiff's IVR system is much
24  more cost effective.   Based upon industry data, the Defendant's use of its current
25  IVR system has allowed it to save more than 80% of the cost it previously incurred
26  in providing its customer support line.

27

28                                           -3-

10. On information and belief, Defendant operates its IVR system using a combination of telephony hardware and computer server hardware that is specifically adapted by Defendant (and/or others on its behalf) to respond to spoken questions from callers. Such hardware uses supporting software that includes speech recognition and natural language engines used to understand the spoken questions from callers.

11. On information and belief, the speech recognition engine used by Defendant is divided, so that some of the speech-processing operations for understanding callers are performed on telephony hardware, while other speech processing operations are performed on separate server hardware. On information and belief, Defendant (or others on its behalf) configure such telephony hardware and server hardware to customize what speech processing operations will take place on such respective hardware systems to maximize certain characteristics of the system, and to regulate how speech data from the callers is transferred between such systems.

12. When customers place calls to Defendant's IVR system, they can speak in a conversational style as if they were speaking to a real person. Defendant's dialogue agent, Maxx, responds to the caller's questions in real-time by providing answers in natural speech. Maxx has been taught natural language dialogues based on information concerning Defendant's products provided by the Defendant and incorporated into the software. In this manner, Maxx can understand questions posed by customers concerning Defendant's products, and give relevant answers.

13. Defendant's IVR system uses a speech recognition engine to break down the customer's questions into specific words understood by the IVR system. For example, the speech recognition engine could determine that the user has said, "I have a problem with my camcorder." Defendant controls precisely what specific

-4-

words its IVR system will understand as part of its vocabulary by configuring (and/or having others configure on its behalf) certain aspects of such telephony hardware and/or server computing system.

14.  Defendant's IVR system employs a natural language engine to understand the meaning of the specific words spoken by its customers.  The IVR system, by understanding the meaning and context of specific words, may determine that the customer is asking about a service related problem. Defendant controls precisely what interpretation the IVR system should give to various words spoken by its customers by configuring (and/or having others configure on its behalf) certain aspects of the telephony hardware and/or server computing system.

15.  Based on determining the most likely meaning of the customer's specific question, Maxx responds with a specific answer.  The answer may take the form of an audible response from Maxx, or it may take the form of the IVR system routing the caller to a live person working within the appropriate department (such as the service department in the example above).  In all instances, Defendant alone controls precisely what responses and actions Maxx takes, and has configured (and/or has had others configure on its behalf) certain aspects of such telephony hardware and/or server computing system to provide such desired responses or actions.

16.  On information and belief, Defendant also has configured and controls (and/or has had others configure and/or control on its behalf) other aspects of Maxx's overall behavior, including among other things, the gender, apparent age, speech rate, prosody, style and rate of response.  These parameters are selected and controlled by Defendant to increase customer satisfaction with the customer support line.

17.  On information and belief, Defendant (and/or others on its behalf) designed, customized and selected the personality exhibited by Maxx as well.  This

1  electronic persona was specifically selected to be appealing and attractive to

2  Defendant's customers and to maximize utilization of the IVR system by such

3  customers.

4       18.    On information and belief, the information used by Defendant's IVR

5  system (including e.g., the grammar used, specific questions to which it can

6  respond, the interpretation of questions, and the answers to be given to customers)

7  were derived by Defendant (and/or others on its behalf) from collecting and

8  studying data from thousands of actual calls made to Defendant's customer support

9  line. Based on this, Plaintiff believes that Defendant (and/or others on its behalf)

10  has trained the IVR system with Defendant's call center data that is unique to

11  Defendant's business. As a result, the IVR system is tailored to respond with

12  appropriate answers to questions posed by Defendant's customer base.

13       19.    Accordingly, Defendant's IVR system has been trained with customer

14  content data that is not available from a third party. This Defendant-specific

15  content data is critically important to the behavior and operation of Defendant's

16  IVR system, since without it the IVR system would not know what words to

17  recognize from a caller's utterance, how to determine the meaning of such words,

18  and/or what answer to give to the caller as a response.

19       20.    Defendant's IVR system, as noted above, is a combination of

20  components, including at least some hardware, software and content which it

21  obtained from third parties (third party components). Nonetheless, and on

22  information and belief, Defendant is responsible for and has caused such third party

23  components to be combined, adapted and configured (including with such

24  Defendant-specific content) in accordance with specific performance, content

25  requirements and scenarios of the Defendant's customer support operations.

26       21.    Consequently, and on further information and belief, the current

27  structure and operation of Defendant's IVR system is a result of content

28                          -6-

TROJAN LAW OFFICES

contributions, performance specifications and operational specifications provided by Defendant and configuration/modification of third party components made by Defendant (and/or others on its behalf). Such third party components – as currently available from such third parties - by themselves would not be sufficient to implement Defendant's IVR system without Defendant's cooperation, contributions and actions, including Defendant's provision of the Defendant-specific content data.

22. On or about June 2, 2006, Plaintiff sent a letter to Defendant, stating that Maxx is covered by one or more claims of the Patents in Suit. In that letter, Plaintiff included a number of supporting materials to explain its position on the patents, and further extended an offer to license the Patents in Suit to Defendant. On or about June 14, 2006, Defendant responded, informing Plaintiff that Maxx is a software product of an unrelated third party and suggesting that Plaintiff contact such third party. On or about June 22, 2006, Plaintiff responded to Defendant, stating that Maxx is in fact a combination of the third party software and other essential hardware, all of which has been assembled together and adapted for Defendant's custom use. Defendant was informed by Plaintiff, that the assembly and customization of all of the necessary components of Maxx are infringing the Plaintiff's patent, not the third party software by itself. In spite of a face-to-face meeting between the parties, Defendant failed to respond in any meaningful way to the charge of infringement, necessitating the filing of this action.

## III. JURISDICTION AND VENUE

23. This Court has original subject matter jurisdiction over Plaintiff's patent infringement claim pursuant to 28 U.S.C. §1338(a).

24. This Court has personal jurisdiction over Defendant because Defendant has continuous and systematic contacts with the Central District of

-7-

California by virtue of, among others, selling goods and operating the telephonic customer support line within the District.

25.    Venue properly lies in the Central District of California pursuant to 28 U.S.C. §1391 and §1400, because the acts complained of herein have been committed and are being committed in this Judicial District and Defendant is subject to personal jurisdiction within the District.

## IV.  FIRST COUNT FOR INFRINGEMENT
## OF UNITED STATES PATENT NO. 6,615,172

26.    Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 25.

27.    Plaintiff is the assignee of the U.S. Patent No. 6,615,172 ("the '172 Patent"), attached hereto as Exhibit 1, entitled "Intelligent Query Engine for Processing Voice-based Queries.  Plaintiff owns and has standing to sue and recover damages for infringement under the '172 Patent.

28.    Defendant Sony has violated Plaintiff's patent rights by operating its IVR system covered by at least one claim of the '172 Patent.  Sony's infringing IVR system has not been manufactured or authorized in any manner by the Plaintiff.

29.    As a legal consequence of Defendant's infringement, Plaintiff is entitled to compensation for no less than a reasonable royalty, as well as pre-judgment interest and a preliminary and permanent injunction.  In the event that the Court does not exercise its equitable discretion to award a permanent injunction, then Plaintiff is entitled to a judgment that includes a sum equal to the total projected value of a compulsory license for the life of the patent at a royalty rate to be determined by a jury, discounted to present value, to compensate Plaintiff for future infringement.

1    30.    The infringement of the '172 Patent has been willful in that Defendant

2  is fully aware of Plaintiff's rights, yet has continued to use the infringing IVR

3  system in violation of the patent laws without a good faith basis for believing it

4  does not infringe or the patent is invalid.    This intentional refusal to respect

5  Plaintiff's patent rights constitutes willful infringement under 35 U.S.C. §§ 284 and

6  285, thereby entitling Plaintiff to treble damages and attorneys' fees.

7              **V.  SECOND COUNT FOR INFRINGEMENT OF**

8                 **UNITED STATES PATENT NO. 6,633,846**

9    31.    Plaintiff hereby incorporates by reference the allegations contained in

10  paragraphs 1 through 25.

11    32.    Plaintiff is the assignee of the U.S. Patent No. 6,633,846 ("the '846

12  Patent"), attached hereto as Exhibit 2, entitled "Distributed Real Time Speech

13  Recognition System". Plaintiff owns and has standing to sue and recover damages

14  for infringement under the '846 Patent.

15    33.    Defendant has violated Plaintiff's patent rights by operating an IVR

16  system covered by at least one claim of the '846 Patent. Sony's infringing IVR

17  system has not been manufactured or authorized in any manner by the Plaintiff.

18    34.    As a legal consequence of Defendant's infringement, Plaintiff is

19  entitled to compensation for no less than a reasonable royalty, as well as pre-

20  judgment interest and a preliminary and permanent injunction. In the event that the

21  Court does not exercise its equitable discretion to award a permanent injunction,

22  then Plaintiff is entitled to a judgment that includes a sum equal to the total

23  projected value of a compulsory license for the life of the patent at a royalty rate to

24  be determined by a jury, discounted to present value, to compensate Plaintiff for

25  future infringement.

26    35.    The infringement of the '846 Patent has been willful in that Defendant

27  is fully aware of Plaintiff's rights, yet has continued to use the infringing IVR

28                              -9-

TROJAN LAW OFFICES

1  system in violation of the patent laws without a good faith basis for believing it

2  does not infringe or the patent is invalid.   This intentional refusal to respect

3  Plaintiff's patent rights constitutes willful infringement under 35 U.S.C. §§ 284 and

4  285, thereby entitling Plaintiff to treble damages and attorneys' fees.

## VI.  THIRD COUNT FOR INFRINGEMENT
## OF UNITED STATES PATENT NO. 6,665,640

7      36.    Plaintiff hereby incorporates by reference the allegations contained in

8  paragraphs 1 through 25.

9      37.    Plaintiff is the assignee of the U.S. Patent No. 6,665,640 ("the '640

10  Patent"), attached hereto as Exhibit 3, entitled "Interactive Speech Based

11  Learning/Training System Formulating Search Queries Based on Natural Language

12  Parsing of Recognized User Queries".   Plaintiff owns and has standing to sue and

13  recover damages for infringement under the '640 Patent.

14      38.    Defendant has violated Plaintiff's patent rights by operating an IVR

15  system covered by at least one claim of the '640 Patent.   Sony's infringing IVR

16  system has not been manufactured or authorized in any manner by the Plaintiff.

17      39.    As a legal consequence of Defendant's infringement, Plaintiff is

18  entitled to compensation for no less than a reasonable royalty, as well as pre-

19  judgment interest and a preliminary and permanent injunction.   In the event that the

20  Court does not exercise its equitable discretion to award a permanent injunction,

21  then Plaintiff is entitled to a judgment that includes a sum equal to the total

22  projected value of a compulsory license for the life of the patent at a royalty rate to

23  be determined by a jury, discounted to present value, to compensate Plaintiff for

24  future infringement.

25      40.    The infringement of the '640 Patent has been willful in that Defendant

26  is fully aware of Plaintiff's rights, yet has continued to use the infringing IVR

27  system in violation of the patent laws without a good faith basis for believing it

28                                          -10-

TROJAN LAW OFFICES

does not infringe or the patent is invalid.   This intentional refusal to respect Plaintiff's patent rights constitutes willful infringement under 35 U.S.C. §§ 284 and 285, thereby entitling Plaintiff to treble damages and attorneys' fees.

## VII. FOURTH COUNT FOR INFRINGEMENT
## OF UNITED STATES PATENT NO. 7,050,977

41.   Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 25.

42.   Plaintiff is the assignee of the U.S. Patent No. 7,050,977 ("the '977 Patent"), attached hereto as Exhibit 4, entitled "Speech-Enabled Server for Internet Website and Method".   Plaintiff owns and has standing to sue and recover damages for infringement under the '977 Patent.

43.   Defendant has violated Plaintiff's patent rights by operating an IVR system covered by at least one claim of the '977 Patent.   Sony's infringing IVR system has not been manufactured or authorized in any manner by the Plaintiff.

44.   As a legal consequence of Defendant's infringement, Plaintiff is entitled to compensation for no less than a reasonable royalty, as well as pre-judgment interest and a preliminary and permanent injunction.   In the event that the Court does not exercise its equitable discretion to award a permanent injunction, then Plaintiff is entitled to a judgment that includes a sum equal to the total projected value of a compulsory license for the life of the patent at a royalty rate to be determined by a jury, discounted to present value, to compensate Plaintiff for future infringement.

45.   The infringement of the '977 Patent has been willful in that Defendant is fully aware of Plaintiff's rights, yet has continued to use the infringing IVR system in violation of the patent laws without a good faith basis for believing it does not infringe or the patent is invalid.   This intentional refusal to respect

TROJAN LAW OFFICES

1    Plaintiff's patent rights constitutes willful infringement under 35 U.S.C. §§ 284 and

2    285, thereby entitling Plaintiff to treble damages and attorneys' fees.

3                    **VIII. DEMAND FOR JURY TRIAL**

4         46.    Plaintiff hereby exercises its right to a jury trial under the Seventh

5    Amendment to the United States Constitution and demands a jury trial in

6    accordance therewith.

7                    **IX. PRAYER FOR RELIEF**

8         WHEREFORE, Plaintiff prays for:

9         a.    A preliminary injunction, barring Defendant and all of its agents,

10   officers, attorneys, successors, and assigns from manufacturing, importing or using

11   any system (or components thereof) that infringes upon the '172, the '846, the '640

12   and the '977 Patents:

13        b.    A permanent injunction, barring Defendant and all of its agents,

14   officers, successors and assigns from manufacturing, importing or using any system

15   (or components thereof) that infringes upon the '172, the '846, the '640 and the

16   '977 Patents;

17        c.    That Defendant be required to account to Plaintiff for all savings and

18   revenues realized by Defendant and any subsidiary and any partner company of

19   Defendant from the use of IVR systems infringing the '172, the '846, the '640 and

20   the '977 Patents;

21        d.    A judgment for compensatory damages, not less than reasonable

22   royalty, suffered as a result of the patent infringement as well as prejudgment

23   interest;

24        e    A judgment including a sum equal to a the total projected value of a

25   compulsory license for the life of the patents, discounted to present value, to

26   compensate Plaintiff for future infringement in the event that a permanent

27   injunction is not awarded;

28                                          -12-

TROJAN LAW OFFICES

f.      Treble damages and attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285 for willful infringement of the '172, the '846, the '640 and the '977 Patents by Defendant; and,

g.  Any and all other relief that the Court deems proper.

Respectfully submitted,

TROJAN LAW OFFICES
by

Date: December ___, 2006

R. Joseph Trojan
Attorney for Plaintiff,
PHOENIX SOLUTIONS, INC.

-13-

Exhibit C

**Tse, Elizabeth S.**

---

**From:**     Tannenbaum, David [dtannenbaum@fulbright.com]
**Sent:**      Friday, December 15, 2006 9:47 AM
**To:**         Siegel, Jaime
**Subject:** Re: Phoenix Solutions

Likewise.

----- Original Message -----
From: Siegel, Jaime <Jaime.Siegel@am.sony.com>
To: Tannenbaum, David
Sent: Fri Dec 15 08:34:25 2006
Subject: Phoenix Solutions

David,

Attached, please find a complete set of the court documents that were served on Sony Electronics on December 13.

So that we can have a substantive discussion on Monday, I would like to discuss:

Intervoice's indemnification of SEL;
Intervoice's providing defense counsel for SEL;
Intervoice's intervention in the litigation.

I look forward to speaking to you on Monday.

Regards,

Jaime


*******************************************
Jaime A. Siegel
Sr. IP Counsel
Sony Corporation of America
1 Sony Drive
MD 2F-2
Park Ridge, NJ 07675

(201)930-7415
Fax: (201)930-6854
e-mail: jaime.siegel@am.sony.com
*******************************************

9/4/2008

# Exhibit D

# SONY

**Sony America,** Intellectual Property Department
1 Sony Drive, Park Ridge, New Jersey 07656-8003
Telephone (201) 930-1000 Fax (201) 930-6854 Sender's Direct Telephone (201) 930-**7415**   **E-MAIL: jaime.siegel@am.sony.com**

## VIA E-MAIL AND FEDEX

January 22, 2007

Dan Davison, Esq.
Fulbright & Jaworski L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, TX 75201-2784

**Re:** ***Phoenix Solutions, Inc. v. Sony Electronics Inc.,* Civil Action No. CV-06-7916**

Dear Dan,

Thank you for your letter of January 19, 2007. As I have explained on several phone conversations with you, David Tannenbaum and Dean Howell since receiving David's January 11, 2007 letter, Sony is in complete disagreement with Intervoice's position regarding our request for indemnification and defense with regard to the claims of Phoenix Solutions. We also disagree that Intervoice is honoring its contractual obligations to Sony in connection with the claims of Phoenix Solutions.

Whether Intervoice is obligated to Sony under the UCC or an agreement between Edify and Sony, it is clear to us that Intervoice must indemnify and defend Sony against the claims of Phoenix Solutions since Edify planned and provided the IVR system at issue. As I have stated before, we request that Intervoice fully defend Sony against Phoenix's claims against our IVR system by providing acceptable counsel to represent Sony in the litigation, and to agree to indemnify Sony for any damages, whether unlimited under the UCC, or to the extent limited under any applicable agreement between Sony and Intervoice or Edify. We appreciate your offer that Intervoice will simply intervene in the pending litigation, but that is not sufficient.

If Intervoice refuses to provide the requested defense and indemnity, we will have no option but to pursue remedies through other avenues.

**SONY**

*Dan Davison, Esq.*
*January 22, 2007*
*Page 2 of 2*

Please confirm that Intervoice intends to file papers to intervene by January 31, 2007 in the above referenced litigation as soon as possible, so that we can avoid unnecessary expenses that would be incurred preparing papers to implead Intervoice.   Please have your counsel contact John Flock at Kenyon & Kenyon (212-908-6490; jflock@kenyon.com) to coordinate or have any questions answered.

Sincerely,

Jaime A. Siegel
Senior IP Counsel
Intellectual Property Department
Sony Corporation of America

JAS:jmm

# Exhibit E

# HIGHLY CONFIDENTIAL DOCUMENT

# FILED UNDER SEAL