DAN D. DAVISON (*pro hac vice*)
MICHAEL B. REGITZ (*pro hac vice*)
**FULBRIGHT & JAWORSKI L.L.P.**
2200 Ross Avenue, Suite 2800
Dallas, Texas  75201-2784
Telephone: (214) 855-8000
Facsimile:   (214) 855-8200
E-Mail:        ddavison@fulbright.com
E-Mail:        mregitz@fulbright.com

JOHN A. O'MALLEY (Bar No. 101181)
JOSHUA D. LICHTMAN (Bar No. 176143)
BRANDON C. FERNALD (Bar No. 222429)
**FULBRIGHT & JAWORSKI L.L.P.**
555 South Flower Street
Forty-First Floor
Los Angeles, California  90071
Telephone:  (213) 892-9200
Facsimile:   (213) 892-9494
E-Mail:        jomalley@fulbright.com
E-Mail:        jlichtman@fulbright.com
E-Mail:        bfernald@fulbright.com

Attorneys for Third-Party Defendant,
INTERVOICE, INC.

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA (SAN FRANCISCO DIVISION)

| | |
|---|---|
| PHOENIX SOLUTIONS, INC., a California corporation,<br><br>             Plaintiff,<br><br>       v.<br><br>SONY ELECTRONICS INC., a Delaware corporation,<br><br>             Defendant.<br>_____<br>SONY ELECTRONICS INC., a Delaware corporation,<br><br>             Third-Party Plaintiff and<br>             Counter-Defendant,<br><br>       v.<br><br>INTERVOICE, INC., a Texas corporation,<br><br>             Third-Party Defendant and<br>             Counter-Claimant.<br>_____ | Case No. C07-2112 MHP<br><br>**INTERVOICE, INC.'S OPPOSITION TO SONY ELECTRONICS INC.'S MOTION FOR CONTENTIONS AND FOR SUMMARY JUDGMENT** |

DOCUMENT PREPARED ON RECYCLED PAPER

65209963.6

## TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................................... 1

II.  CORRECTION OF FACTS FROM SONY'S "FACTUAL BACKGROUND"................ 2

III.  UNDISPUTED FACTS RELATING TO THE 2005 FREE SOFTWARE
UPGRADE ...................................................................................................................... 5

IV.  ARGUMENTS AND AUTHORITIES ........................................................................... 6

    A.  Summary Judgment Standard .................................................................... 6

    B.  The Free Software Upgrade was Provided Under a Service Contract,
Cannot Be Considered an Independent "Sale of Goods," and Cannot be the
Basis for a U.C.C. § 2-312(3) Claim. ....................................................... 6

    C.  Under the Correct Construction of "Rightful Claim," Intervoice - not Sony
– is Entitled to Summary Judgment. .......................................................... 8

        1.  Sony's Proposed Definition for "Rightful Claim" Seeks to Confuse
Two Independent Subsections of U.C.C. § 2-312...................................... 9

        2.  Under Any Reasonable Construction of "Rightful Claim," the
Patent Infringement Claims Must Be Compared to Goods at Issue. ........ 10

    D.  Sony Cannot Transform Phoenix's Actual Infringement Claim Asserted
Against Sony into a "Rightful Claim" Against Intervoice. .................. 13

        1.  The Sony MAXX System Does Not Satisfy a Single Limitation of
the Claims-at-Issue. ................................................................................. 14

        2.  Sony's Justified Positions that the Sony MAXX System Does Not
Infringe the Phoenix Patents and that the Phoenix Patents are
Invalid Prove that No "Rightful Claim" Was Made. ............................... 21

    E.  The Sony Customized IVR System is Expressly Excluded from Any
Warranty under U.C.C. § 2-312(2). ........................................................ 22

    F.  Sony is Not Entitled to Recover the Settlement Amount or Attorneys' Fees
and Expenses............................................................................................ 24

V.  CONCLUSION .............................................................................................................. 25

DOCUMENT PREPARED
ON RECYCLED PAPER

# TABLE OF AUTHORITIES

## FEDERAL CASES

*84 Lumber Co. v. MRK Techs., Ltd.*, 145 F. Supp. 2d 675 (W.D. Pa. 2001)…....…....11-13

*Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224 (9th Cir. 1988)....................................4

*Anderson v. Liberty Lobby*, 477 U.S. 242 (1986) ...............................................................6

*Big Lots Stores, Inc. v. Luv N' Care*, Case No. 2:04-810, 2007 U.S. Dist. LEXIS 23150 (S.D. Ohio Mar. 29, 2007) ...................................................................... 10

*Cover v. Hydramatic Packing Co., Inc.*, 83 F.3d 1390 (Fed. Cir. 1996) ................... 12, 13

*Celotex Corp. v. Catrett*, 477 U.S. 317(1986)……………………………….……………..6

*Frank Arnold Contractors, Inc. v. Vilsmeier Auction Co.*, 806 F.2d 462 (3d Cir. 1986) ....................................................................................................................... 10

*Jack Frost Labs., Inc. v. Pfizer, Inc.,* Case No. 92 Civ. 9264, 1995 U.S. Dist. LEXIS 6413 (S.D.N.Y. May 12, 1995) ...................................................................... 23

*Keller v. United States*, 58 F.3d 1194 (7th Cir. 1995). .......................................................4

*Matthews v. Xerox Corp.*, 319 F. Supp. 2d 1166 (S.D. Cal. 2004)....................................4

*RRX Indus., Inc. v. Lab-Con, Inc.*, 772 F.2d 543 (9th Cir. 1985) ......................................7

*TK Power v. Textron*, 433 F. Supp. 1058 (N.D. Cal. 2006)........................................6, 7, 8

## UNPUBLISHED CASES

*SEB S.A. v. Sunbeam Corp.*, Case No. 02-80527-CIV, slip op. (S.D. Fla. Feb. 19, 2003), *rev'd*, 148 Fed. Appx. 774 (11th Cir. 2005)................................................ 22, 23

## STATUTES

35 U.S.C. § 285 ................................................................................................................ 25

U.C.C. § 2-102 ...................................................................................................................7

U.C.C. § 2-106 ...................................................................................................................7

U.C.C. § 2-312 ...........................................................................6, 8-10, 12, 21, 22, 24, 25

U.C.C. § 2-607 ...................................................................................................................8

**LOCAL COURT RULES**

Civil L.R. 3-4 ................................................................................................................. 22

Patent L.R. 3-3 ................................................................................................................ 3

Patent L.R. 3-4 ............................................................................................................. 3, 4

<u>**SUMMARY JUDGMENT EVIDENCE**</u>

Intervoice submits the following summary judgment evidence in support of its Opposition to Sony Electronics, Inc.'s Contention and Motion for Summary Judgment, all of which is specifically incorporated herein:

|   |   |   |   |
|---|---|---|---|
| A. | Declaration of Rita LaLoge ("LaLoge Decl.") | | |
| | Edify Quotation for Support Services for Sony Electronics (July 2005 through June 2006) | | Exhibit 1 to LaLoge Decl. |
| | Invoices for Maintenance and Support Services to Sony Electronics (June 2005 through June 2006) | | Exhibit 2 to LaLoge Decl. |
| | Edify Customer Support Handbook (2005) | | Exhibit 3 to LaLoge Decl. |
| | Free Software Upgrade Request from Sony Electronics (October 28, 2008) | | Exhibit 4 to LaLoge Decl. |
| B. | Declaration of Wayne Brummet ("Brummet Decl.") | | |
| | E-mails from Edify to Phil Cohen of Sony Electronics attaching Edify version 9.5 licenses | | Exhibit 1 to Brummet Decl. |
| C. | Declaration of Dan Davison ("Davison Decl.") | | |
| | Phoenix Solutions, Inc.'s Original Complaint | | Exhibit 1 to Davison Decl. |
| | Intervoice's Preliminary Invalidity Contentions | | Exhibit 2 to Davison Decl. |
| | Sony's Preliminary Contentions | | Exhibit 3 to Davison Decl. |
| | Well Fargo's Motion and Brief in Support of its Motion for Summary Judgment filed September 4, 2008 (certified copy) | | Exhibit 4 to Davison Decl. |
| | July 2, 2007 email from counsel for Phoenix to counsel for Intervoice | | Exhibit 5 to Davison Decl. |
| | January 24, 2007 Letter from Davison to Siegel | | Exhibit 6 to Davison Decl. |
| | February 7, 2007 Letter from Davison to Flock | | Exhibit 7 to Davison Decl. |

DOCUMENT PREPARED
ON RECYCLED PAPER

INTERVOICE, INC.'S OPPOSITION TO SONY'S MOTION SUMMARY JUDGMENT

## I.    INTRODUCTION

Sony Electronics, Inc. ("Sony") finally admits that the only currently plead factual basis for its claim against Intervoice, Inc. ("Intervoice") – a 2002 tender of software - is legally unsustainable:

> With respect to Edify software Version 8.0, Edify did not deliver a satisfactory product to SEL until mid-2003.  (Christopher Decl., ¶ 6).  However, even in this circumstance, the earliest of the Phoenix patents in suit did not issue until after SEL accepted Edify's tender.  ***Therefore, SEL does not contend that this sale breached Edify's warranty against infringement.***

(Sony's Brief in Support of Motion for Summary Judgment ("Sony's MSJ Brief"), Docket Entry No. 144-2, at 10 n.4) (emphasis supplied).

One day prior to the filing of Sony's Motion for Summary Judgment, Intervoice moved the Court to grant it summary judgment on this very issue, for this very reason.  (*See* Intervoice's Brief in Support of Motion for Summary Judgment, Docket Entry No. 137, at 9-12).  A day later, Sony filed a motion to amend its complaint in the hopes of delaying an inevitable adverse summary judgment by alleging an entirely new factual basis for its claim.  (*See* Sony's Motion for Leave to Amend, Docket Entry No. 141-1).  Intervoice opposes Sony's Motion to Amend because, among other reasons, Sony fails to allege facts sufficient to sustain its breach of warranty claim.

The sole pending claim in this case is a breach of warranty claim asserted by Sony against Intervoice.  When Sony originally filed its breach of warranty claim against Intervoice, Sony's exclusive basis for its claim was the software purchased pursuant to a 2001 Purchase Order ("the Software-at-Issue").  Sony's First Amended Complaint did not change the factual basis of the claim.  Sony now seeks to assert a fundamentally different basis for its claim, a free software upgrade it received in 2005 ("Free Software Upgrade").  (Sony's MSJ Brief, Docket Entry No. 144-2, at 10).  Under the current pleadings, Sony sought to implicate a combination of Edify software and Nuance software as the basis of Phoenix's rightful claim.  With the proposed amendment, Sony now seeks to rely solely on the Edify 9.5 software as the basis for such a claim.

However, the new factual basis for Sony's breach of warranty claim is as legally untenable as the old factual basis for Sony's breach of warranty claim.

Sony's present Motion for Summary Judgment should be denied because, as established in Intervoice's Brief in Support of its Motion for Summary Judgment ("Intervoice's MSJ Brief"), Sony's claim against Intervoice is legally unsustainable as a matter of law even if the Court were to assume as true Sony's newly-asserted factual allegations. (*See* Intervoice's MSJ Brief, Docket Entry No. 137). Alternatively, at the very least, genuine issues of material fact exist that preclude summary judgment being granted in Sony's favor. Intervoice further requests the ability to conduct additional discovery pursuant to Federal Rule of Civil Procedure 56(f) prior to the time the Court rules on Sony's current Motion for Summary Judgment.

## II.    CORRECTION OF FACTS FROM SONY'S "FACTUAL BACKGROUND"

Sony has mischaracterized some of the facts within its "Factual Background."

First, Sony indicates that in 2001 Sony and Edify entered into a single contract which provided for an interactive voice system and technical support. (Sony's MSJ Brief, Docket Entry No. 144-2, at 2). However, as detailed in Intervoice's MSJ Brief and supporting declarations by Kelley Wilcher (Docket Entry No. 138) and Ken Waln (Docket Entry No. 139), Sony and Edify entered into two separate contracts, one for the purchase of software and a second for professional services that customized the software to meet Sony's specifications. Each contract was separately quoted, executed, and performed. With respect to annual maintenance and support services, these were included as a separate line item on the 2001 Purchase Order and these "services" were purchased for a single 12-month period. Edify maintenance and support services coverage provided for free software upgrades and other benefits. (*See* LaLoge Decl. at Ex. 3, Edify Customer Support Handbook, at 1).

Second, Sony argues that Edify stopped supporting the version of Edify software used by Sony, which required Sony to "acquire" a newer version of Edify software. (Sony's MSJ Brief, Docket Entry No. 144-2, at 2). Tellingly, and fatally, Sony does not allege that it purchased the software that it now claims forms the basis of Phoenix's rightful claim. Sony has produced no

summary judgment evidence of a purchase order for the upgrade.   Sony has produced no summary judgment evidence of payment for the upgrade.  In sum, Sony has failed to produce any summary judgment evidence of such a purchase which, by definition, is fatal to its only cause of action.  The reason Sony does not allege or establish the prerequisite sale is because there was no sale of the software upgrade.  Instead, Sony neglects to inform the Court that Sony was covered under a maintenance and support **services** agreement and the software upgrade at issue was **free**, certainly not a "sale of goods" governed by the Uniform Commercial Code.

Third, Sony mischaracterizes the allegedly infringing system as "the **system** that Edify/Intervoice had provided." (*Id.* at 3 (emphasis added)).  However, as detailed in Intervoice's MSJ Brief and as admitted by Sony in paragraph 20 of its Answer to Phoenix's complaint, Edify only provided Sony with software, which Sony used in conjunction with other hardware and software it purchased from other third parties to create the Sony MAXX System.  As Phoenix Solutions, Inc.'s ("Phoenix") claim of infringement against Sony is the only relevant claim in this case, a single paragraph from Phoenix's original complaint summarizes the accused system best:

> "On or about June 2, 2006, Plaintiff sent a letter to [Sony], stating that Maxx is covered by one or more of the Patents in Suit.  In that letter, Plaintiff included a number of supporting materials to explain its position on the patents, and further extended an offer to license the Patents in Suit to Defendant.  On or about June 14, 2006, [Sony] responded, informing Plaintiff that Maxx is a software product of an unrelated third party and suggesting that Plaintiff contact such third party.  **On or about June 22, 2006, Plaintiff responded to [Sony], stating that Maxx is in fact a combination of the third party software and other essential hardware, all of which has been assembled together and adapted for [Sony's] custom use. [Sony] was informed by Plaintiff, that the assembly and customization of all necessary components of Maxx are infringing the Plaintiff's patent, not the third party software by itself.**"

(Davison Decl. at Ex. 1, Phoenix Original Complaint, at 7, ¶ 22) (emphasis supplied).   In its Answer, Sony admitted that Phoenix had sent (and it had received) the June 2 and June 22 letters outlining Phoenix's claims.  (*See* paragraph 22 of Sony's Answer.)

Fourth, on August 4, 2008, Intervoice served Sony with complete Preliminary Invalidity Contentions and Document Production Accompanying Invalidity Contentions, which were fully compliant with Patent L.R. 3-3 and 3-4, - not "September 4, 2008, one day before this brief was

due," as argued by Sony.  (*Compare* Davison Decl. at Ex. 2, Intervoice's Preliminary Invalidity Contentions *with* Sony's MSJ Brief, Docket Entry No. 144-2, at 3 n.3).  Intervoice's September 4, 2008 document production merely supplemented previous document production with additional documents that Intervoice identified in responding to a subpoena issued in *Phoenix Solutions, Inc. v. Wells Fargo Bank, N.A.*, Case No. 08-CV-863 MHP.  Documents such as these, however, clearly indicate that the Phoenix patents are invalid, which seems to be a commonly-held belief. (*See* Davison Decl. at Ex. 4, Well Fargo's Motion for Summary Judgment, Case No. 08-CV-863 MHP, Docket Entry No. 51).  Intervoice will continue to meet its obligations to produce supplemental materials wherever necessary.[1]

Finally, Sony's characterization of the stipulation entered into by Intervoice and Sony as "self-serving" neither creates a fact issue nor support's Sony's Motion for Summary Judgment. (Sony's MSJ Brief, Docket Entry No. 144-2, at 4).  Although the stipulation merely memorialized what Phoenix had been telling Sony since June 2006 (*see* Davison Decl. at Ex. 1, Phoenix Original Complaint, at 7, ¶ 22), the stipulation is a legally binding admission made by Phoenix. *See Matthews v. Xerox Corp.*, 319 F. Supp. 2d 1166, 1171 (S.D. Cal. 2004) (citing *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988)); *see also Keller v. United States*, 58 F.3d 1194, 1999 n.8 (7th Cir. 1995) (stipulations by a party or its counsel are judicial admissions, binding on the party making them).  Phoenix stipulated that the Edify "non-customized/non-configured software" sold to Sony was not alleged to infringe and did not infringe the Phoenix patents.  Thus, Phoenix was unconditionally bound to that position.  It is unclear how Phoenix would be "self-served" by making judicial stipulations of non-infringement.  Indeed, Phoenix's stipulation is a statement against interest that prevents Phoenix from enforcing its patents against Sony for Edify's non-customized/non-configured software products.

---

[1]  Sony did not serve any requests for discovery on Intervoice until August 28, 2008 so supplementation to this point has been pursuant to Federal Rule of Civil Procedure 26 and with respect to the Document Production Accompanying Invalidity Contentions pursuant to Patent L.R. 3-4.

III.   **UNDISPUTED FACTS RELATING TO THE 2005 FREE SOFTWARE UPGRADE**

The following are undisputed facts relating to the Free Software Upgrade that Sony now asserts is the basis for its breach of warranty claim.

1.   Sony does not allege in its current or proposed amended complaint that it bought the 2005 software update.

2.   Sony has presented no summary judgment evidence that it bought the "2005 software update" as required under any UCC claim.

3.   On or about May 27, 2005, Sony was given a quotation for "Support Services" relating to the Edify software that Sony incorporated into the Sony IVR System for the time period beginning July 1, 2005 and ending June 30, 2006.  (LaLoge Decl. at Ex. 1, Edify Support Services Quotation).

4.   Sony purchased the maintenance and support services coverage on or about June 30, 2005.  (LaLoge Decl. at Ex. 2, Sony Maintenance and Support Services Invoices).

5.   Edify customers that purchased maintenance and support services coverage were entitled to free software upgrades during 2005.  (LaLoge Decl. at Ex. 3, Edify Customer Support Handbook; Brummet Decl. at 2, ¶ 4).

6.   On or about October 28, 2005, Sony made an online upgrade request to upgrade its Edify software to Edify version 9.5 at no cost to Sony.  (LaLoge Decl. at Ex. 4, Free Software Upgrade Request from Sony).

7.   On October 28, 2005, Edify sent the Edify version 9.5 software licenses relating to the Free Software Upgrades to Sony representative Phil Cohen. (Brummet Decl. at Ex. 1, Free Software Upgrade License E-mails).  This is the "acquisition" of the software referenced in paragraph 9 of David Christopher's September 5, 2008 Declaration.

8.   No upgrade of Nuance speech recognition software resulted from Sony's October 2005 online upgrade request that resulted in the free software upgrade of Edify software to version 9.5.  (Brummet Decl. at 2, ¶ 3).

9.   Under the proposed amendment, Sony (based on its new reliance only on the 2005 Free Software update) now seeks to rely on the Edify version 9.5 software and ***not*** a combination of the Edify software and Nuance speech recognition software for the basis of Phoenix's rightful claim.

10.  Phoenix never made a claim that the Free Software Upgrade infringed its patents. (Davison Decl. at Ex. 1, Phoenix Original Complaint).

11.  There is no competent summary judgment evidence that the 2005 Free Software Upgrade was the basis of Phoenix's claims against Sony.  Indeed, as discussed below the summary judgment evidence demonstrates to the contrary.

IV.     **ARGUMENTS AND AUTHORITIES**

        A.      **Summary Judgment Standard**

        The Court is well aware of the applicable summary judgment standards and Intervoice will not discuss them in any length unless the Court so desires.  It is sufficient to simply note that a motion for summary judgment shall be granted if the court determines that "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue of material fact exists when the evidence is such that a reasonable finder of fact could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby,* 477 U.S. 242, 250 (1986).  A moving party who bears the burden of proof at trial is not entitled to summary judgment when the evidence indicates that an issue of material fact exists.  *Celotex*, 477 U.S. at 325.

        B.      **The Free Software Upgrade was Provided Under a Service Contract, Cannot Be Considered an Independent "Sale of Goods," and Cannot be the Basis for a U.C.C. § 2-312(3) Claim.**

        Sony attempts to assert an entirely new legal theory in which the basis for its breach of warranty claim is now the Free Software Upgrade that it "acquired" in 2005.   (*See* Sony's MSJ Brief, Docket Entry No. 144-2, at 10).  It is surprising that Sony abandoned the only pleaded basis for its U.C.C. claim (i.e., the Edify software purchased pursuant to the 2001 Purchase Order) in a footnote.  (*Id.* at 10 n.4).  The software listed on the 2001 Purchase Order has been the sole basis of Sony's claim since the case was filed, was alleged to be the sole basis for why it was sued by Phoenix, was the sole basis for its claim that a rightful claim had been made, and was alleged to be the sole basis for why it settled with Phoenix, and for Sony to dispose of the only pleaded basis for its claim in a mere footnote of a summary judgment motion that is supported by an entirely new set of facts (to which leave to amend has not yet even been granted) is indicative of the strength of Sony's case, or lack thereof.

        Because (1) the U.C.C. does not apply to transactions involving services and (2) a free software upgrade is unquestionably not a sale of goods, the Free Software Upgrade now the focus of Sony's claim cannot, as a matter of law, give rise to a U.C.C. § 2-312 claim.  *See TK Power v.*

DOCUMENT PREPARED ON RECYCLED PAPER

1   *Textron*, 433 F. Supp. 2d 1058, 1061 (N.D. Cal. 2006).  The U.C.C. is explicit in its definition of

2   "sale" as "the passing of title from the seller to the buyer **for a price**."  U.C.C. § 2-106 (emphasis

3   added).  There is no summary judgment evidence that Sony bought the Free Software Upgrade

4   (nor can there be) for the simple reason that it was provided free of charge.

5          Sony now seeks leave to assert that the 2005 Free Software Upgrade is the basis for its

6   breach of warranty claim against Intervoice, the basis of Phoenix's earlier claim against Sony,

7   and the reason why Sony settled with Phoenix.  However, Sony offers no evidence or argument to

8   support its contention that a U.C.C. sale arises from a "free" software upgrade for which no

9   "price" was paid.  (*See* LaLoge Decl. at Ex. 3, Edify Customer Support Handbook; Brummet

10   Decl. at 2, ¶ 4).  *See* U.C.C. § 2-106.  In fact, Sony offers no documentary evidence at all relating

11   to the 2005 Free Software Upgrade or supporting any contention that this upgrade is even capable

12   of supporting Sony's breach of warranty claim.

13          The reason that the upgrade was free was because the original Software-at-Issue was

14   covered under a series of maintenance and services support agreements that were available to

15   Sony on an annual basis.[2]  (*See* LaLoge Decl. at Exs. 1-4).  Additionally, a mere software upgrade

16   does not change the characterization of the original 2001 contract or constitute a new sale

17   because, as discussed in Intervoice's motion, a system upgrade that is incidental to the original

18   contract does not alter the basic transaction.  *See, e.g., TK Power*, 433 F. Supp. 2d at 1061 (N.D.

19   Cal. 2006) (citing *RRX Indus. v. Lab-Con, Inc.*, 772 F.2d 543, 546 (9th Cir. 1985)).

20          Sony appears to argue that the Free Software Upgrade cannot be considered incidental

21   because Sony had to obtain new hardware from some other third party. (Sony's MSJ Brief,

22   Docket Entry No. 144-2, at 10-11).  However, Sony cites to no authority supporting this

23   proposition, nor is Intervoice able to devise any rational basis why this would have any effect on

24   the original transaction.  Of course, this assumes that Sony's assertion regarding the new

25   hardware is accurate, which Intervoice is not willing to concede, nor can it considering that Sony

26   has refused to present any Sony representative for deposition in this case despite repeated

27

28

---

[2] Intervoice notes that agreements for services are not governed by the U.C.C.  *See* U.C.C. § 2-102.

1    requests for months.  In any event, the Free Software Upgrade cannot be the independent basis for

2    a U.C.C. § 2-312 breach of warranty claim because (1) the relevant 2005 transaction was not a

3    "sale of goods" as a matter of law, (2) there was no price paid for the Free Software Upgrade, (3)

4    the transaction only involved a free software upgrade that was incidental to the original

5    transaction, and (4) the Free Software Upgrade was made pursuant to a services agreement not

6    governed by the Uniform Commercial Code.  *See* U.C.C. § 2-106; *see also TK Power v. Textron*,

7    433 F. Supp. 2d at 1061.[3]

8         Finally, Sony ignores that the Phoenix patents are directed towards speech recognition

9    technology systems.  The Edify software is a basic system software and does not perform any

10   speech recognition without software obtained from Nuance and hardware obtained by Sony from

11   third parties.  No Nuance speech recognition software was upgraded with the free Edify upgrade

12   to version 9.5.  (Brummet Decl. at 2, ¶ 3).  Therefore, Sony's reliance on the upgrade of Edify

13   software to version 9.5 in 2005 is misplaced as the Edify software does not provide speech

14   recognition functionality as required by the Phoenix patents and cannot possibly form the basis of

15   a rightful claim.

16

17        **C.     Under the Correct Construction of "Rightful Claim," Intervoice - not Sony –
           is Entitled to Summary Judgment.**

18        U.C.C. § 2-312 requires that "goods be delivered free of the rightful claim of any third

19   person by way of infringement . . . ."  (U.C.C. § 2-312(3)).  Thus, Sony must show that Phoenix

20   made a rightful claim before Intervoice can be held liable for breach of a warranty.  *See* U.C.C. §

21   2-607(4) ("The burden is on the buyer to establish any breach with respect to the goods

22   accepted.").  Thus, contrary to Sony's contention that the buyer of goods may seek recovery from

23   the seller if a third party merely bases an infringement suit on those goods, Sony must in fact

24   show that Phoenix's claim was rightful before Intervoice will be liable for breach.  (*See, e.g.,*

25   Sony's MSJ Brief, at 8).  Naturally, the rightful claim must be based solely on goods provided by

26   _____

[3] Even if the Court does not agree that Sony's claim should be dismissed as a matter of law and
27   the Court allows Sony to plead its new theory of the case, to the extent that the Free Software
     Upgrade is even capable of supporting Sony's claim, summary judgment in Sony's favor would
28   be improper since genuine issues of material fact are present with respect to consideration of the
     Free Software Upgrade as a basis for a U.C.C. breach of warranty claim.

DOCUMENT PREPARED
ON RECYCLED PAPER

1   Edify.  Further, whether or not the claim was "rightful" as opposed to merely asserted (which

2   Intervoice denies) is a material question of fact.

3
        **1.   Sony's Proposed Definition for "Rightful Claim" Seeks to Confuse**
4       **Two Independent Subsections of U.C.C. § 2-312.**

5           Sony relentlessly attempts to reduce a "rightful claim" to the level of "a substantial

6   cloud," "a substantial shadow," "a colorable claim," or "a claim not frivolous on its face."

7   (Sony's MSJ Brief, Docket Entry No. 144-2, at 12-14).  However, Sony is reciting the standard

8   for U.C.C. § 2-312(1), not the standard set for U.C.C. § 2-312(3), which stands on its own.  The

9   Official Comments of § 312 do in fact refer to "colorable claim" and "substantial shadow," but

10  does so only in the context of breach of warranty of title, not breach of warranty against

11  infringement.  The Official Comments that specifically address U.C.C. § 2-312(3) conspicuously

12  omits all of the phrases Sony has tried to substitute in the place of the "rightful claim," though the

13  U.C.C. drafters clearly meant for a different standard to be applied, or else they would have used

14  one of those phrases instead.

15          Sony argument that "[b]oth UCC § 2-312(1) and (3) use the word 'rightful' in defining the

16  warranty misses the point and is deceptive." (Sony's MSJ Brief, Docket Entry No. 144-2, at 13).

17  U.C.C. § 2-312(3) requires "the goods be delivered free of the rightful claim of any third person .

18  . . ."  U.C.C. § 2-312(1), however, uses "rightful" in a completely different context, providing that

19  "the title conveyed shall be good and its transfer rightful . . . ."  (U.C.C. § 2-312(1)).  Since the

20  seller in a title transaction under U.C.C. § 2-312(1) would know if the transfer was rightful, a

21  lower threshold is justified and a "colorful claim" or a claim that casts a "substantial shadow"

22  over title may be appropriate.   However, in the context of third-party claims of patent

23  infringement, such as is present under U.C.C. § 2-312(3), the seller has no control over claims

24  that a third-party claim may attempt to assert.  Therefore, confusing the standard to measure a

25  breach of warranty of title (which is reasonably within the seller's control) with a breach of

26  warranty against infringement (which is in a third party's control) is inappropriate since the

27  warranties seek to address two completely different situations.

28

1    In an attempt to support the "substantial shadow" standard, Sony cites *Frank Arnold*

2  *Contractors, Inc. v. Vilsmeier Auction Co., Inc.*.  806 F.2d 462, 464 (3d Cir. 1986).  However,

3  *Frank Arnold Contractors* involved the purchase of construction equipment that was encumbered

4  by a security interest – not a warranty against infringement.  *Id.*  The case is a simple application

5  of the U.C.C. § 2-312(1) warranty of title and is completely irrelevant to a U.C.C. § 2-313(3)

6  warranty against patent infringement analysis.  Sony is confusing apples and oranges.

7    Sony next contends that all aspects of the breach of warranty of title analysis should be

8  incorporated in the breach of warranty against infringement analysis as if these were not distinct

9  subsections of the statute with different limitations and objectives.  However, in support of this

10  contention, Sony again merely cites to *Frank Arnold Contractors*, a warranty of title case, and

11  *Big Lots Stores, Inc. v. Luv N' Care*, Case No. 2:04-810, 2007 U.S. Dist. LEXIS 23150 (S.D.

12  Ohio Mar. 29, 2007), which also provides little support for Sony's position.   While *Big Lots*

13  quotes both subsections (1) and (3) of Ohio's version of U.C.C. § 2-312, the case does not

14  compare the sections, nor does it seem to suggest that subsection (3) is a subset of subsection (1).

15  The case held on summary judgment that the "infringing products were not delivered free of the

16  rightful claim," but only after concluding that direct infringement had occurred.[4]  *Big Lots,* 2007

17  U.S. Dist. LEXIS 23150 at *28.  Thus, the court imparted a reasonable and rigorous legal effect

18  to the "rightful claim" and declined to apply any of the watered-down standards that Sony

19  encourages this Court to adopt.

20

21  **2.    Under Any Reasonable Construction of "Rightful Claim," the Patent Infringement Claims Must Be Compared to Goods at Issue.**

22    It is undisputed that Phoenix did not assert a rightful claim against any Intervoice software

23  provided to Sony.  (*See* Intervoice's MSJ Brief, Docket Entry No. 137, at 15-24).  And although

24  Sony has unquestionably established that it was sued by Phoenix, Sony has also unquestionably

25  failed to provide any documentary support relating to the Free Software Upgrade and certainly

26  has provided none to suggest that Phoenix asserted a rightful claim against the Free Software

---

27  [4] Intervoice would agree that if, as in *Big Lots*, the Court concluded that the software it supplied

28  actually infringed the Phoenix patents that a "rightful claim" would have been made.  Sony, however, wants to avoid the factual findings and jump straight to the conclusion.

1  Upgrade. (Sony's MSJ Brief, Docket Entry No. 144-2, at 10-11). Rather, Sony's strategy is to

2  lower the legal standard for liability to a level more akin to a motion to dismiss under Federal

3  Rule of Civil Procedure 12, a position that this Court has already questioned. (*See* Order Denying

4  Sony Motion to Transfer, Docket Entry No. 101, at 8 ("While a 'colorable claim' may be

5  sufficient to overcome a motion to dismiss, it may not be sufficient for plaintiff to ultimately

6  prevail on the merits.")).

7      Sony has failed to establish that Phoenix's claim was "rightful" as a matter of law as it

8  must in order to prevail on its current motion. Phoenix's claim against Sony was not a rightful

9  claim as a matter of law (as many questions exist regarding the validity of the patents and the

10  infringement of the Sony MAXX System as set forth in Sony's earlier pleadings, Intervoice's

11  pleadings, and Wells Fargo's pending motion for summary judgment on invalidity – much less

12  infringement by the Edify's software) but should this Court decline to grant Intervoice's motion

13  for summary judgment, many material factual issues exist with respect to how "rightful"

14  Phoenix's claim against Sony actually was, which unquestionably preclude Sony's requested

15  summary judgment.

16      This Court has already acknowledged that the court in *84 Lumber Co. v. MRK Techs.,*

17  *Ltd.*, 145 F. Supp. 2d 675, 680 (W.D. Pa. 2001), "held that the question of whether a 'rightful

18  claim' of infringement existed could not be resolved without reaching the merits of the

19  underlying infringement claim." (*See* Order, Docket Entry No. 99, at 4). In *84 Lumber*, the court

20  found that the determination of whether a rightful claim existed would necessitate an inquiry into

21  the patent infringement allegations. *84 Lumber,* 145 F. Supp. 2d at 680. Also, even assuming

22  that the plaintiff's contention that its reasonable belief that the patent owner would have

23  succeeded in its claim was relevant (an element Sony does not present because it and others have

24  consistently taken the position that the patents are neither valid nor infringed), the court held that

25  analyzing the reasonableness of this conclusion would necessarily involve "comparing the scope

26  of the patents at issue with the allegedly infringing products." *Id.* The court further held that just

27  because the plaintiff may have had a subjective belief that the patent owner would have prevailed

28  on its infringement claim, this was an insufficient basis for imposing liability on the defendant

1    under U.C.C. § 2-312(3).  *Id.* ("This would involve, at a minimum, comparing [the third party's]

2    patents with the defendants' goods.").

3          Accordingly, even though Sony apparently now contends that the Phoenix claim was

4    rightful, the Court must, at a minimum, compare the scope of the patents at issue with the

5    allegedly infringing products.[5]  The Court, if it ignores Phoenix's stipulation about what it was

6    claiming, needs to compare Phoenix's patent claims with Sony's MAXX System.  The Court

7    must also determine if the patents are valid; a question squarely put at issue by Wells Fargo in its

8    current motion for summary judgment in Case No. 08-CV-863-MHP.  (*See* Davison Decl. at Ex.

9    4, Wells Fargo Brief in Support of Motion for Summary Judgment of Invalidity)  If the Court

10   determines that a rightful claim was asserted against Sony, then the Court must determine

11   whether that rightful claim was wholly a result of direct infringement of the Phoenix patents by

12   Edify software.  While Intervoice recognizes that a judicial finding of direct infringement may not

13   be necessary, Sony's mere assertion that Phoenix's claim was "colorable" not only applies the

14   wrong standard, but also fails to meet the minimum requirements set out in *84 Lumber*.

15         Sony contends that according to "the guidelines set out in *Cover*, the Court should resolve

16   the dispute at hand simply by determining if Phoenix's claim was colorable . . . ." (Sony's MSJ

17   Brief, Docket Entry No. 144-2, at 14).  That, however, is not the correct legal standard; much less

18   the finding dictated by the summary judgment evidence.  *Cover v. Hydramatic Packing Co.* cited

19   by Sony provides no such guidelines because *Cover* never reached the issue of a rightful claim.

20   83 F.3d 1390 (Fed. Cir. 1996).  The sole issue in *Cover* was whether the patent code preempted

21   U.C.C. § 2-312.  *Id.* at 1393.  It should be noted that the plaintiff in *84 Lumber*, like Sony,

22   similarly attempted to rely on *Cover* to support its U.C.C. § 2-312(3) claim.  However, the *84*

23   *Lumber* court recognized that *Cover* was limited to the preemption issue and properly

24

---

25   [5]  Sony has also stonewalled an attempt by Intervoice to conduct discovery on Sony's belief that
     the claim was rightful and Phoenix would have succeeded on the merits.  Sony has refused to
26   produce witnesses for deposition.  Sony has refused to produce documents regarding its
     investigation and any opinion letters or expert conclusions that may have been formed.  Intervoice
27   is entitled to this information prior to any ruling on Sony's motion for summary judgment and, to
     the extent necessary, seeks a continuance of the summary judgment determination under Federal
28   Rule of Civil Procedure 56(f) until such time as Sony provides the requested discovery responses
     and witnesses.

1    characterized *Cover*'s commentary with respect to "rightful claim" determination as dicta.

2    *84 Lumber*, 145 F Supp. 2d at 680.  While Intervoice is not asserting in this Opposition that

3    Phoenix must fully litigate its infringement claims against Sony before a rightful claim can be

4    established, case law supports Intervoice's contention that more is required than Sony's simplistic

5    analysis would suggest.  At a minimum, Phoenix's patents must be compared to the Sony MAXX

6    System and then with Edify's software, and a *Markman* hearing should be conducted as the first

7    step of any such analysis.

8
9    **D.    Sony Cannot Transform Phoenix's Actual Infringement Claim Asserted Against Sony into a "Rightful Claim" Against Intervoice.**

10    Sony attempts to create a rightful claim through claim charts that Intervoice is seeing for

11    the first time[6], which purport to now compare the Free Software Upgrade to Claim 1 of U.S.

12    Patent No. 6,615,172 ("the '172 Patent") and Claim 1 of U.S. Patent No. 6,665,640 ("the '640

13    Patent") (collectively, "the Claims-at-Issue").  It is important to note that the claim charts Sony

14    now relies upon are not the same claim charts that Phoenix relied upon in its underlying

15    allegations against Sony.  It is obvious that Sony is attempting to re-write and re-characterize

16    Phoenix's actual claims and allegations into something that was never actually alleged, by

17    Phoenix or by Sony.  Sony cannot create from whole cloth something that was neither claimed

18    nor alleged in the hope that it will create liability for Intervoice where none would otherwise

19    exist.  However, even the claim chart currently provided by Sony fails to show as a matter of law

20    that the Free Software Upgrade infringes either of the Claims-at-Issue.  In order for the Court to

21    examine the extent to which the Sony IVR System does not infringe either of the Claims-at-Issue,

22    Intervoice has included claim charts that identify the non-infringing aspects of the Sony MAXX

23    System in relation to the Claims-at-Issue.

24

25
26   ---
     [6] Sony served Intervoice with what it called "Preliminary Contentions" on June 27, 2008.  In this document, in which Sony admitted that it "was not contending that the Edify software in question infringes any claim of UPS 6,615,172 or USP 6,665,640," Sony included what can only be described as infringement claim charts.  (*See* Davison Decl. at Ex. 3, Sony Preliminary Contentions).  However, the claim charts served on Intervoice are not the same as those included in Sony's MSJ Brief.  *Compare id. with* Sony's MSJ Brief, Docket Entry No. 144-2, at 5-8.

27

28

1.     **The Sony MAXX System Does Not Satisfy a Single Limitation of the Claims-at-Issue.**

Because these claim charts establish that the Sony MAXX System does not operate in a manner that could possibly infringe either of the Claims-at-Issue, coupled with the admission by Sony that it is not even alleging that Edify products infringe either of these claims, and the admissions and Stipulation by Phoenix that the non-customized software was not alleged to infringe or in fact infringe the patents, Intervoice is entitled to summary judgment that no rightful claim of infringement has been made – or could be made – that would substantiate a material breach of warranty claim against Intervoice.  (*See* Davison Decl. at Ex. 3, Sony Preliminary Contentions).   Indeed, on July 2, 2007, Phoenix advised Intervoice yet again that it was not accused of infringing any Phoenix patents.  (*See* Davison Decl. at Ex. 5, July 2, 2007 email from J. Trojan).   Even though Sony has chosen to re-write the infringement claim charts it now includes in its briefing, which were not the same infringement claim charts or analysis previously served on Intervoice by Sony or Phoenix, Intervoice notes that ***its*** non-infringement claim charts are identical to the non-infringement claim charts that were previously served on Sony along with Intervoice's Preliminary Invalidity Contentions and Document Production Accompanying Invalidity Contentions.

**Claim Chart A: Identifying the Non-infringing Aspects and Elements of the Accused Instrumentality with Respect to Claim 1 of U.S. Patent No. 6,615,172**

| Claim Language | |
|---|---|
| Claim 1 | Sony IVR System |
| 1. A speech query recognition system comprising: | The Sony Integrated Voice Response (IVR) System is not a speech query recognition system.  Rather, the Sony IVR System is a speech prompt system which prompts the user for input.  The difference is highlighted in the specification of the '172 Patent.  The specification uses examples whereby a user asks questions to the system, and the system then processes those queries to return the correct result.  See '172 Patent, Col. 11, lines 18-23.  The example in the specification is similar to the "Help" tool on some Microsoft Office products.  The "Help" tool on Microsoft Office products often presented itself as a paper clip to which the user could ask questions.  This is similar to the system |

Case No. C07-2112 MHP

DOCUMENT PREPARED ON RECYCLED PAPER

INTERVOICE, INC.'S OPPOSITION TO SONY'S MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| | described by the '172 Patent, with the exception that the questions would be asked verbally instead of via keyboard.  The Sony IVR System does not respond to queries, but rather it queries the user for a response.  <u>See</u> Detailed Dialog Design For Sony Electronics, Section 8 (IVOICE071386).  Thus it is a prompt system.  This is supported by correspondence between Sony and Edify personnel during deployment and testing of the system.  The correspondence shows that Sony actively participated in developing the appropriate prompts for callers.  This claims a speech query recognition system, but the Sony IVR System does not respond to queries. |
| a continuous speech recognition engine for generating recognized words taken from an articulated speech utterance; | The Sony IVR System does not use a continuous speech recognition engine.  This limitation can be read one of two ways.  It either means the engine recognizes continuous speech or it means that the speech recognition engine runs continuously.  Neither of these is the case with the Sony IVR System due to a process called endpointing.  <u>See</u> Nuance Speech Recognition System, Version 8.0: Introduction to the Nuance System, p. 15 (IVOICE034634).  The Sony IVR System uses Nuance 8.0 software for speech recognition.  Endpointing is the process by which the software determines the end to a particular speech utterance.  As a result of this process, the engine does not continuously recognize speech since speech recognition only begins after an "endpoint" has been ascertained.  Since there is an "endpoint" to the speech, the speech is not continuous.  Additionally, the speech engine does not run continuously since the speech engine is only triggered after the endpoint. |
| a natural language engine configured generating a first linguistic analysis of said recognized words, including an identification of any word phrases present in said recognized words; | The Sony IVR System does not possess natural language understanding nor does it perform any linguistic analysis as those terms are understood by those skilled in the art.  The '172 Patent specification shows us that a natural language engine is designed to understand a speech utterance lexically.  <u>See</u> '172 Patent, Col. 12, lines 7-10.  The Sony IVR System is designed to prompt the user in such a way as to get the user to respond using only certain words.  <u>See</u> Detailed Design Dialog for Sony Electronics (IVOICE071386).  For example, the natural language engine of the '172 Patent is designed to understand that when a user asks "Where is the computer?", the appropriate answer would not be to |

DOCUMENT PREPARED
ON RECYCLED PAPER

INTERVOICE, INC.'S OPPOSITION TO SONY'S MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| | describe the computer, but to locate the computer. Thus it understands lexically what is being asked with regards to the computer. Conversely, the Sony IVR System is designed to ask a question similar to "What do you need help with?" and the system waits for the user to reply with the words "TV," "computer," "stereo," "receiver," etc. in what those skilled in the art describe as a constrained recognition system. If the user responds with "I need help with a computer", the Sony IVR System recognizes that "computer" is a word it is looking for, and then handles the call according to that answer. Therefore, the system does not lexically understand what the user is asking, it simply attempts to recognize a limited number of particular words in a sentence to facilitate the proper call routing. Thus, the natural language engine of the '172 Patent and Sony IVR System are completely different and thus the Sony IVR system cannot meet this limitation of the claim. |
| a query formulation engine adapted to convert said recognized words and said word phrases into a structured query suitable for locating matches for said articulated speech utterance; | The Sony IVR System does not contain a query formulation engine. As described by the '172 specification, the query formulation engine creates a structured query which is sent to the natural language engine and to a Database process (DBprocess). See '172 patent, Col. 11, lines 31-50. There is no such structured query present in the Nuance software. A "structured query" implies that there is a response expected from the query. This is supported in the '172 Patent specification. The '172 Patent specification describes a query sent to the database expecting a return of words or phrases which match the database. In fact, the specification of the '172 Patent describes several queries sent back and forth between the natural language engine and the database to recognize the question being asked and then to pair the question with an answer contained in the database. See '172 Patent, Col. 11, lines 31-50. As noted above, the Sony IVR System possesses none of this functionality. The Sony IVR System uses constrained recognition to identify a word and then routes the call accordingly (to the appropriate help desk, to a voice recording, etc). |
| wherein said first linguistic analysis is used to identify a candidate set of potential matches for said speech utterance; | The Sony IVR system does not identify a candidate set of matches as required by Claim 1. The Sony IVR System returns a result, not a candidate set of matches. This distinction is important since the result obtained by the Sony |

| | |
|---|---|
| | IVR System is used to route a call whereas the candidate set of matches described in Claim 1 is used for further analysis.  See '172 patent, Col. 11, lines 50-58.  This is why they are referred to as a "candidate" set of matches.  Also, as indicated above, the Sony IVR System does not perform any linguistic analysis as that term is understood by those skilled in the art. |
| said natural language engine further being configured for: (i) generating one or more second linguistic analyses of words contained in said candidate set of potential matches; | The Sony IVR system has no natural language understanding and is not configured to perform any linguistic analysis, much less two linguistic analyses.  The reason the '172 Patent refers to second linguistic analyses is because there are two different processes, the natural language engine and the database matching, that communicate back and forth in order to match words and phrases of the users query.  See '172 patent, Col. 11, lines 17-58.  Further, the phrase "candidate set of potential matches" implies that the first linguistic analysis identified only candidates and that further processing and analysis are required on the "candidates."  The Sony IVR System does not have a "candidate set of potential matches".  Rather, the Sony IVR System simply returns a value for the parameter it seeks.  See Nuance Speech Recognition System, Version 8.0: Introduction to the Nuance System, p. 15 (IVOICE034634). |
| and (ii) comparing said first linguistic analysis with each of said one or more second linguistic analyses to identify a best match for said speech utterance in real time. | The Sony IVR System does not perform any linguistic analysis so it certainly does not compare linguistic analyses.  The '172 Patent specification describes using database queries and the natural language engine to identify speech utterances.  The interaction between these two processes identifies the speech utterance.  See '172 patent, Col. 11, lines 17-58.  This is a claimed feature of the invention because the two processes working together allow the claimed invention to understand a particular utterance both in terms of the words used and how those words are used.  See '172 patent, Col. 11, line 58 to Col. 12, line 10.  In fact, this is the inventive concept that is described at length in the specification as the improvement over previous voice recognition software.  The Sony IVR System does not possess functionality to perform this limitation in any sense understood by those skilled in the art.  See Nuance Speech Recognition System, Version 8.0: Introduction to the Nuance System, p. 15 (IVOICE034634). |

DOCUMENT PREPARED
ON RECYCLED PAPER

**Claim Chart B: Identifying the Non-infringing Aspects and Elements of the Accused Instrumentality with respect to Claim 1 of U.S. Patent No. 6,665,640**

| Claim Language | |
|---|---|
| Claim 1 | Sony IVR System |
| 1. An interactive learning system adapted for responding to speech-based queries concerning topics addressed by such interactive learning system, the system comprising: | The Sony IVR System is not an interactive learning system as that term is described in the '640 Patent. The Sony IVR System is most definitely not a "learning" system as that word is understood by those skilled in the art. The '640 Patent specification clearly indicates that "learning" in this context is analogous to a web tutorial or web seminar. See '640 Patent, Col. 8, lines 27-44. In other words, this patent is directed towards an educational environment. This is best illustrated by an example. Consider an online web tutorial regarding the patent litigation in the United States, and a student watching the web tutorial on a personal computer. At the end of the tutorial, the student wishes to ask a question about which courts have jurisdiction to decide patent cases. The system described in Claim 1 allows the student to ask his question via the computer using speech capture software and hardware on his computer. The speech recognition system of Claim 1 then returns a matching answer based on matching the question with a stored answer in an answer file. The system then returns the answer to the student. Thus, the student is educated via the learning system. This system describes a form of interaction that never takes place in the Sony IVR System. The caller is not educated, but rather assisted with their product concerns by a constrained recognition routing system. See Detailed Dialog Design For Sony Electronics, Section 4.1 (IVOICE071386). |
| a query file for storing a plurality of topic query entries, each topic query entry including a query relating to one or more of the topics covered by the speech-based interactive learning system; and | The Sony IVR System does not have a query file for storing a plurality of topic query entries. The Sony IVR System merely transcribes speech utterance and searches for matching words so as to route a caller appropriately or to provide prerecorded information. See Detailed Dialog Design For Sony Electronics (IVOICE071386). Moreover, there are no "topics covered by the speech based interactive learning system." Similar to how a topic is covered in a classroom, this limitation refers to topics in the form of a class setting, which has no similarities in configuration or functionality with the Sony IVR System. |

DOCUMENT PREPARED
ON RECYCLED PAPER

| an answer file for storing a plurality of topic answer entries, each topic answer entry including an answer to one or more of said plurality of topic query entries, such that each topic query entry has at least one associated topic answer entry; and | The Sony IVR System does not contain an answer file storing a plurality of topic answer entries.  This is because the Sony IVR system is not designed to answer queries, but rather to prompt the user.  <u>See</u> Detailed Dialog Design for Sony Electronics (IVOICE071386).  Furthermore, the Sony IVR System does not have an associated answer query for each topic query. |
|---|---|
| a speech recognition system for generating recognized speech utterance data from partially processed speech data associated with a speech-based query concerning one of said topics, said partially processed speech data being received from a remote speech capturing system; and | The Sony IVR System does not generate recognized speech utterance data from partially processed speech.  The Sony IVR System instead employs an endpointing mechanism to determine when to start processing the speech utterance.  <u>See</u> Nuance Speech Recognition System Version 8.0: Introduction to Nuance Systems, p. 15 (IVOICE034634).  Once the endpoint has been determined, the speech is transcribed.  Each speech segment is processed as a whole.  Conversely, the '640 Patent specification describes processes by which a portion of the speech is processed in one process while still other portions are processed by a natural language engine, but the Sony IVR System has no natural language understanding as that term is understood by those skilled in the art.  <u>See</u> '640 patent, Col. 11.  The interaction of these processes described in the '640 Patent results in partially processed speech that is then recognized by the system before other portions of the speech has been processed.  These different processes working together constitute the speech recognition system.<br><br>Additionally, the Sony IVR system does not have a "remote speech capturing system."  As noted earlier, the '640 patent is primarily directed towards web-based learning sessions.  <u>See</u> '640 patent, Col. 8, lines 27-44.  As such, the system described in the patent requires a remote system, such as software on the user's computer, to capture the speech and then transmit the audio file to the system in order for the speech to be processed.  The Sony IVR System does not use a speech capturing system.  Even if the system could be characterized as capturing speech, it would be done on the Sony IVR System itself, not on a remote capture system.  Callers use phones which do not capture speech but allow speech to be transmitted.  The Sony IVR System processes the speech directly. |

| | |
|---|---|
| said speech recognition system further cooperating with a natural language engine, which processes said recognized speech utterance data using a morphological analysis and a phrase analysis to form recognized speech sentence data corresponding to said speech-based query; | The Sony IVR System has no natural language understanding as that term is understood by those skilled in the art.  The '640 Patent specification shows us that a natural language engine is designed to understand a speech utterance lexically.  See '640 patent, Col. 12, lines 1-20.  The constrained recognition functionality of the Sony IVR System is designed to prompt the user in such a way as to get the user to respond using only certain words.   For example, the natural language engine of the '640 Patent is designed to understand that when a user asks "Where is the computer?", the appropriate answer would not be to describe the computer, but to locate the computer.  Thus it understands lexically what is being asked with regards to the computer.  Conversely, the Sony IVR System is designed to ask a question similar to "What do you need help with?", and the system is looking for the user to reply with the words "TV," "computer," "stereo," "receiver," etc.  If the user responds with "I need help with a computer," the Sony IVR System recognizes that "computer" is a word it is looking for and then handles the call according to that answer.  Therefore, the system does not lexically understand what the user is asking, it simply attempts to recognize a limited number of particular words in a sentence.  Thus, the natural language engine of the '640 Patent and operation of the Sony IVR system are completely different and thus the Sony IVR system cannot satisfy this limitation of the claim.<br><br>Finally, the claim requires two forms of analysis to be performed on the speech utterance.  The first is a morphological analysis and the second is a phrase analysis, neither of which is ever performed by the Sony IVR System.  A morphological analysis would mean the system analyzes the patterns of word formation while the phrase analysis looks for different phrases in the speech.  The Sony IVR System is not programmed to perform morphological analysis.  Rather, the Sony IVR System uses Grammars, Semantic slot models, and Utterance Rejection.  See Nuance Speech Recognition System 8.0: Introduction to the Nuance System, pp. 20-22 (IVOICE034634).  These are fundamentally different than morphological analysis because the system simply determines which words are "in grammar" and "out of grammar".  Those "in |

| | |
|---|---|
| | grammar" are kept, and those "out of grammar" are rejected. The Sony IVR System recognizes different words in a phrase, but does not analysis the speech utterance regarding the formation of those words or any patterns in the utterance. |
| a query formulation system for converting said recognized speech sentence data into a search query suitable for identifying a topic query entry corresponding to said speech-based query, and for locating at least one topic answer entry best matching said speech-based query. | The Sony IVR System does not contain a query formulation system. As described by the '640 Patent specification, the query formulation engine creates a query which is sent to the natural language engine and to a database process (DBprocess). There is no such structured query present in Sony's IVR System. |

**2.      Sony's Justified Positions that the Sony MAXX System Does Not Infringe the Phoenix Patents and that the Phoenix Patents are Invalid Prove that No "Rightful Claim" Was Made.**

Intervoice explained in its Motion for Summary Judgment that Sony's repeated positions that Phoenix's patents are invalid and that the Sony MAXX System does not infringe strongly undercut any new Sony assertion (and at least create material issues of fact) that a rightful claim was made in this case. (*See* Intervoice's MSJ Brief, Docket Entry No. 137, at 23-24). Even if the Court does not hold as a matter of law that Sony is barred from arguing Phoenix had a rightful claim, at the very least these admissions are compelling evidence that Phoenix had no rightful claim. Further, Intervoice has provided Sony, and now the Court, not only with claim charts setting forth the documented non-infringing aspects of Sony's MAXX System (shown above), but also with complete Invalidity Contentions establishing the invalidity of the Claims-at-Issue. (*See* Davison Decl. at Ex. 2, Intervoice's Preliminary Invalidity Contentions). Thus, at a minimum, there is a genuine issue of material fact regarding whether Phoenix asserted a rightful claim against Sony, as well as whether or not any claim was made against anything Intervoice provided that could subject Intervoice to liability under U.C.C. § 2-312(3), and which precludes Sony's motion for summary judgment.

E.    **The Sony Customized IVR System is Expressly Excluded from Any Warranty under U.C.C. § 2-312(2).**

As explained in Intervoice's Motion for Summary Judgment, Sony's claim for breach of warranty against infringement must fail because it falls squarely under the customization exclusion of U.C.C. § 2-312(2), as evidenced by, among other things, Sony's discovery responses and pleadings, Phoenix's preliminary infringement contentions, and Phoenix's Stipulation.  These materials demonstrate that Phoenix's claims against Sony were based solely upon Sony's customized and/or specially configured goods.  Sony also finally admits in its briefing (as it must) that Sony "did indicate to Edify that the system should have certain capabilities" (i.e., Sony did provide Edify with specifications for the Sony MAXX System), but insists that Sony did not "require Edify to violate the Phoenix Patents," as if that were somehow relevant to this analysis. (*See* Sony's MSJ Brief, Docket Entry No. 144-2, at 5).

Now that Sony seeks to amend (once again) its third-party complaint against Intervoice to allege a new set of facts in the hope that it will survive a motion for summary judgment, Intervoice admittedly has engaged in no discovery to date relating to Sony's new factual basis for its claim against Intervoice.  Although Intervoice strongly opposes Sony's Motion for Leave to Amend its Third-Party Complaint, if the Motion to Amend is allowed, there may likely be issues of material fact regarding many issues, including whether the Free Software Upgrade falls within the customization exception to U.C.C. § 2-312(3).    Such a determination will depend on a number of facts including whether the Free Software Upgrade merely patched the customized Sony MAXX System software, whether the Free Software Upgrade was independently customized for the Sony MAXX System, the extent to which the Free Software Upgrade changed the Sony MAXX System, and potentially many more factual issues that are unknown at this time. Because numerous fact questions must be resolved before determining whether the Free Software Upgrade might fall within the customization exception, summary judgment on this issue is improper under the protections afforded by Federal Rule of Civil Procedure 56(f).

In supporting its contention that the Free Software Upgrade does not fall within the warranty's customization exception, Sony cites to *SEB S.A. v. Sunbeam Corp.*, a district court

1    decision that was not published and whose subsequent appellate opinion was designated "NOT

2    FOR PUBLICATION." (Sony's MSJ Brief, Docket Entry No. 144-2, at 12).  *See SEB S.A. v.*

3    *Sunbeam Corp.*, Case No. 02-80527-CIV, slip op. (S.D. Fla. Feb. 19, 2003), *rev'd,* 148 Fed.

4    Appx. 774 (11th Cir. 2005) (designated NOT FOR PUBLICATION).  As Sony is well aware,

5    according to the Civil Local Rules, "[a]ny order or opinion that is designated: 'NOT FOR

6    PUBLICATION' … may not be cited to this Court, either in written submissions or oral

7    arguments . . . ."  Civil L.R. 3-4(e).

8           Nonetheless, Sony suggests that because the "specifications did not require [the seller] to

9    manufacture the deep fryer in a way that violated [the patent owner's] patent," the *SEB* court held

10   that the seller must indemnify the buyer.  (Sony's MSJ Brief, Docket Entry No. 144-2, at 12).

11   However, such a characterization misconstrues the court's holding.  In *SEB*, the seller admitted

12   that it designed the infringing feature and admitted that the buyer did not specify how the

13   infringing feature would be attached to the goods.  *SEB* is distinguishable from the case at bar

14   because Sony provided the specifications to Edify, and in light of Phoenix's actual infringement

15   claims, which do not apply to Edify non-customized/non-configured software products, the

16   specifications provided by Sony form the sale basis for any possible infringement.

17          *Jack Frost Laboratories, Inc. v. Pfizer, Inc.*, also cited by Sony, is likewise distinguishable

18   because the court in that case held that the seller chose the composition of the infringing feature

19   and that choice was not specified by the buyers.  Case No. 92 Civ. 9264, 1995 U.S. Dist. LEXIS

20   6413 (S.D.N.Y. May 12, 1995).  However, in this case, Sony chose the composition of the alleged

21   infringing features and Sony provided Edify with such a wide range of specifications for the Sony

22   MAXX System that there is little doubt that any number of those specifications could affect the

23   infringement analysis.  Although Intervoice is convinced that the Sony MAXX System does not

24   infringe either of the Claims-at-Issue, should the Court determine (1) that a rightful claim was in

25   fact made by Phoenix against Sony and (2) that the rightful claim directly resulted from direct

26   infringement of the Claims-at-Issue by Edify software, then it is Edify's position that the

27   specifications provided by Sony to Edify could provide the only basis for reaching such a

28

1    conclusion.   It is undisputed that the U.C.C. § 2-312 does not provide for any liability to

2    Intervoice in such a situation.

3        **F.      Sony is Not Entitled to Recover the Settlement Amount or Attorneys' Fees**

4            **and Expenses.**

5        Sony's takes the position that Intervoice should immediately step in and defend (or settle)

6    all claims that are asserted against any party that is accused of infringement of any kind, no

7    matter how wrongful that infringement claim is and no matter how unrelated the infringement

8    claim is to the Intervoice products provided to the customer.  That is not the law.  There must be

9    some nexus between the infringement claim, which must first be determined to be rightful, and

10   the goods at issue in order for there to be any rational basis for the promulgation of U.C.C. § 2-

11   312(3).

12       Sony also disingenuously suggests that "[i]f Intervoice truly believed that the Phoenix suit

13   was meritless because the Phoenix Patents were invalid, Intervoice should have come forward

14   much sooner, to assist its customer."  (Sony's MSJ Brief, Docket Entry No. 144-2, at 15).  Sony

15   clearly has a short memory in that regard as Intervoice repeatedly offered its assistance to Sony

16   and believed that "working together to defend against what we both have confessed are baseless

17   substantive claims – rather than fight against one another – is in the best interests of our

18   respective clients."  (Davison Decl. at Ex. 6, Jan. 24, 2007 Letter from Davison to Siegel, at 2).

19   Indeed, up until the time that Sony filed its third-party complaint, Intervoice continued to offer its

20   assistance, reaffirming Intervoice's continuing belief that "the best course of action for our

21   respective clients would be for them to work together to defeat the infringement case that Phoenix

22   has brought against Sony.  (Davison Decl. at Ex. 7, Feb. 7, 2007 Letter from Davison to Flock).

23   Sony instead decided to sue Intervoice based on factual allegations admittedly incapable of

24   sustaining the only claim it asserted.

25       With respect to the settlement amount, which is confidential, Intervoice in no way agrees

26   that it was reasonable.  In fact, Phoenix's claims were so baseless as to infringement and validity

27   that Intervoice cannot help but conclude that litigation not only would have resulted in no

28

damages, but that Sony would have been successful in its efforts to recover its attorneys' fees pursuant to 35 U.S.C. § 285.[7]

## V.     CONCLUSION

For all the foregoing reasons, Intervoice respectfully requests that this Court deny Sony's Motion for Contentions and for Summary Judgment or, alternatively, continue the summary judgment hearing consistent with Intervoice's Federal Rule of Civil Procedure 56(f) request for discovery concerning Sony's newest factual allegations.

Dated:  September 26, 2008                    **FULBRIGHT & JAWORSKI L.L.P.**

By:   */s/ Dan D. Davison*
Dan D. Davison (*pro hac vice*)
Michael B. Regitz (*pro hac vice*)
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Tel:  214-855-8000
Fax: 214-855-8200

Richard S. Zembek (*pro hac vice*)
Vidya Bala (*pro hac vice*)
1301 McKinney, Suite 5100
Houston, Texas 77010
Tel:  713-651-5151
Fax: 713-651-5246

John A. O'Malley
Joshua D. Lichtman
Brandon Fernald
555 South Flower Street
Forty-First Floor
Los Angeles, California  90071
Tel:  213-892-9200
Fax: 213-892-9494

Attorneys for Third-Party Defendant,
INTERVOICE, INC.

---

[7]  There is no duty to defend under U.C.C. § 2-312(3).   Counsel for Sony has previously acknowledged this clear reading of the statute.  Although a seller may be liable for damages incurred by a breach of the warranty imposed by Section 2-312(3), there is no independent duty to defend.

DOCUMENT PREPARED
ON RECYCLED PAPER

65209963.6

25          Case No. C07-2112 MHP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Civil Local Rule 5-4 and General Order No. 45.  As such, this document was served on all counsel deemed to have consented to electronic service per Civil Local Rule 5-5 and General Order No. 45 on September 26, 2008.  I declare under penalty of perjury that the foregoing is true and correct.

Date: September 26, 2008

*/s/ Dan D. Davison*
Dan D. Davison