VICTOR J. CASTELLUCCI (CA SBN 203303)
vcastellucci@kenyon.com
MICHELLE MANCINO MARSH (*pro hac vice*)
mmarsh@kenyon.com
KENYON & KENYON LLP
333 W. San Carlos Street, Suite 600
San Jose, CA  95110-2731
Telephone: (408) 975-7988
Facsimile: (408) 975-7501

*Attorney for Third-Party Plaintiff
Sony Electronics Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| PHOENIX SOLUTIONS, INC., a California corporation, <br><br>　　　　Plaintiff, <br>　　v. <br><br>SONY ELECTRONICS INC., a Delaware corporation, <br><br>　　　　Defendant. | **Case No. C 07-2112 (MHP)** <br><br> **SONY ELECTRONICS INC.'S BRIEF IN OPPOSITION TO INTERVOICE'S MOTION FOR SUMMARY JUDGMENT** |
| SONY ELECTRONICS INC., a Delaware corporation, <br><br>　　　　Third-Party Plaintiff, <br>　　v. <br><br>INTERVOICE, INC., a Texas corporation <br><br>　　　　Third-Party Defendant. | Date:  December 1, 2008 <br> Time:  2:00 pm <br> Courtroom 15, 18th floor |

**TABLE OF CONTENTS**

I.  INTRODUCTION AND STATEMENT OF ISSUES ........................................................ 1

II. FACTUAL BACKGROUND ............................................................................................ 2

III. ARGUMENT ..................................................................................................................... 4

    A.  Phoenix's patents had issued when Edify delivered Version 9.5 of its Software to SEL ....................................................................... 5

    B.  SEL's claim is not barred by statute of limitations .................................................. 6

    C.  There is no evidence that SEL furnished Edify with specifications to customize the IVR system in a manner that infringed the Phoenix patents ......................................................... 8

    D.  The self-serving Intervoice-Phoenix stipulation is not case-dispositive ........................................................................................... 10

    E.  Edify provided SEL with an IVR system that was the basis of Phoenix's patent infringement claims ........................................ 12

    F.  Phoenix had a "rightful claim" of infringement...................................................... 13

IV. CONCLUSION ................................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*Am. States Ins. Co. v. Bakhtiary*,
No. C 94-3092 FMS, 1995 WL 748060 (N.D. Cal. Oct. 11, 1995) ................................... 11

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........................................................................................................... 4, 12

*Centennial Ins. Co. v. Ryder Truck Rental, Inc.*,
149 F.3d 378 (5th Cir. 1998) ............................................................................................ 12

*Chatlos Systems, Inc. v. National Cash Register Corp.*,
479 F. Supp. 738 (D.N.J. 1979) ........................................................................................ 8

*Cover v. Hydramatic Packing Co., Inc.*,
83 F.3d 1390 (Fed. Cir. 1996) .......................................................................................... 13

*Dynaco Corp. v. KLA Instruments Corp.*,
200 B.R. 750 (Bankr. D. N.H. 1996) ............................................................................... 8

*Frank Arnold Contractors, Inc. v. Vilsmeier Auction Co., Inc.*,
806 F.2d 462 (3d Cir. 1986) ............................................................................................. 13

*In re Durability Inc.*,
212 F.3d 551 (10th Cir. 2000) .......................................................................................... 12

*Jack Frost Lab., Inc. v. Pfizer, Inc.*,
No. 92-CV-9264, 1995 WL 293328 (S.D.N.Y. 1995) ..................................................... 10

*Keller v. United States*,
58 F.3d 1194 (7th Cir. 1995) ............................................................................................ 12

*Matthews v. Xerox Corp.*,
319 F. Supp. 2d 1166 (S.D. Cal. 2004) ............................................................................ 12

*North American Leisure Corp. v. A&B Duplicators, Ltd.*,
468 F.2d 695 (2d Cir. 1972) .............................................................................................. 7

*Rice v. Glad Hands, Inc.*,
750 F.2d 434 (5th Cir. 1985) ............................................................................................ 11

*SEB S.A. v. Sunbeam Corp.*,
No. 02-80527-CIV, slip op. (S.D. Fl. Feb. 19, 2003) ...................................................... 10

*TK Power, Inc. v. Textron, Inc.*,
433 F. Supp. 2d 1058 (N.D. Cal. 2006) ........................................................................... 7, 8

*Yttro Corp. v. X-Ray Mktg. Ass'n, Inc.*,
559 A.2d 3 (N.J. Super. Ct. App. Div. 1989) .................................................................. 13

**Statutes**

UCC § 2-312(3) ............................................................................................................................ 5

SONY ELECTRONICS INC.'S BRIEF IN OPPOSITION
TO INTERVOICE'S MOTION FOR SUMMARY JUDGMENT
CASE NO. C 07-2112 (MHP)

-iii-

KENYON & KENYON LLP
NEW YORK

## I.     INTRODUCTION AND STATEMENT OF ISSUES

Third-party plaintiff Sony Electronics Inc. ("SEL") purchased an interactive voice response (IVR) system from third-party defendant Intervoice, Inc.'s ("Intervoice") predecessor-in-interest, Edify Corp. In 2006, Phoenix Solutions, Inc. ("Phoenix") sued SEL for patent infringement, accusing the IVR system that Edify sold to SEL. After Intervoice refused to indemnify SEL, SEL filed a third-party action against Intervoice for breaching its implied warranty against infringement. Intervoice now moves for summary judgment that it is not liable to SEL for its breach. Intervoice advances six reasons why it is entitled to summary judgment. As summarized below, all of these arguments fail and summary judgment must be denied.

(1)     Intervoice argues that when Edify tendered delivery of what it calls "the Software-at-Issue" to SEL, Phoenix's patents had not issued. But the version that was in use when Phoenix sued SEL for infringement, software Version 9.5, was not delivered by Edify to SEL until late 2005, after the Phoenix patents relevant in this case had already issued.

(2)     Intervoice asserts that SEL's claim for breach of warranty against infringement is barred by the four-year statute of limitations because Edify delivered the "Software-at-Issue" in 2002, and SEL did not file its claim until 2007. Notwithstanding the parties' dispute about the actual date of tender, Intervoice ignores Edify's subsequent delivery of Version 9.5 of its software to SEL. With Edify's tender of Version 9.5 in late 2005, the four-year statute of limitations does not expire until 2009.

(3)     Intervoice relies on a collusive and self-serving stipulation it entered into with Phoenix for its contention that Phoenix's patent claims did not allegedly extend or otherwise implicate the "standard, non-customized Edify/Intervoice goods" and that SEL purchased customized goods. However, SEL was clearly not a party to the stipulation, strongly contests its contents and cannot be bound by it.

(4) While Intervoice argues that SEL furnished Edify with specifications for the IVR system, Intervoice offers no evidence that such alleged specifications, and not Edify's software itself, were necessary to Phoenix's infringement claim.

(5) Intervoice tries to avoid liability because Edify sold SEL only software, but no hardware, for the IVR system. However, the patent claims at issue do not require hardware.

(6) Intervoice contends that Phoenix's claims against SEL were not "rightful." This argument is based on the erroneous assumption that SEL's non-infringement and invalidity defenses in the Phoenix infringement action means that there was no "rightful claim." Moreover, this Court has already rejected Intervoice's argument, finding the Federal Rules "explicitly allow pleading in the alternative." (DI-99 at 5).

Summary judgment should be granted only where there is no genuine issue as to any material fact. From the foregoing, it is clear that the law and the evidence contradict all six of Intervoice's contentions.[1] Intervoice has not shown that there is no genuine issue as to any material fact to warrant summary judgment in its favor. Accordingly, this Court should deny Intervoice's motion.

## II. FACTUAL BACKGROUND

Edify was a company that provided interactive voice response (IVR) technology as part of its customer relations management (CRM) product offerings. (*See, e.g.*, DI-147-2, Marsh Decl., Ex. 1).

In late 2001, SEL and Edify entered into a contract for an interactive voice response (IVR) system that SEL was going to use for customer service. (*See* DI-145, Christopher Decl., ¶ 3). A caller contacting SEL customer support would be greeted by a human-sounding voice (MAXX),

---

[1] We note that Intervoice submitted a self-serving statement of "Undisputed Facts" which is not only improper under this Court's Standing Order but also disputed by SEL.

and would interact with MAXX to obtain desired information about a particular SEL product. (DI-145, Christopher Decl., ¶ 3).

Carrying out the contract entailed a series of interactions between SEL and Edify, and required that SEL acquire various hardware. Finalizing the system took a protracted length of time. (*See, e.g.,* DI-147-2, Marsh Decl. Ex. 2). The system finally began operating satisfactorily in mid-2003. (DI-145, Christopher Decl., ¶ 6).

The SEL contract with Edify also provided for technical support to SEL for program updates, debugging, and other issues. (DI-147-2, Marsh Decl. Ex. 3). In 2005, however, Edify stopped supporting the version of the software that SEL was running at the time. (DI-145, Christopher Decl., ¶ 8). Consequently, in order for SEL to continue to get technical support, SEL was required by Edify to acquire software Version 9.5 in late 2005. (DI-141-2, SEL's Proposed Second Amended Complaint; DI-145, Christopher Decl., ¶ 8). Edify's Version 9.5 required a program that SEL's existing hardware running Edify's previously provided version could not run; as a result, SEL was required to obtain new hardware. (DI-145, Christopher Decl., ¶ 9).

In June 2006, Phoenix informed SEL that the IVR system in use by SEL (Version 9.5) infringed four Phoenix patents: USP 6,615,172 ("the '172 patent"); USP 6,633,846 ("the '846 patent"); USP 6,665,640 ("the '640 patent"); and USP 7,050,977 ("the '977 patent") (collectively the "Phoenix Patents"). (DI-147-2, Marsh Decl. Ex. 4). By letter dated August 9, 2006, SEL notified Intervoice (which by this time had purchased Edify) of Phoenix's claims. (DI-146-2, Siegel Decl., Ex. A). SEL and Intervoice engaged in a series of communications in which SEL asked Intervoice to defend it against Phoenix's patent infringement claims, and offered to allow Intervoice to control the handling of the matter. (DI-147-2, Marsh Decl. Exs. 5-7). No agreement, however, was reached.

On December 13, 2006, Phoenix sued SEL in the Central District of California, alleging infringement of the Phoenix Patents based on SEL's use of the IVR system that Edify/Intervoice had provided. (06-cv-7916 PA, DI-1). SEL answered, denying infringement and alleging invalidity of the Phoenix Patents. (06-cv-7916 PA, DI-9). Despite SEL's repeated requests that Intervoice take over defense of the matter, and despite Intervoice's apparent belief that the Phoenix Patents were invalid, Intervoice refused. (DI-146-2, Siegel Decl. Exs. B-E; DI-147-2, Marsh Decl. Exs. 8-11).

By stipulation dated November 30, 2007, Phoenix and SEL settled the patent infringement lawsuit. (DI-97).

On June 21, 2007, while the litigation between Phoenix and SEL was still pending, Intervoice and Phoenix entered into a self-serving stipulation that the "non-customized/non-configured software" sold to SEL by Intervoice did not infringe the Phoenix Patents. (DI-53).

## III.   ARGUMENT

Summary judgment is proper only if the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). To survive a motion for summary judgment, the non-moving party "need only present evidence from which a jury might return a verdict in his favor. If he does so, there is a genuine issue of fact that requires a trial." *Id.* at 257.

Here, the Court should deny Intervoice's motion for summary judgment because there is ample evidence contradicting Intervoice's assertions.

### A. Phoenix's patents had issued when Edify delivered Version 9.5 of its Software to SEL.

Intervoice argues that a breach of warranty against infringement could not have occurred when Edify delivered its IVR system to SEL because the Phoenix patents had not issued at the time. However, this argument is flawed for a number of reasons.

Intervoice's argument is premised entirely on Edify's earlier delivery of the IVR system which had an older version of the Edify software,[2] but ignores the uncontested fact that Edify subsequently delivered to SEL a different version of its software, which is an additional basis for SEL's breach of warranty claim. (*See* DI-142, SEL's Brief in Support of Motion to Amend Complaint). When Edify delivered the IVR system to SEL in mid-2003, it was running on Edify's Version 8.0 software. (DI-145, Christopher Decl., ¶ 3). But in 2005, Edify terminated technical support for Version 8.0, meaning that problems with the IVR system would no longer be fixed by Edify. In order to continue receiving technical support, SEL was required to obtain Edify's Version 9.5 software. (DI-145, Christopher Decl., ¶ 8). When Edify delivered Version 9.5 to SEL in late 2005 (*see id.*), a separate warranty of freedom from infringement under UCC Section 2-312(3) arose. *See* UCC § 2-312(3) ("a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringement or the like").

---

[2] SEL disputes Intervoice's contention that the IVR system (or what Intervoice calls the "Software-at-Issue") was delivered to SEL in February 2002. (*See, e.g.,* DI-145, Christopher Decl., ¶ 6). Furthermore, Intervoice's characterization of the "good" that Edify sold to SEL as simple stand-alone software is contradicted by the evidence of record. The Declaration of David Christopher, the Director of SEL's Customer Information Service Center, evidences that Edify contracted to provide SEL an interactive voice response (IVR) system that SEL was going to use for customer service. (DI-145, Christopher Decl., ¶ 3). The 2001 Customer Order Schedule indicates that Edify was to provide its "EWF Software Engine" (at a price of $45,000), "91+ Software Agents" ($213,000), "Speech Recognition VAS Ports Tier 4" ($272,640), and "Text to Speech Per Port" ($48,600), which corroborates Mr. Christopher's declaration that Edify was to provide a complete software package for an IVR system. (*See* DI-138, Wilcher Decl., Ex. 1 at 1).

It is indisputable that at the time Version 9.5 was delivered to SEL, both of the Phoenix '172 and '640 patents had issued. As a result, Edify's warranty obligations under UCC Section 2-312(3) extended to infringement claims under these patents. Indeed, when Phoenix sued SEL for patent infringement, the accused IVR system was running Edify's Version 9.5 software. (*See* Declaration of David Christopher, dated September 26, 2008, at ¶ 2).

SEL's acquisition of Version 9.5 of the Edify software cannot be considered "incidental" to Edify's sale of the IVR in 2001, as Intervoice suggests. SEL was required to obtain the new software specifically because Edify was no longer supporting the old software and even had to obtain new hardware to run Edify's Version 9.5. (DI-145, Christopher Decl., ¶ 9). That the original IVR system was purchased in 2001 does not defeat SEL's claim against Intervoice because Version 9.5 was a separate product delivered at a separate time by Edify.

Finally, although Intervoice argues that a "Pandora's Box of never-ending and legally untenable liability" would be opened if customers were able to assert breach of warranty claims for purchasing software upgrades, Intervoice points to no cases holding that the protections afforded by the UCC warranty against infringement are not applicable to new software versions especially where, as here, the seller's actions required the new version.

**B.     SEL's claim is not barred by statute of limitations.**

Edify delivered the Version 9.5 software to SEL in late 2005. (DI-145, Christopher Decl., ¶ 8). SEL filed its third party action against Intervoice on February 26, 2007, within the four-year statute of limitations.[3]

SEL is not arguing that its purchase of Edify's Version 9.5 software "tolls" the statute of limitations. Rather, when Edify provided the Version 9.5 software to SEL, it was a separate

---

[3] Irrespective of whether California or Florida law applies, SEL filed suit well within the four-year limit.

delivery of a separate good invoking a separate warranty against infringement with a separate statute of limitations period. Because Edify did not tender Version 9.5 until 2005, the four-year statute of limitations does not expire until 2009.

Intervoice also argues that because any subsequent system upgrade would be "incidental" to Edify's sale of the IVR system to SEL in 2001, the limitations period for SEL's breach of warranty claim started when delivery of the Version 8.0 software was made. However, the cases on which Intervoice relies do not support this position. For instance, Intervoice cites to *North American Leisure Corp. v. A&B Duplicators, Ltd.*, 468 F.2d 695 (2d Cir. 1972), in support of its argument that "Incidental services, such as system upgrades, do not alter the basis transaction" (DI-137, Intervoice Brief at 14), but the case involved a vendor's lien on goods under N.Y. Lien Law—it was not a UCC breach of warranty claim. Here, SEL had to install a new software version, and acquire new hardware. Intervoice also erroneously relies on *TK Power, Inc. v. Textron, Inc.*, 433 F. Supp. 2d 1058 (N.D. Cal. 2006), for the proposition that "system upgrading" is "incidental to sale of the software package" (DI-137, Intervoice Brief at 14), but the case contained no such holding. Rather, the case concerned whether the UCC or common law should apply to a transaction involving the development of prototypes for the testing and evaluation of a new product (*i.e.,* whether the transaction was predominantly a sale of "goods" or service). The portion cited by Intervoice (*TK Power*, 433 F. Supp. 2d at 1062) simply recited the decision from a case being discussed by the *TK Power* court in the context of this inquiry, and has no applicability here because of the different legal issue presented. Indeed, *TK Power* underscores the well-settled principle that there can be no blanket holding for transactions involving software. *See id.* ("Because software packages vary depending on the need of the individual consumer, we apply a case-by-case analysis.") (quoting *RRX Indus., Inc. v. Lab-Con, Inc.*, 772 F.2d 543, 546 (9th Cir. 1985)). In sum, the cases cited by Intervoice do not support its argument that Edify's

provision of the Version 9.5 software to SEL was "incidental." Rather, following the logic of *TK Power*, a case-by-case analysis here yields a very different result, where, due to Edify's decision to terminate product support for its Version 8.0 software, SEL had to install a new system comprising new software and hardware.

It is unclear on which portion of *Chatlos Systems, Inc. v. National Cash Register Corp.*, 479 F. Supp. 738 (D.N.J. 1979), Intervoice is relying, but this case does not support Intervoice's proposition, either. There, the court found that the transaction at issue—a computer system—was a sale of goods under the UCC even though there were service aspects involved in the transaction. *See id.* at 742. Finally, Intervoice's reliance on *Dynaco Corp. v. KLA Instruments Corp.*, 200 B.R. 750 (Bankr. D. N.H. 1996), is similarly misplaced because there, the plaintiff sought to toll the statute of limitations by arguing for a later delivery date of the good at issue, which is not an issue in this case.

### C. There is no evidence that SEL furnished Edify with specifications to customize the IVR system in a manner that infringed the Phoenix patents.

Although Intervoice contends that the basis for Phoenix's infringement claims stemmed from Edify's customization of the IVR system according to SEL's specifications, the evidence of record contradicts Intervoice's position. During the sales pitch to SEL, Edify informed SEL that the technology it was offering was pre-existing software that it had previously implemented for other Edify customers. (DI-145, Christopher Decl., ¶ 4; *see also* Marsh Decl., Ex. 18).[4] For example, in a presentation to SEL, Edify represented that "Our proven methodology is the mechanism," and discussed Charles Schwab as an example of "Speech Recognition Triumphs." (Marsh Decl. Ex. 18 at SEL 048417-18).

---

[4] Marsh Decl. Exhibit 18 is attached to the Declaration of Michelle Mancino Marsh dated September 26, 2008, filed herewith.

Indeed, an Edify presentation described the "Edify Solution" to SEL as employing technology it already had:

> EDIFY SOLUTION:
> Edify employed its CASE tool for rapid dialog design
> Edify also utilized its Adaptive SLM Grammar Generation Process
> - 'What product are you calling about?'

(DI-147-2, Marsh Decl. Ex. 15 at IVOICE 000420). Edify's "SLM" process, mentioned as part of the solution to SEL, is described in a white paper by Edify, which supports SEL's position that the speech recognition and linguistic analysis capabilities recited in the Phoenix patents could not have been based on anything specified by SEL:

> The height of speech recognition comes from a methodology called Statistical Linguistic Modeling (SLM). SLM is a process for designing the most flexible form of speech recognition application, sometimes called a "say anything" application. An SLM menu in the early stages of an application allows for the recognition of virtually any response a caller can utter when asked an open question, such as 'How may I help you.'

(DI-147-2, Marsh Decl. Ex. 14 at 8).

Furthermore, the various items listed as either SEL or Edify obligations in the communications between the parties for the construction and installation of the SEL IVR system did not mention any requirement for SEL to identify or design specifications for any of the software "engines" recited in the Phoenix patent claims at issue here. (*See, e.g.,* DI-147-2, Marsh Decl. Ex. 2; *see also* DI-142, SEL Brief at 5-8). Nor were there any requirements for SEL to write any of the software. (*See id.*). While SEL, at Edify's request, told Edify about certain desired capabilities the software was to perform, Edify retained sole control of how the IVR software (all versions) was written and how the system was to be implemented. (DI-145, Christopher Decl., ¶ 5). It is the specific implementation of those requested capabilities on which

Phoenix attempted to read the patent claims it asserted against SEL. Because Edify chose how to implement its software and already had the speech recognition technology to do so, Edify is responsible to warrant its buyer against patent infringement claims. *See SEB S.A. v. Sunbeam Corp.*, No. 02-80527-CIV, slip op. at 9, 11-12 (S.D. Fl. Feb. 19, 2003), *rev'd and remanded on other grounds*, 148 Fed. Appx. 774 (11th Cir. 2005) (seller required to indemnify buyer because buyer's provision of general specifications to the seller as to the capabilities, capacities and appearance of the product were not specifications that required the seller to manufacture the deep fryer in a way that violated the patent at issue) (DI-147-2, Marsh Decl. Ex. 16, Ex. 17); *Jack Frost Lab., Inc. v. Pfizer, Inc.*, No. 92-CV-9264, 1995 WL 293328, *2 (S.D.N.Y. 1995) (rejecting manufacturer's argument that because its buyers specified the size and color of the accused infringing gel packs, the products were "custom-made" to the buyers' "specifications," where patent holder's claim for patent infringement did not arise from the color or size of the gel packs); *id.* at *3 ("Jack Frost's claims of patent infringement are based on the composition of its gel pack. [The manufacturer] chose the composition of the film for the gel packs. That choice was not specified by [the buyers]. [The buyers] were not in a better position than [the manufacturer] to know of Jack Frost's patents.").

Tellingly, the declaration of former Intervoice vice president Ken Waln does <u>not</u> state that SEL itself customized the Edify software. (*See* DI-139, Waln Decl., ¶¶ 2, 7). Intervoice simply has not proffered any evidence that SEL's actions *vís-a-vís* the Edify system made any difference to the ultimate reading of the patent claims at issue on the IVR system.

**D.   The self-serving Intervoice-Phoenix stipulation is not case-dispositive.**

Intervoice's assertion that the stipulation it entered into with Phoenix (*see* DI-53) is "binding" and case-dispositive has no merit. The stipulation is an agreement by which Phoenix gave up its claims of patent infringement against the supplier of the accused system (Intervoice)

to sue the customer (SEL) and thus seek damages based ostensibly on a higher royalty base—a tactic which non-practicing patent entities (NPEs) such as Phoenix have been pursuing with increasing frequency. If Phoenix had licensed Intervoice, Intervoice's customers, including SEL, would have been licensed, and Phoenix would not have been able to seek royalties from multiple entities. Likewise, as is clear from the current litigation posture between SEL and Intervoice, it is in Intervoice's best interest to push patent infringement liability off on its customers.

There is no evidence that the contents of the stipulation are factually accurate; moreover, some statements concern questions of law.

Intervoice previously attempted to use the self-serving stipulation with Phoenix to avoid liability to SEL, filed in support of its motion to dismiss SEL's claim. The Court rejected Intervoice's reliance on the stipulation, holding:

> Setting aside the concerns regarding collusion where a plaintiff and third-party defendant stipulate to a set of 'facts' to the detriment of a defendant/third-party plaintiff, the purported facts set forth in the stipulation related to Intervoice's products remain in dispute. Sony's allegations are contrary to these assertions, raising questions of fact to be resolved over the course of litigation. A plaintiff is, of course, free to choose its theories of infringement. A plaintiff cannot, however, choose which products actually infringe.

(DI-99 at 6).

Furthermore, there is no basis for Intervoice to contend that the stipulation is binding on SEL, since SEL had no part in this stipulation (indeed, SEL disputes its contents) and cannot be bound by the statements therein. *See, e.g., Rice v. Glad Hands, Inc.*, 750 F.2d 434, 438 (5th Cir. 1985) ("Like contracts, stipulations must be interpreted in light of the circumstances under which they are made," and "the general rule is that a stipulation is only enforceable by a party to the stipulation <u>against other parties thereto</u>") (emphasis added); *Am. States Ins. Co. v. Bakhtiary*, No.

C 94-3092 FMS, 1995 WL 748060, *4 n.2 (N.D. Cal. Oct. 11, 1995) ("Parties may not bind this Court by entering into self-serving stipulations not supported by the record.").

The cases on which Intervoice relies do not support its argument but, to the contrary, support SEL's position that the stipulation cannot be binding on SEL. *See, e.g., In re Durability Inc.*, 212 F.3d 551, 555 (10th Cir. 2000) ("Stipulations are entered into in order to dispense with proof <u>over matters not in issue</u>, thereby promoting judicial economy at the convenience of the parties," emphasis added) (quoting *U.S. v. Montgomery*, 620 F.2d 753, 757 (10th Cir. 1980)); *Centennial Ins. Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378 (5th Cir. 1998) (involving a situation where both parties moved for summary judgment based on an undisputed set of facts); *Keller v. United States*, 58 F.3d 1194, 1199 n.8 (7th Cir. 1995) ("stipulations by a party or its counsel" are "<u>binding upon the party making them</u>," emphasis added); *Matthews v. Xerox Corp.*, 319 F. Supp. 2d 1166 (S.D. Cal. 2004) (involving admissions made in the complaint).

Moreover, as discussed in Section C, *supra*, there is evidence that SEL did not provide Edify with specifications for any of the software "engines" recited in the Phoenix patent claims at issue here, thereby contradicting the contents of the stipulation and precluding summary judgment for Intervoice. *See Anderson*, 477 U.S. at 248 ("disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment").

### E. Edify provided SEL with an IVR system that was the basis of Phoenix's patent infringement claims.

Intervoice also argues that it is not liable to SEL because it sold SEL only software, but no hardware, for the IVR system.[5] However, this argument is without merit because some of the claims that Phoenix asserted against SEL implicate only software (*e.g.,* claim 1 of the '172 patent and claim 1 of the '640 patent – the claims at issue here)—software that Edify sold to SEL. (*See*

---

[5] Although Edify did not sell SEL any hardware for the IVR system, Edify identified to SEL the various hardware that SEL had to acquire in order to implement the IVR system. (*See* DI-145, Christopher Decl., ¶ 7).

DI-142, SEL Brief, at 5-8).   Accordingly, Intervoice cannot escape liability to SEL for its breach of warranty against infringement.

### F. Phoenix had a "rightful claim" of infringement.

Intervoice has cited no legal authority for its allegation that Phoenix did not have a "rightful claim" to infringement required by UCC Section 2-312(3).  Under applicable UCC law, Phoenix's filing of the lawsuit against SEL in the first instance created a cloud on SEL's rightful enjoyment of the IVR system that Edify sold to SEL.  *See, e.g., Frank Arnold Contractors, Inc. v. Vilsmeier Auction Co., Inc.,* 806 F.2d 462, 464 (3d Cir. 1986) (it is sufficient for the buyer to show that there is a "substantial shadow" on the title.  It does not "matter whether [the claim is] eventually determined to be inferior or superior to the buyer's ownership.") (citation omitted); *Yttro Corp. v. X-Ray Mktg. Ass'n, Inc.*, 559 A.2d 3, 6 (N.J. Super. Ct. App. Div. 1989) ("the mere casting of a substantial shadow over [the] title, regardless of the ultimate outcome, is sufficient to violate a warranty of good title") (internal quotations and citations omitted).  That SEL settled with Phoenix does not preclude SEL's claim of breach of warranty against Intervoice.  *See, e.g., Cover v. Hydramatic Packing Co., Inc.,* 83 F.3d 1390, 1394 (Fed. Cir. 1996) (rejecting argument that because the patent holder's claims had not been fully adjudicated, no determination could be made as to whether a "rightful claim" exists, because this interpretation "would not lead to judicious public policy inasmuch as parties would eschew settlement and be forced to go to trial to discern whether a 'rightful claim' exists under federal patent law.").

Intervoice improperly relies on SEL's non-infringement and invalidity defenses to argue that SEL's defenses indicate that Phoenix's claims were not "rightful."  Intervoice advanced this argument previously in Intervoice's motion to dismiss.  This Court rejected the argument.

> This rule would create an onerous burden on defendants such as Sony, who are sued for patent infringement for the use of another's technology.  Sony would be required to either stand alone against

> Phoenix's infringement claim, or admit infringement and seek indemnity from Intervoice. The Federal Rules of Civil Procedure simply do not require parties to make such choices. The Rules explicitly allow pleading in the alternative.

(DI-99 at 5).

Furthermore, regardless of the likelihood that Phoenix ultimately would have succeeded in proving infringement of a valid claim, there is nothing in the record to indicate that Phoenix's claims were frivolous. Thus, the Court can, and should, find that Phoenix's infringement claims were rightful because they were colorable and were not frivolous on their face.

Moreover, the Official Comment on UCC Section 2-312 states, among other things:

> This section <u>rejects</u> the cases which recognize the principle that infringements violate the warranty of title but deny the buyer a remedy unless he has been expressly prevented from using the goods. Under this Article 'eviction' is not a necessary condition to the buyer's remedy since the buyer's remedy arises immediately upon receipt of notice of infringement; it is merely one way of establishing the fact of breach.

Official Comment, UCC § 2-312 (emphasis added).

With absolutely no basis for its argument that Phoenix's infringement claims were not "rightful," Intervoice's motion for summary judgment should be denied.

## IV. CONCLUSION

For the foregoing reasons, SEL requests that the Court deny Intervoice's motion for summary judgment.

Dated: September 26, 2008

/s/
_____
Michelle Mancino Marsh (*pro hac vice*)
mmarsh@kenyon.com
KENYON & KENYON LLP
One Broadway
New York, New York 10004-1050
Telephone: (212) 425-7200
Facsimile: (212) 425-5288

OF COUNSEL:

John Flock
jflock@kenyon.com
Elizabeth S. Tse
etse@kenyon.com
KENYON & KENYON LLP
One Broadway
New York, New York 10004-1050
Telephone: (212) 425-7200
Facsimile: (212) 425-5288

Victor J. Castellucci (CA SBN 203303)
vcastellucci@kenyon.com
KENYON & KENYON LLP
333 W. San Carlos Street, Suite 600
San Jose, CA 95110-2731
Telephone: (408) 975-7988
Facsimile: (408) 975-7501

*Attorneys for Third-Party Plaintiff
Sony Electronics Inc.*