1  VICTOR J. CASTELLUCCI (CA SBN 203303)
   vcastellucci@kenyon.com
2  MICHELLE MANCINO MARSH (*pro hac vice*)
   mmarsh@kenyon.com
3  KENYON & KENYON LLP
   333 W. San Carlos Street, Suite 600
4  San Jose, CA  95110-2731
   Telephone: (408) 975-7500
5  Facsimile: (408) 975-7501

6  *Attorney for Third-Party Plaintiff*
   *Sony Electronics Inc.*
7

8              **UNITED STATES DISTRICT COURT**

9             **NORTHERN DISTRICT OF CALIFORNIA**

10                **SAN FRANCISCO DIVISION**

11

| | |
|---|---|
| 12  PHOENIX SOLUTIONS, INC., a California corporation, <br>13 <br>14          Plaintiff, <br>   v. <br>15  SONY ELECTRONICS INC., a Delaware corporation, <br>16 <br>17          Defendant. <br>18  SONY ELECTRONICS INC., a Delaware corporation, <br>19 <br>20          Third-Party Plaintiff, <br>   v. <br>21  INTERVOICE, INC., a Texas corporation <br>22 <br>23          Third-Party Defendant. | **Case No. C 07-2112 (MHP)** <br><br>**THIRD-PARTY PLAINTIFF SONY ELECTRONICS INC.'S REPLY BRIEF IN SUPPORT OF MOTION FOR CONTENTIONS AND FOR SUMMARY JUDGMENT** <br><br>Date:  December 1, 2008 <br>Time:  2:00 pm <br>Courtroom 15, 18th floor |

24

25

26

27

28

Kenyon & Kenyon
LLP
New York

SONY ELECTRONICS INC.'S REPLY BRIEF IN SUPPORT OF
MOTION FOR CONTENTIONS AND FOR SUMMARY JUDGMENT
CASE NO. C 07-2112 (MHP)

# TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II. ARGUMENT .................................................................................................................. 2

    A.    The UCC applies to Edify's delivery of its Version 9.5 to SEL because the transaction at issue was predominantly a sale of goods .......................................... 2

    B.    SEL has shown that Phoenix had a "rightful claim" of infringement .................... 6

        1.    "Substantial Shadow" over title is the correct standard. .............................. 6

        2.    Determination of a "rightful claim" of infringement does not require full adjudication of infringement and invalidity ............................ 7

    C.    Intervoice's claim charts fail to show that Phoenix did not have a "rightful claim" against SEL ................................................................................................. 9

        1.    Intervoice's cries of surprise are unwarranted, as Intervoice has had notice of SEL's position since before June 2008 ........................................ 9

        2.    Non-Infringement and Invalidity issues are irrelevant ............................... 9

        3.    Phoenix proceeded against the earlier version of SEL's IVR system because there had only been discovery on that version prior to Phoenix and SEL's settlement ................................................................. 10

        4.    Intervoice's position that patent claims must be fully adjudicated runs contrary to law ................................................................................. 11

    D.    There is no evidence that SEL furnished Edify with specifications to customize the IVR system in a manner that infringed the Phoenix patents .......... 11

    E.    SEL is entitled to recover the settlement amount and attorneys' fees and expenses ............................................................................................................... 12

III. CONCLUSION ............................................................................................................. 13

KENYON & KENYON LLP
NEW YORK

SONY ELECTRONICS INC.'S REPLY BRIEF IN SUPPORT OF
MOTION FOR CONTENTIONS AND FOR SUMMARY JUDGMENT
CASE NO. C 07-2112 (MHP)

-i-

# **TABLE OF AUTHORITIES**

**Cases**

*84 Lumber Co. v. MRK Techs., Ltd.*,
    145 F. Supp. 2d 675 (W.D. Pa. 2001) .......................................................................... 8, 10

*American Container Corp. v. Hanley Trucking Corp.*,
    268 A.2d 313 (N.J. Super. Ct. Ch. Div. 1970) .................................................................. 6

*Barclay & Co. v. Necchi Sewing Mach. Sales Corp.*,
    101 F. Supp. 515 (S.D.N.Y. 1951) .................................................................................... 8

*Big Lots Stores, Inc. v. Luv N' Care*,
    No. 2:04-810, 2007 U.S. Dist. LEXIS 23150 (S.D. Ohio Mar. 29, 2007) ......................... 6

*Cover v. Hydramatic Packing Co., Inc.*,
    83 F.3d 1390 (Fed. Cir. 1996) ................................................................................ 7, 8, 10

*ePresence, Inc. v. Evolve Software, Inc.*,
    190 F. Supp. 2d 159 (D. Mass. 2002) ............................................................................... 4

*Frank Arnold Contractors, Inc. v. Vilsmeier Auction Co., Inc.*,
    806 F.2d 462 (3d Cir. 1986) ............................................................................................. 6

*Greentree Software, Inc. v. Delrina Tech., Inc.*,
    No. 95-20799 SW, 1996 WL 183041 (N.D. Cal. Apr. 11, 1996) ..................................... 4

*Micro Data Base Sys., Inc. v. Dharma Sys., Inc.*,
    148 F.3d 649 (7th Cir. 1998) ............................................................................................ 4

*RRX Indus., Inc. v. Lab-Con, Inc.*,
    772 F.2d 543 (9th Cir. 1985) ................................................................................. 2, 3, 4, 5

*SEB S.A. v. Sunbeam Corp.*,
    No. 02-80527-CIV, slip op. (S.D. Fl. Feb. 19, 2003) ..................................................... 12

*Stephens v. Tech. Int'l, Inc.*,
    393 F.3d 1269 (Fed. Cir. 2004) ...................................................................................... 13

*Stratoflex, Inc. v. Aeroquip Corp.*,
    713 F.2d 1530 (Fed. Cir. 1983) ........................................................................................ 8

*The Colonial Life Ins. Co. of Am. v. Electronic Data Sys. Corp.*,
    817 F. Supp. 235 (D.N.H. 1993) ................................................................................... 2, 4

*Yttro Corp. v. X-Ray Marketing Association, Inc.*,
    559 A.2d 3 (N.J. Super. Ct. App. Div. 1989) ................................................................... 6

KENYON & KENYON LLP
NEW YORK

SONY ELECTRONICS INC.'S REPLY BRIEF IN SUPPORT OF
MOTION FOR CONTENTIONS AND FOR SUMMARY JUDGMENT
CASE NO. C 07-2112 (MHP)

-ii-

**Statutes**

35 U.S.C. § 285 .................................................................................................................. 13

UCC § 2-106 ....................................................................................................................... 5

UCC § 2-312 ........................................................................................................... 6, 7, 9, 11

KENYON & KENYON LLP
NEW YORK

SONY ELECTRONICS INC.'S REPLY BRIEF IN SUPPORT OF
MOTION FOR CONTENTIONS AND FOR SUMMARY JUDGMENT
CASE NO. C 07-2112 (MHP)

-iii-

# I. INTRODUCTION AND SUMMARY OF ARGUMENT

Intervoice's opposition to SEL's motion for summary judgment and contentions neither raises any genuine issue of material fact nor establishes that a full adjudication of Phoenix's dismissed infringement claims is necessary in this simple UCC claim for breach of warranty against infringement.

Intervoice commits significant time in its opposition to claiming it did not know SEL would rely on Edify's Version 9.5 software as a basis for its UCC claim. This claim rings hollow when viewed with the pleadings and this Court's prior ruling which expressly addressed the later version of the software (*see* DI-131 at 2). Edify's Version 9.5 software is not new to Intervoice and certainly it possesses all relevant information relating to the software; therefore, additional discovery from SEL is not necessary.

The remainder of Intervoice's arguments all confirm its persistent desire to shirk its obligations to SEL. Each of Intervoice's arguments are unavailing and should be rejected by the Court, for at least the following reasons:

(1) Intervoice argues that the UCC does not apply to Edify's delivery of its Version 9.5 software to SEL because it allegedly gave the upgrade away for free to SEL as part of a 2005 maintenance agreement. However, the software was provided under the maintenance agreement and clearly renders the agreement as a sale of goods. The product support services were incidental to the Version 9.5 software sold by Edify to SEL.

(2) Intervoice again contends that Phoenix's claims against SEL were not "rightful," but cites to no legal authority in support of its position. Intervoice's position that full adjudication of Phoenix's patent claims is necessary for SEL to succeed is contrary to the greater weight of authority, and wasteful of judicial and party resources.

(3) While Intervoice argues that SEL furnished Edify with specifications for the IVR

KENYON & KENYON LLP
NEW YORK

SONY ELECTRONICS INC.'S REPLY BRIEF IN SUPPORT OF
MOTION FOR CONTENTIONS AND FOR SUMMARY JUDGMENT
CASE NO. C 07-2112 (MHP)

-1-

system, Intervoice offers no evidence that such alleged specifications, and not Edify's software itself, were necessary to Phoenix's infringement claim.

(4) Finally, with no legal support, Intervoice asserts that SEL is not entitled to the amount it paid to Phoenix to settle the infringement claims, nor the attorneys' fees and expenses incurred as a result of the Phoenix lawsuit. However, relevant case law provides that a buyer may recover the settlement amount from a seller who provided it with a product which subsequently becomes the subject of a patent infringement action filed by a third party.

Lastly, it begs noting that Intervoice misleads the Court, by again filing a section entitled "Undisputed Facts." (DI-155, Brief at 5). However, the statements in that section are not only disputed by SEL but also violate this Court's Standing Order regarding Joint Statements of Undisputed Facts.[1]

## II.   ARGUMENT

### A. The UCC applies to Edify's delivery of its Version 9.5 to SEL because the transaction at issue was predominantly a sale of goods.

Intervoice contends that Edify's delivery of Version 9.5 of its software to SEL cannot form the basis of SEL's breach of warranty claim because it was provided under a "service contract." However, this argument is legally and factually unsupported.

It is well-settled that the applicability of the UCC to a particular transaction depends on whether "the essence of the agreement" is predominantly a sale of goods or provision of services. *See, e.g., RRX Indus., Inc. v. Lab-Con, Inc.*, 772 F.2d 543, 546 (9th Cir. 1985); *see also, e.g., The Colonial Life Ins. Co. of Am. v. Elec. Data Sys. Corp.*, 817 F. Supp. 235, 238-39 (D.N.H. 1993) (the test is "whether their predominant factor, their thrust, their purpose, reasonably stated … is a

---

[1] SEL also disputes the characterization of the statements in Section II of Intervoice's opposition brief ("Correction of Facts from Sony's 'Factual Background'"), which contains Intervoice's own version of the disputed facts. (DI-155, Brief at 2-3).

KENYON & KENYON LLP
NEW YORK

SONY ELECTRONICS INC.'S REPLY BRIEF IN SUPPORT OF
MOTION FOR CONTENTIONS AND FOR SUMMARY JUDGMENT
CASE NO. C 07-2112 (MHP)

-2-

transaction of sale") (citations omitted, ellipses in original).  Transactions involving software "vary depending on the needs of the individual consumer" and are analyzed on a case-by-case basis.  *RRX*, 772 F.2d at 546.

Although Intervoice asserts that Version 9.5 "was covered under a series of maintenance and services support agreements" (DI-155, Brief at 7), a proper analysis yields a very different result.  It is undisputable that the underlying transaction between SEL and Edify involved both goods (*e.g.,* software) and services (*e.g.,* product support); the issue is whether the software predominates.

Under Edify's "Maintenance Program," SEL paid Edify for maintenance renewals to various aspects of the IVR system; for example, according to Edify's June 30, 2005, invoice to SEL, maintenance renewals were made for items such as:

- "Nuance Speech Recognition Tier B ports" (96 ports at a unit price of $168.24 per port, totaling $16,151.04);

- "Advanced Speech Recognition" ($841.23);

- "VAS ports" (96 ports at $131.44 each, totaling $12,618.24);

- "Voice Assistant Service" ($157.73);

- "Runtime Engine 7.0" ($2,628.83);

- "Vocalizer TTS" (18 ports at $157.73 each, totaling $2,839.14);

- "Advanced Text-to-Speech Services" ($315.45).

(*See* DI-156, Laloge Decl. Ex. 2).  As part of the annual maintenance, for which Edify charged SEL a total of $111,785 in 2005 (*see id.*), SEL was entitled to new Edify software such as Version 9.5.  *See* DI-156, Laloge Decl. Ex. 3 at 1 (listing items that a Maintenance Program customer would be entitled to).  All of the items in the maintenance renewal pertain to the previously-sold IVR system, which Intervoice has not denied and cannot deny is a "good."

KENYON & KENYON LLP
NEW YORK

SONY ELECTRONICS INC.'S REPLY BRIEF IN SUPPORT OF
MOTION FOR CONTENTIONS AND FOR SUMMARY JUDGMENT
CASE NO. C 07-2112 (MHP)

-3-

SEL's maintenance renewal with Edify is similar to the situation presented in *Greentree Software, Inc. v. Delrina Technology, Inc.*, where the buyer entered into a "membership agreement" with the seller, which gave the buyer access to the seller's software product line, training programs, and technical support for a one-year period. *See Greentree*, No. 95-20799 SW, 1996 WL 183041, at *1 (N.D. Cal. Apr. 11, 1996). The court held that the transaction, a "mixed" sale of goods and services, was governed by the UCC because the sale of the software was the primary transaction between the parties. *See id.* at *3 ("Greentree's main goal when becoming a Pro-VAR member was to gain access to Delrina's PerForm software so that it could be incorporated in Greentree 4.0. The support services provided by Delrina in conjunction with this software were secondary to the software itself.").

Other courts have similarly held that the service aspect of a "mixed" or "hybrid" transaction does not prevent applicability of the UCC if the purpose of those services was to support the good. *See, e.g., Colonial Life*, 817 F. Supp. at 239 (UCC applied because "[a]lthough the Agreement did contemplate many years of servicing, the purpose or thrust of these services was support of [the seller's] product, the Insurance Machine, in accommodating [the buyer's] business practices."). *See also Micro Data Base Sys., Inc. v. Dharma Sys., Inc.*, 148 F.3d 649, 654-55 (7th Cir. 1998) (UCC applied because "[a]lthough the contract recites that half of the contract price is for [seller's] 'professional services,' these were not services to be rendered to [buyer] but merely the labor to be expended by [the seller] in the 'manufacture' of the 'good' from existing software."); *ePresence, Inc. v. Evolve Software, Inc.*, 190 F. Supp. 2d 159, at *4 (D. Mass. 2002) (purchase of licensed programs and maintenance services, at an annual cost of $540,000, was predominantly a sale of goods because "the software programs themselves were the essence of the Agreement;" and California Commercial Code applied to transaction, including software upgrade). The *RRX* case, which Intervoice relies on in its brief, holds that "[w]hen a

KENYON & KENYON LLP
NEW YORK

SONY ELECTRONICS INC.'S REPLY BRIEF IN SUPPORT OF
MOTION FOR CONTENTIONS AND FOR SUMMARY JUDGMENT
CASE NO. C 07-2112 (MHP)

-4-

sale predominates, incidental services provided do not alter the basic transaction," and here, as in the *RRX* case, the product support services, which were part of the overall maintenance renewal with Edify, do not defeat characterization of the transaction as a good to prevent applicability of the UCC.  *See RRX*, 772 F.2d at 546.

Intervoice again contends that SEL's acquisition of Version 9.5 of the Edify software is "incidental to the original transaction" (*i.e.,* Edify's sale of the IVR in 2001).  (DI-155, Brief at 8).  Despite Intervoice's trivialization of the transaction, SEL was required to obtain Version 9.5 specifically because Edify was no longer supporting the old software.  SEL had to obtain new hardware to run Edify's Version 9.5.  (DI-145, Christopher Decl., ¶ 9).  Maintenance of the SEL IVR system would have been meaningless if SEL did not obtain Edify's Version 9.5 software.

Intervoice also argues that the UCC does not apply because Version 9.5 was a "Free Software Upgrade."  However, as discussed above, the software was covered by the annual maintenance fees paid by SEL.  As Intervoice acknowledged, a UCC "sale" is defined as "the passing of title from the seller to the buyer <u>for a price</u>" (UCC § 2-106, emphasis added), and here, the maintenance renewal fees included the price of new software updates and upgrades.  Intervoice's interpretation of the term "free upgrade" is purely semantic and should be viewed as such.

Finally, although Intervoice concedes that "the Phoenix patents are directed towards speech recognition technology systems," (DI-155, Brief at 8), Intervoice continues to deny that it provided SEL with an IVR system with such capabilities.  But the very documents on which Intervoice relies—the 2005 maintenance renewal invoices—show that what Edify sold to SEL contained the speech recognition features recited in the Phoenix patents.  *See* DI-156, Laloge Decl. Ex. 2 (listing maintenance renewals for, among other things, "Advanced Speech Recognition," "Advanced Text-to-Speech Services"); *see also* DI-147-2, Marsh Decl. Ex. 14 at 8

KENYON & KENYON LLP
NEW YORK

SONY ELECTRONICS INC.'S REPLY BRIEF IN SUPPORT OF
MOTION FOR CONTENTIONS AND FOR SUMMARY JUDGMENT
CASE NO. C 07-2112 (MHP)

-5-

("The height of speech recognition comes from a methodology called Statistical Linguistic Modeling (SLM). SLM is a process for designing the most flexible form of speech recognition application, sometimes called a "say anything" application.").

**B.      SEL has shown that Phoenix had a "rightful claim" of infringement.**

**1.      "Substantial Shadow" over title is the correct standard.**

Intervoice has cited to no legal authority for its contention that a "rightful claim" under UCC Section 2-312(3) cannot be met by showing that there was a "substantial shadow" over title or that Phoenix's claims were "not frivolous on its face." (DI-155, Brief at 9). As the Court has recognized, there is little case law addressing the meaning of "rightful claim." (DI-99 at 4).[2] In one case that has addressed the issue, *Yttro Corp. v. X-Ray Marketing Association, Inc.*, the court held that "[t]he mere casting of a substantial shadow over [the] title, regardless of the ultimate outcome, is sufficient to violate a warranty of good title." *Yttro*, 559 A.2d 3, 6 (N.J. Super. Ct. App. Div. 1989).

This holding is consistent with the Official Comments on UCC Section 2-312, which state:

> This section rejects the cases which recognize the principle that infringements violate the warranty of title but deny the buyer a remedy unless he has been expressly prevented from using the

---

[2]   Intervoice also argues that SEL's citation to *Frank Arnold Contractors, Inc. v. Vilsmeier Auction Co., Inc.*, 806 F.2d 462 (3d Cir. 1986), is irrelevant because the case involves UCC Section 2-312(1), not Section 2-312(3). However, this argument is without merit. In *Yttro*, the court expressly relied upon *American Container Corp. v. Hanley Trucking Corp.*, 268 A.2d 313 (N.J. Super. Ct. Ch. Div. 1970), which interpreted UCC Section 2-312(1), to render its holding. *See Yttro*, 559 A.2d at 6.

Moreover, Intervoice's attempts to distinguish *Big Lots Stores, Inc. v. Luv N' Care*, No. 2:04-810, 2007 U.S. Dist. LEXIS 23150 (S.D. Ohio Mar. 29, 2007), are without merit. First, Intervoice argues that "[w]hile Big Lots quotes both subsections (1) and (3) of Ohio's version of U.C.C. § 2-312, the case does not compare the sections," (DI-155, Brief at 10), but it is more telling that the court rendered its decision based on a plain reading of the Ohio statute and did not distinguish between sub-sections (1) and (3). *See Big Lots*, 2007 U.S. Dist. LEXIS 23150 at *27-28. Second, Intervoice misleads this Court by stating that the *Big Lots* court granted summary judgment on the breach of warranty of non-infringement "only after concluding that direct infringement had occurred." (DI-155, Brief at 10). However, nowhere in the opinion does it state that the court conducted an infringement analysis in rendering its decision. *See Big Lots*, 2007 U.S. Dist. LEXIS 23150 at *27-28.

KENYON & KENYON LLP
NEW YORK

SONY ELECTRONICS INC.'S REPLY BRIEF IN SUPPORT OF
MOTION FOR CONTENTIONS AND FOR SUMMARY JUDGMENT
CASE NO. C 07-2112 (MHP)

-6-

> goods.  Under this Article 'eviction' is not a necessary condition to the buyer's remedy since the buyer's remedy arises immediately upon receipt of notice of infringement; it is merely one way of establishing the fact of breach.

Official Comment 4, UCC § 2-312 (1999) (emphasis added).

### 2. Determination of a "rightful claim" of infringement does not require full adjudication of infringement and invalidity.

In its opposition, Intervoice continues to baselessly contend that Phoenix's claims of infringement against SEL were not "rightful" because they have not been fully adjudicated.  To support its argument, Intervoice points to the motion for summary judgment of invalidity filed by Wells Fargo, another company that was sued by Phoenix for patent infringement.  However, the litigation strategy of a third party has nothing to do with whether Phoenix's claims are "rightful" under UCC Section 2-312(3), and Intervoice has not cited to any cases that say otherwise.  Moreover, Phoenix did not assert against Wells Fargo at least one of the claims at issue here, claim 1 of the '172 patent. (*See, e.g.,* CV-08-0863, DI-1, Complaint at 2).

Notwithstanding Intervoice's attempts to minimize it, *Cover v. Hydramatic Packing Co., Inc.* serves as the best guidance as to how the term "rightful claim" should be interpreted. *See Cover v. Hydramatic Packing Co., Inc.,* 83 F.3d 1390 (Fed. Cir. 1996).  In *Cover*, the buyer and the seller separately settled the infringement claims with the patent holder but a UCC breach of warranty against infringement claim remained.  The Federal Circuit stated:

> Inasmuch as Sea Gull and Hydramatic settled with the patentee, the patentee and the patent code are no longer in the picture.  Sea Gull and Hydramatic remain, and their legal relationship is defined and governed by § 2312(c) of the UCC, which has nothing to do with the liability of Sea Gull and Hydramatic under the patent laws, which are simply irrelevant at this point.

*Cover*, 83 F.3d at 1393-94.  The Court rejected Sea Gull's argument that "rightful claim" under the UCC should be equated with patent liability, noting that this interpretation "would not lead to

KENYON & KENYON LLP
NEW YORK

SONY ELECTRONICS INC.'S REPLY BRIEF IN SUPPORT OF
MOTION FOR CONTENTIONS AND FOR SUMMARY JUDGMENT
CASE NO. C 07-2112 (MHP)

-7-

judicious public policy inasmuch as parties would eschew settlement and be forced to go to trial to discern whether a 'rightful claim' exists under federal patent law." *Id.* at 1394.

Indeed, Intervoice has conceded in its opposition brief that "a judicial finding of direct infringement may not be necessary." (DI-155, Brief at 12-13). But Intervoice also contends that "the Court must, at a minimum, compare the scope of the patents at issue with the allegedly infringing products" (which reads like an infringement analysis) as well as "determine if the patents are valid." (*Id.*).[3] In support of this proposition, Intervoice cites to *84 Lumber Co. v. MRK Technologies, Ltd.*, but its reliance on this case is unavailing.

To the contrary, in *84 Lumber Co.*, the court stated that it did not disagree with the Federal Circuit's statement in *Cover* that a rightful claim does not require a finding of absolute patent liability. *See 84 Lumber Co.*, 145 F. Supp. 2d 675, 680 (W.D. Pa. 2001). Rather, the court suggested that there should be a determination of whether there was an "adequate basis" for the claim of infringement in that case. *See id.* Nowhere did the court state that full claim construction, or an adjudication of infringement or validity, was necessary. Indeed, such a proposition would be wholly inconsistent with *Cover*. *See Cover*, 83 F.3d at 1393 ("Inasmuch as Sea Gull and Hydramatic settled with the patentee, <u>the patentee and the patent code are no longer in the picture</u>.") (emphasis added).

Here, Phoenix had a "rightful claim," *i.e.* an adequate basis for proceeding. Phoenix's claims cast doubt on SEL's ability to enjoy the IVR products that Edify sold to SEL for the IVR

---

[3] Moreover, Intervoice has cited to no authority permitting adjudication of the validity or invalidity of a patent in a third-party action where the patent owner is <u>not</u> a party and cannot protect its property interests. For instance, at a bare minimum, the patent owner should be entitled to rebut a challenger's case that his or her patent is invalid. *See, e.g., Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1534 (Fed. Cir. 1983) ("The party supporting validity has no initial burden to prove validity, having been given a procedural advantage requiring that he come forward only after a prima-facie case of invalidity has been made."); *see also Barclay & Co. v. Necchi Sewing Mach. Sales Corp.*, 101 F. Supp. 515, 518 (S.D.N.Y. 1951) ("But assuming, arguendo, that [the declaratory judgment action] plaintiff's proof is of sufficient probative value, <u>the invalidity of the design patent may not be adjudicated in this suit as the patent owner is not a party</u>.") (emphasis added).

KENYON & KENYON LLP
NEW YORK

SONY ELECTRONICS INC.'S REPLY BRIEF IN SUPPORT OF
MOTION FOR CONTENTIONS AND FOR SUMMARY JUDGMENT
CASE NO. C 07-2112 (MHP)

-8-

system; indeed, Phoenix's claims have caused SEL to incur legal fees, to disable the IVR system, and to revert back to a classic touchtone system.

### C. Intervoice's claim charts fail to show that Phoenix did not have a "rightful claim" against SEL.

#### 1. Intervoice's cries of surprise are unwarranted, as Intervoice has had notice of SEL's position since before June 2008.

Intervoice alleges that SEL is trying to change the rules of the game late in the proceedings. However, as the Court well knows, SEL has repeatedly signaled its intent to rely on the later, 2005 acquisition of Edify software Version 9.5, both in its Opposition to Intervoice's Motion for Leave to Amend (DI-126, Brief at 1-2) and in its Preliminary Contentions (*e.g.,* DI-158, Davison Decl., Ex. 3). The Court itself has acknowledged SEL's contention. (DI-131 at 2).

Intervoice's feigned surprise and alleged ignorance of SEL's pleadings, and the allegations contained therein, ring hollow. Intervoice's focus on the wording of the claim charts in SEL's Opening Brief (DI-144-2, Brief at 5-8) is a feeble attempt to avoid the substance of those charts, which is identical to the substance in SEL's Preliminary Contentions from June 2008 (DI-158, Davison Decl., Ex. 3).

#### 2. Non-Infringement and Invalidity issues are irrelevant.

Intervoice's opposition brief sets forth "claim charts" purporting to establish that SEL's IVR system "does not operate in a manner that could possibly infringe either of the Claims-at-Issue." (DI-155, Brief at 14). Fundamentally, Intervoice's attempts to exculpate itself from liability under UCC Section 2-312(3) miss the point, for reasons which have been discussed earlier. Intervoice's focus on SEL's ultimate success in proving non-infringement and/or invalidity of the claims that Phoenix asserted simply does not matter here. As discussed above, the Federal Circuit provided in *Cover v. Hydramatic Packing Co., Inc.* the best guidance as to how the term "rightful claim" should be interpreted. The Federal Circuit rejected the argument

KENYON & KENYON LLP
NEW YORK

SONY ELECTRONICS INC.'S REPLY BRIEF IN SUPPORT OF
MOTION FOR CONTENTIONS AND FOR SUMMARY JUDGMENT
CASE NO. C 07-2112 (MHP)
-9-

that a "rightful claim" under the UCC should be equated with patent liability. *See Cover*, 83 F.3d at 1393-94. Similarly, in *84 Lumber Co. v. MRK Technologies, Ltd.*, the Pennsylvania district court did not hold that a full adjudication of infringement or validity was necessary; rather, the court suggested that there should be an "adequate basis" for the claim of infringement. *See 84 Lumber*, 145 F. Supp. 2d at 680.

Because of Edify's sale of products to SEL, SEL had to defend itself from Phoenix's patent infringement lawsuit. As part of its defense, SEL alleged non-infringement and invalidity of the asserted claims. As this Court has noted, there is nothing improper in the alternative pleadings that SEL filed in its suit with Phoenix, and in its claim against Intervoice. (*See* DI-99 at 5).

### 3. Phoenix proceeded against the earlier version of SEL's IVR system because there had only been discovery on that version prior to Phoenix and SEL's settlement.

When Phoenix sued SEL, SEL was running Edify version 9.5. (DI-161, Christopher Decl., ¶ 2). However, during discovery Phoenix had not sought documents relating to that version from Intervoice. Therefore, it is not surprising that Phoenix never provided preliminary infringement contentions, under Patent L-R 3-1, reading any asserted patent claims on SEL's IVR system using Edify's Version 9.5. Moreover, when Phoenix served its Preliminary Infringement Contentions, SEL's document production obligations under Patent L-R 3-4 had not yet arisen.

Phoenix and SEL settled the lawsuit before the parties engaged in extensive fact discovery. Thus, there never was an opportunity for Phoenix to amend its infringement contentions, as it would have had to do (since SEL was running the later Edify software version during the pendency of the litigation).

KENYON & KENYON LLP
NEW YORK

SONY ELECTRONICS INC.'S REPLY BRIEF IN SUPPORT OF
MOTION FOR CONTENTIONS AND FOR SUMMARY JUDGMENT
CASE NO. C 07-2112 (MHP)

-10-

**4. Intervoice's position that patent claims must be fully adjudicated runs contrary to law.**

Under Intervoice's logic, unsubstantiated by any case law whatsoever, SEL would have had to lose in court before it could recover anything from Intervoice. The thrust of Intervoice's argument is that any SEL win in court would have established that Phoenix's claim against SEL was not rightful, however hard-fought the litigation may have been. Thus, Intervoice would have this Court believe that, if SEL had gone to trial and won (by establishing either non-infringement or invalidity), SEL would have had no claim against Intervoice. Such an untenable position dismisses the damages SEL would have suffered by having to pay attorneys' fees, expert fees, attendant discovery, pre-trial and trial expenses, and enduring business interruption through diversion of in-house technical, business, and legal resources to work on the litigation, all to remove the substantial cloud on the product it purchased from Edify/Intervoice.

**D. There is no evidence that SEL furnished Edify with specifications to customize the IVR system in a manner that infringed the Phoenix patents.**

In opposition to SEL's motion, Intervoice claims to need discovery from SEL on its own Version 9.5 in order to fully respond. Certainly, Intervoice is in the best position to know precisely what it or its predecessor provided to SEL. SEL maintains that the goods provided to it were not "customized" as to exempt Intervoice under U.C.C. Section 2-312(3). Intervoice's repeated claims that SEL masterminded and customized the IVR system is completely unsubstantiated and defies all logic. SEL went to Edify precisely because of its stated expertise in the area of voice recognition products. (*See, e.g.,* DI-162-2, Marsh Decl., Ex. 18). There is simply no evidence that SEL instructed Edify with respect to, *inter alia*, the speech recognition features recited in the Phoenix patents. Tellingly, Intervoice repeatedly has failed to provide any showing whatsoever that the alleged "SEL" specifications required Intervoice to provide its product in some way that gave rise to Phoenix's claim. Therefore, summary judgment on this

KENYON & KENYON LLP
NEW YORK

SONY ELECTRONICS INC.'S REPLY BRIEF IN SUPPORT OF
MOTION FOR CONTENTIONS AND FOR SUMMARY JUDGMENT
CASE NO. C 07-2112 (MHP)

-11-

issue is proper.

The cases cited by SEL in its opening brief support its position completely. It is obvious why Intervoice wants to discredit the *SEB S.A. v. Sunbeam Corp.* case—the logic and reasoning of that case are directly applicable here.[4] As was the case in *Sunbeam,* because it was Edify who chose how to implement its software and because it already had the speech recognition technology to do so, Edify is responsible to warrant its buyer against patent infringement claims. *See SEB S.A. v. Sunbeam Corp.*, No. 02-80527-CIV, slip op. at 9, 11-12 (S.D. Fl. Feb. 19, 2003), *rev'd and remanded on other grounds*, 148 Fed. Appx. 774 (11th Cir. 2005) (seller required to indemnify buyer because buyer's provision of general specifications to the seller as to the capabilities, capacities and appearance of the product were not specifications that required the seller to manufacture the deep fryer in a way that violated the patent at issue) (DI-147-2, Marsh Decl. Exs. 16-17).

### E. SEL is entitled to recover the settlement amount and attorneys' fees and expenses.

Without citing to any legal authority, Intervoice baselessly asserts that SEL is not entitled to recover either the settlement amount with Phoenix or the attorneys' fees and expenses SEL has incurred as a result of Phoenix's claims. However, this position is contradictory to the holding in *SEB S.A. v. Sunbeam Corp.*, which addressed this very issue. In that case, the court held on a motion for summary judgment that the seller had supplied Sunbeam with a product that infringed a third party's patents and that the seller must indemnify Sunbeam for the $2 million dollar settlement it had entered into with the patent owner to avoid trial. *See Sunbeam*, slip op. at 11-12 (Marsh Decl. Ex. 16). Despite the seller's argument that the buyer had provided specifications,

---

[4] Contrary to Intervoice's contention, SEL did not cite to the Eleventh Circuit's decision in the *Sunbeam* case but merely noted the complete history of the district court's decision in that case, which is required under proper *Blue Book* citation. The district court's opinion in *Sunbeam* was properly cited to as an unpublished decision with no restrictions placed on it by the court as to its citation.

Kenyon & Kenyon LLP
New York

SONY ELECTRONICS INC.'S REPLY BRIEF IN SUPPORT OF
MOTION FOR CONTENTIONS AND FOR SUMMARY JUDGMENT
CASE NO. C 07-2112 (MHP)

-12-

the court determined that the "specifications did not require [the seller] to manufacture the deep fryer in a way that violated [the patent owner's] patent." *Id.* at 9. Intervoice, who advances the same argument, has not proffered any cases that hold to the contrary.

Intervoice also alleges that it continued to offer assistance up until the time that SEL filed the complaint against it. Despite Intervoice's initial reassurances, Intervoice repeatedly refused to accept its obligations to defend and indemnify SEL, forcing SEL to file suit against it. (DI-146-2, Siegel Decl., ¶ 7).[5]

Finally, at the end of its Opposition Brief, Intervoice contends that Phoenix's claims were so baseless that SEL "would have been successful in its efforts to recover its attorneys' fees pursuant to 35 U.S.C. § 285." (DI-155, Brief at 24-25). Section 285 entitles a prevailing litigant in a patent infringement case to an award of attorneys' fees in an "exceptional" case. The standard of proof in such a case is "clear and convincing" evidence. *See, e.g., Stephens v. Tech. Int'l, Inc.*, 393 F.3d 1269, 1273 (Fed. Cir. 2004) ("the district court must determine whether [the moving party] proved by clear and convincing evidence that [the] case is 'exceptional'"). Intervoice never makes any kind of serious attempt to prove that Phoenix's non-infringement and/or invalidity allegations met such a standard.

## III. CONCLUSION

For the foregoing reasons, SEL submits that Intervoice is liable for Edify's breach of warranty, and that Intervoice should be required to pay SEL's attorneys' fees and expenses incurred in litigating Phoenix's patent infringement claim, and to compensate SEL for the amount paid in settlement of the claim.

---

[5] Furthermore, subsequent attempts by SEL in mid-June 2007 to seek Intervoice's assistance, especially to help prepare Preliminary Invalidity Contentions under Patent L-R 3-3, were ignored by Intervoice. (*See, e.g.,* Marsh Declaration Ex. 19, attached herewith). However, during this timeframe and without SEL's knowledge, Intervoice was conferring with Phoenix to prepare and enter into the collusive Stipulation (DI-53), which was entered into on June 21, 2007, and filed with the Court on June 25, 2007.

KENYON & KENYON LLP
NEW YORK

SONY ELECTRONICS INC.'S REPLY BRIEF IN SUPPORT OF
MOTION FOR CONTENTIONS AND FOR SUMMARY JUDGMENT
CASE NO. C 07-2112 (MHP)

-13-

1 | Dated:  October 6, 2008

2 | /s/

3 | Michelle Mancino Marsh (*pro hac vice*)
mmarsh@kenyon.com
4 | KENYON & KENYON LLP
One Broadway
5 | New York, New York 10004-1050
Telephone:  (212) 425-7200
6 | Facsimile: (212) 425-5288

7 | OF COUNSEL:

Victor J. Castellucci (CA SBN 203303)
8 | John Flock
jflock@kenyon.com
vcastellucci@kenyon.com
KENYON & KENYON LLP
9 | Elizabeth S. Tse
etse@kenyon.com
333 W. San Carlos Street, Suite 600
San Jose, CA  95110-2731
10 | KENYON & KENYON LLP
Telephone: (408) 975-7500
One Broadway
Facsimile: (408) 975-7501
11 | New York, New York 10004-1050
Telephone:  (212) 425-7200
*Attorneys for Third-Party Plaintiff*
12 | Facsimile: (212) 425-5288
*Sony Electronics Inc.*

KENYON & KENYON
LLP
NEW YORK

SONY ELECTRONICS INC.'S REPLY BRIEF IN SUPPORT OF
MOTION FOR CONTENTIONS AND FOR SUMMARY JUDGMENT
CASE NO. C 07-2112 (MHP)

-14-