1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PHOENIX SOLUTIONS, INC.,

          Plaintiff,

  v.

SONY ELECTRONICS, INC.,

          Defendant.
_____/

SONY ELECTRONICS, INC.,

          Third-Party Plaintiff,

  v.

INTERVOICE, INC.,

          Third-Party Defendant.
_____/

No. C 07-02112 MHP

**AMENDED MEMORANDUM & ORDER**

**Re:  Sony's Motion for Leave to Amend Third-Party Complaint, Sony's Motion for Summary Judgment & Intervoice's Motion for Summary Judgment**

     Plaintiff Phoenix Solutions, Inc. ("Phoenix") brought this action against defendant Sony Electronics, Inc. ("Sony") alleging patent infringement.  Sony subsequently filed a third-party complaint against Intervoice, Inc. ("Intervoice") asserting a single cause of action for breach of warranty of title and against infringement.  Phoenix and Sony have settled the patent infringement action, and the court has entered a stipulation and order dismissing all claims and counterclaims between Phoenix and Sony.  Now before the court is Sony's motion for leave to file a second amended third-party complaint, and Sony and Intervoice's cross-motions for summary judgment. Having considered the parties' arguments and submissions, and for the reasons set forth below, the court enters the following memorandum and order.

BACKGROUND

The facts of this case as alleged have been recited in the court's prior orders, and therefore, only a focused summary is presented here. Sony is a Delaware Corporation with a place of business in San Diego, California. See Amended Third-Party Compl. ¶ 1. Intervoice is a Texas corporation with a principal places of business in Dallas, Texas. Id. ¶ 2. In the December 2001 to January 2002 time frame, Sony purchased software products and professional services for an interactive voice recognition system ("IVR system") from Edify Corporation ("Edify"). Id. ¶ 5, Exh. A. Edify was acquired by Intervoice in 2005 or 2006. Id. ¶¶ 7-8; Waln Dec. ¶ 3.[1]

After Sony purchased the software for its IVR system from Edify, Sony bought hardware for its IVR system that was not provided by Edify. Waln Dec. ¶¶ 9–10; Davison Dec., Exh. 7 at 3. The IVR system was then customized for Sony's use in its customer service call center. Waln Dec. ¶ 7. The customization was performed under the terms of a customer order schedule for Edify professional services, including maintenance and support services, whereby Sony furnished certain specifications which Edify configured and installed in the IVR system. Id. ¶ 7, Exhs. 1 & 2. Edify's objective was to enable Sony to have an IVR system for customer support service that used speech recognition to route telephone calls and process credit card authorizations. Wilcher Dec., Exh. 1. The customer order schedule for Edify professional services provided for ongoing technical support to Sony for software updates, debugging and other issues. Laloge Dec., Exh 3 at 1; Marsh Dec., Exh. 3. While the Edify IVR software, version 8.0, was originally delivered to Sony in February 2002, Edify continued to work to customize and debug the IVR system, which did not operate to Sony's satisfaction until 2003. Waln Dec. ¶ 5; Christopher Dec. ¶¶ 3 & 6; Marsh Dec., Exh. 3.

The Edify professional services contract, which included software maintenance and support services, was provided on an annual basis. Sony paid Edify for maintenance between July 2005 and June 2006. Laloge Dec., Exh. 2. In late 2005, Sony upgraded the Edify IVR software from version 8.0 to version 9.5 because Edify stopped supporting the older version used in Sony's system. Christopher Dec. ¶ 8. The version 9.5 software required the purchase of new hardware for Sony's

United States District Court

For the Northern District of California

1    IVR system.  Christopher Dec. ¶ 9.  The upgrade was provided to Sony by Edify free of charge

2    under the terms of the professional services contract.  Brummet Dec. ¶ 4; LaLoge Dec. ¶ 5.

3         In June 2006, Phoenix notified Sony that its IVR customer support system and its operation

4    were likely covered by one or more claims of certain patents owned by Phoenix.  Amended Third-

5    Party Complaint ¶ 9, Exh. B.  In August 2006, Sony advised Intervoice of Phoenix's allegations and

6    requested that Intervoice defend and indemnify Sony in connection with Phoenix's patent

7    infringement claims.  Id. ¶¶ 11–12, Exh. C.  Intervoice responded, stating "Intervoice unequivocally

8    affirms any contractual obligations it may have to Sony, including indemnification provisions that

9    may be triggered if Phoenix were to make a claim that an Intervoice product provided to Sony

10   infringes upon any of the Phoenix patents."  Id. ¶ 13, Exh. D.  Sony and Intervoice engaged in a

11   series of communications about possible obligations for indemnification based on the IVR system,

12   consisting of a combination of hardware and software, and modifications made to the system by

13   other than Edify or by Edify on behalf of Sony.  Id. ¶¶ 14–18, Exhs. D–G; see also Marsh Dec.,

14   Exhs. 5–7.  Later communications considered whether any such obligations arose from written

15   agreement or statute (i.e., a 1996 Edify Software License and Maintenance Purchase Agreement, a

16   2001 Edify Purchase Order Agreement or an applicable state adoption of the Uniform Commercial

17   Code ("U.C.C.")  Marsh Dec., Exhs. 8–9.  There were disagreements about the nature of the Sony

18   and Intervoice relationship, the contractual or statutory provisions at issue, and Sony's involvement

19   with the design, installation and maintenance of the IVR system.  Marsh Dec., Exh. 9.

20        In December 2006, Phoenix brought an action against Sony in the Central District of

21   California, alleging that Sony's IVR system infringed Phoenix's patents for speech recognition

22   processes.  Davison Dec., Exh. 6.  The patents at issue were U.S. Patent No. 6,615,172, U.S. Patent

23   No. 6,633,846, U.S. Patent No. 6,665,640 and U.S. Patent No. 7,050,977 (collectively, "patents-in-

24   suit").  Davison Dec., Exhs. 2–6.  The patents-in-suit issued in September 2003, October 2003,

25   December 2003, and May 2006, respectively.  Id.  In February 2007, Sony answered Phoenix's

26   complaint and filed a third-party complaint against Intervoice, seeking indemnification and asserting

27   that as the seller of the system, Intervoice breached the warranty of title and against infringement.

28   U.C.C. § 2-312, as codified in Cal. Comm. Code § 2312.  See Davison Dec., Exhs. 7 & 8 (Sony's

1   Answer to Phoenix's Complaint and Sony's Third-Party Complaint). Sony asserted that, to the

2   extent Phoenix's infringement claim against Sony is based on the IVR system, that system was

3   provided to Sony by Edify. Third-Party Compl. ¶ 10.

4        In April 2007, the Central District of California court *sua sponte* transferred the case to this

5   court. See Docket No. 1. Pursuant to this district's Local Rules, Phoenix served infringement

6   contentions on Sony and Sony served invalidity contentions on Phoenix. Sony also filed an

7   amended third-party complaint against third-party defendant Intervoice. See Docket No. 3

8   (Amended Third-Party Compl.) Sony's amended complaint reasserted that Phoenix's infringement

9   action "casts a substantial shadow" on Sony's title to the IVR system provided by Intervoice.

10  Amended Third-Party Compl. ¶ 10. Sony claimed that Intervoice delivered goods to Sony that were

11  "not free of the rightful claim of infringement by any third person, thereby breaching its warranty of

12  title and against infringement." Id. at ¶ 36. Sony asserted that Intervoice is liable for any judgment,

13  damages, fees or costs relating to any of the counts alleged in Phoenix's action. Id. ¶¶ 36–37.

14       Shortly thereafter, in June 2007, Phoenix and Intervoice stipulated to a number of "facts."[2]

15  See Stipulation, Docket Entry 53. The stipulation states that the accused IVR system consists of a

16  combination of hardware and software. Id. ¶ 1. The stipulation further provides that Edify was in

17  the business of selling (a) software licenses for systems that customers could combine with

18  equipment and other software to make an IVR system and (b) services to develop applications or

19  integrate its products with products provided by others. Id. ¶ 4. As stipulated, the software licensed

20  by Edify to Sony was customized by Edify to conform to Sony's requirements and combined with

21  equipment and other software not provided by Intervoice or Edify to make the accused IVR system

22  requested by Sony. Id. ¶ 5. As stipulated, the accused technology at issue in Phoenix's infringement

23  action is limited to the Sony-customized IVR system operating as a whole. Id. ¶¶ 6–7. As

24  stipulated, Phoenix does not believe that "Edify's non-[Sony] non-customized/configured software

25  used in the [Sony] product infringes any of the claims of the patents-in-suit." Id. ¶¶ 7–8.

26       In September 2007, at an initial Case Management Conference, Phoenix and Sony informed

27  the court of a potential settlement of the patent infringement action. See Docket No. 81. In

28  November 2007, pursuant to a settlement agreement between Phoenix and Sony, the court entered a

United States District Court

For the Northern District of California

4

United States District Court

For the Northern District of California

1   stipulation and order dismissing all claims and counterclaims between Phoenix and Sony with

2   prejudice.  See Docket No. 97.  The court subsequently denied Intervoice's motion to dismiss Sony's

3   third-party complaint and also denied Sony's motion to transfer the third-party action.  See Docket

4   Nos. 99 and 101.  Intervoice then filed an answer to the amended third-party complaint.  The court

5   granted Sony's motion to dismiss Intervoice's counterclaim and Intervoice's motion to amend its

6   answer to add a defense (or alternatively, to allege the negation of an element of third-party

7   plaintiff's prima facie case).  See Docket Nos. 113 and 131.  Intervoice's amended answer asserted

8   that at the time Intervoice delivered the voice recognition system to Sony, the Phoenix patents had

9   not yet issued, and therefore, Intervoice could not have breached the warranty of title and against

10  infringement.  See Docket No. 123, Exh. 1, at 5.

11      Now before the court is third-party defendant Intervoice's motion for summary judgment that

12  Sony has not satisfied the elements to prove its claim.  Sony opposes the motion, and moves for

13  summary judgment on its breach of warranty claim.  Sony alleges that the 2005 delivery of version

14  9.5 of the Edify software to Sony invoked a warranty of freedom from infringement that is separate

15  from the earlier transactions, i.e., the earlier sale of the software to Sony.  Sony also moves for leave

16  to amend its third-party complaint to add factual allegations about its receipt of the version 9.5

17  software, with which Sony purchased continuing technical support and for which Sony was required

18  to obtain new hardware to conform with the updated software.  Intervoice opposes both Sony

19  motions, arguing that the only relevant transaction between Edify and Sony was made in 2001 when

20  Sony purchased the IVF system with version 8.0 of the Edify software, and all other transactions are

21  incidental to that original purchase.

22

23  LEGAL STANDARD

24  I       Amendment of the Pleadings

25      A party may amend a pleading as a matter of course with leave of court after the period of

26  amending has expired.  Leave should be freely given when justice so requires.  Fed. R. Civ. P.

27  15(a)(2).  The Ninth Circuit has construed Rule 15(a) broadly, requiring that leave to amend be

28  granted with "extraordinary liberality."  Morongo Band of Mission Indians v. Rose, 893 F.2d 1074,

1   1079 (9th Cir.1990); <u>Poling v. Morgan</u>, 829 F.2d 882, 886 (9th Cir.1987) (describing a "strong

2   policy permitting amendment").  When the underlying facts or circumstances may form the proper

3   basis for relief, the opportunity to "test his claim on the merits" should be given to the plaintiff.

4   <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962).

5           In determining whether the court should grant leave to amend, it must consider (1) bad faith;

6   (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the

7   plaintiff has previously amended his complaint.  <u>Nunes v. Ashcroft</u>, 375 F.3d 805, 808 (9th Cir.

8   2004).  Not all of the factors merit equal consideration:  Prejudice is the "touchstone of the inquiry

9   under rule 15(a)" and "carries the greatest weight."  <u>Eminence Capital, LLC v. Aspeon, Inc.</u>, 316

10  F.3d 1048, 1052 (9th Cir. 2003); <u>Owens v. Kaiser Foundation Health Plan, Inc.</u>, 244 F.3d 708, 712

11  (9th Cir. 2001).  Futility of amendment, by itself, can also justify the denial of a motion to amend.

12  <u>Bonin v. Calderon</u>, 59 F.3d 815, 845 (9th Cir.1995), <u>cert. denied</u>, 516 U.S. 1051 (1996).

13  II.      <u>Summary Judgment</u>

14          Summary judgment is proper when the pleadings, discovery and affidavits show that there is

15  "no genuine issue as to any material fact and that the moving party is entitled to judgment as a

16  matter of law." Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the

17  case. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  Summary judgment is improper

18  when there is a dispute as to a material fact supported by sufficient evidence for a reasonable jury to

19  return a verdict for the nonmoving party.  <u>Id.</u>  When there are cross-motions for summary judgment,

20  the court must determine the merits of each motion and resolve all reasonable inferences against

21  moving party.  <u>McKay v. United States</u>, 199 F.3d 1376, 1380 (Fed. Cir. 1999).

22          The party moving for summary judgment bears the burden of identifying those portions of

23  the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material

24  fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  When the moving party bears the burden of

25  proof on an issue, it must submit evidence sufficient to establish that no reasonable jury could find

26  against it on that issue at trial.  <u>See</u> <u>Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l,</u>

27  <u>Inc.</u>, 389 F.3d 1370, 1376 (Fed. Cir. 2004); <u>Gart v. Logitech, Inc.</u>, 254 F.3d 1334, 1339 (Fed. Cir.

28  2001), <u>cert. denied</u>, 534 U.S. 1114 (2002).  On an issue for which the opposing party will have the

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1   burden of proof at trial, the moving party need only point out "that there is an absence of evidence to

2   support the nonmoving party's case." Celotex, 477 U.S. at 325.

3        Once the moving party meets its initial burden, the nonmoving party must go beyond the

4   pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a

5   genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Mere allegations or denials do not defeat a moving

6   party's allegations. Id.; Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 960

7   (9th Cir. 1994). The court may not make credibility determinations. Anderson, 477 U.S. at 255.

8   Inferences drawn from the facts must be viewed in the light most favorable to the party opposing the

9   motion. Masson v. New Yorker Magazine, 501 U.S. 496, 520 (1991).

10

11  DISCUSSION

12  I.      Amendment of Pleadings

13       Sony seeks leave to amend its complaint against Intervoice, in order to include the factual

14  allegation that Sony received the upgraded version of the Edify IVR software (version 9.5) from

15  Edify in order to obtain continuing software support. Intervoice opposes the motion and argues

16  leave to amend should be denied for the following reasons: prejudice to Intervoice, undue delay, bad

17  faith, and futility of the amendment.

18       A.      Prejudice

19       In considering the potential prejudice of the amendment, the court considers whether the new

20  amended claims would greatly change the parties' positions in the action, and require the assertion

21  of new defenses. See Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir.

22  1990). To be sure, Intervoice will need to respond to the additional factual allegations and may

23  require additional discovery to oppose these allegations. However, Sony's action against Intervoice

24  remains a breach of warranty claim and, on review of the record, it is evident that Intervoice was

25  aware that Sony intended to apply the facts surrounding the later software version to that claim.

26       In May 2008, the factual allegations regarding the later version software were raised in

27  Sony's opposition to Intervoice's leave to file an amended answer. See Docket No. 126 at 1–2

28  (Sony's Opposition to Intervoice's Motion for Leave to Amend Answer). In the subsequent

7

United States District Court

For the Northern District of California

1    memorandum and order, this court took note of Sony's assertion that discovery will bear out the

2    factual allegations that Sony had to purchase an upgraded version of software from Intervoice to

3    continue receiving software support services.  See Docket No. 131 at 2 (Memorandum & Order Re:

4    Third-Party Defendant Intervoice's Motion for Leave to Amend Answer).  In June 2008, Sony's

5    preliminary contentions compare Phoenix's patent to the later version 9.5 Edify software.  Docket

6    No. 158, Exh. 3 at 1 (Sony's Preliminary Contentions Regarding Edify Software).

7         The record makes plain that Sony's proposed amendment merely aligns the complaint with

8    Sony's prior references to the later version 9.5 Edify software.  When the defendant was on notice of

9    the additional proposed factual allegations, the defendant is not seriously prejudiced by the

10   amendment.  See, e.g., Sierra Club v. Union Oil Co. of California, 813 F.2d 1480, 1493 (9th Cir.

11   1987).  Because Intervoice was on notice of the proposed factual allegations from multiple previous

12   references to the later version of the Edify software, the court finds that Sony's amendment would

13   not greatly prejudice Intervoice.

14        B.    Undue Delay/Bad Faith

15        Sony filed its motion for leave to amend its third-party complaint a few months after

16   Intervoice's amended answer was granted.  Intervoice contends Sony's amendments were made with

17   undue delay and in bad faith, because Sony has known for years about all possible factual

18   allegations that are applicable in claims against Intervoice.  To determine undue delay, the court

19   considers whether the movant knew of the proposed amended facts or theories before the motion for

20   leave to amend.  See Amerisourcebergen Corp. v. Dialysist West, Inc., 465 F.3d 946, 953 (9th Cir.

21   2006), quoting Jackson v. Bank of Hawaii, 902 F.2d 1385, 1388 (9th Cir. 1990).

22        Sony's first amended complaint, which was amended over a year ago, alleges claims based

23   on the 2001 purchase order.  Sony asserts that its presently proposed amendments were prompted by

24   Intervoice's amended answer, whereas Intervoice argues Sony's proposed amendments respond to

25   Intervoice's motion for summary judgment.  Sony contends that, under Federal Rule of Civil

26   Procedure 15(b), an amendment of the pleadings to conform to issues raised by the pleadings may be

27   made at any time, even at trial.  Although Intervoice asserts that its amended answer merely changed

28   a counterclaim to an affirmative defense, the amendment did add factual allegations.  Namely,

United States District Court

For the Northern District of California

1   Intervoice added factual allegations that the IVR system was delivered to Sony before the Phoenix

2   patents issued and consequently, Intervoice could not have breached the warranty against

3   infringement.  The court finds that Sony's proposed amendments serve to expand on the temporal

4   relationship between Sony and Intervoice.

5           Intervoice argues unconvincingly that the date to determine the delay (and bad faith) should

6   begin from the date Phoenix's infringement claims were made, the date Phoenix claim charts were

7   served or the Phoenix and Sony settlement date.  The court gives little weight to the timing of

8   Sony's motion in this instance.  Even though Sony filed its motion after Intervoice moved for

9   summary judgment, the timing of a motion for leave to amend the complaint after a motion for

10  summary judgment does not necessarily preclude the amendment.  Federal Rule of Civil Procedure

11  15 permits amendments to add new claims even when a motion for summary judgment is pending.

12  Fed. R. Civ. P. 15(b).  See  William Inglis & Sons Baking Co. v. ITT Continental Baking Co., 668

13  F.2d 1014, 1053 (9th Cir. 1981).   Rule 15 also permits  a party opposing a motion for summary

14  judgment to assert new allegations, which may be treated as a motion to amend the complaint.  Fed.

15  R. Civ. P. 15(a).  See e.g., Mortkowitz v. Texaco Inc., 842 F. Supp. 1232, 1237 (N.D. Cal. 1994).

16  Sony argues its proposed amendments ensure that its third-party complaint includes all the

17  underlying facts to form a proper subject of relief.  The court sees no reason for Intervoice's pending

18  summary judgment motion to preclude Sony's amendments.  The court finds that Sony's motion to

19  amend is not untimely or brought in bad faith.

20          C.      Futility of Amendment

21          Sony contends the proposed factual allegations are not futile because they weigh against

22  Intervoice's recently added affirmative defenses.  Intervoice contends that the proposed amendment

23  is futile because it fails to state a claim because a "sale of goods" is required to invoke the U.C.C.

24  Intervoice contends the proposed factual allegations do not involve a sale or purchase and are thus

25  irrelevant because they merely acknowledge Sony's free receipt of a later, upgraded version of Edify

26  software.  Intervoice contends that the later version software receipt was merely incidental to the

27  original software purchase and was delivered free of charge.

28

9

The court is confused by Intervoice's untimely focus on whether the later software was associated with the original software purchase or whether it was included "free" as part of the professional services contract. Intervoice improperly collapses the permissibility of amendment and the merits of Sony's claim into one, when all that is required at this stage is to determine whether the proposed factual allegations would prejudice Intervoice in maintaining its defenses upon the merits. The court finds the proposed amendments would not do so. Sony's proposed amendments were in fact prompted by Intervoice's leave to file an amended answer only three months earlier. For the same reasons that the court granted Intervoice's motion to amend its amended answer, therefore, the court finds it is not proper to deny Sony's motion to amend its third-party complaint. The Ninth Circuit has repeatedly held that "a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." Nunes v. Ashcroft, 375 F.3d 805, 808 (9th Cir. 2004), citing Doe v. U.S., 58 F.3d 494, 497 (9th Cir. 1995). The court will not deny Sony the opportunity to allege facts that are necessary to test its claim on the merits. See Foman v. Davis, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."). Sony's motion to amend its third-party complaint is hereby GRANTED.

II.     Cross Motions for Summary Judgment

As a result of the settlement agreement between Phoenix and Sony, the only claim remaining is Sony's claim against Intervoice for breach of warranty against infringement. Because there is insufficient evidence with regard to any explicit agreement between the parties regarding indemnification, the court considers the application of an implied breach of warranty, as addressed by the parties in their summary judgment papers. U.C.C. § 2-312, as codified in Cal. Comm. Code § 2312. Specifically, the cross-motions for summary judgment raise two main questions: whether Phoenix's claim of patent infringement was a rightful claim under the breach of warranty provision of the U.C.C., section 2-312(3) as adopted in the California Commercial Code, section 2312(3), and whether Phoenix's claim stemmed from Edify's 2005 provision of version 9.5 software to Sony.

Sony argues the answer is yes to both questions and Intervoice is therefore liable for its breach of warranty. Intervoice argues that Sony's breach of warranty claim lacks a basis in fact or

10

law, because Phoenix's claim of patent infringement was not expressly directed to Edify's version 9.5 software.  Further, Intervoice argues that no rightful claim can exist thereto because Edify's software came with a license agreement that allegedly disclaims any warranty of non-infringement.  Last, Intervoice argues that because that software was provided for "free" under a service contract, Sony's claim cannot even give rise to a U.C.C. claim invoked by the sale of goods.  Intervoice also argues that even if the court finds the answer to be yes to both aforementioned questions, a customization exclusion of U.C.C. section 2-312(2) serves to absolve Intervoice from liability to Sony.

The court begins its analysis by examining the statutory basis of the sole claim in this case.  Sony's single cause of action against Intervoice is for breach of warranty of title and against infringement under U.C.C. section 2-312(3).  The California statutory enactment of this U.C.C. provision states:

> Unless otherwise agreed a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringement or the like but a buyer who furnishes specifications to the seller must hold the seller harmless against any such claim which arises out of compliance with the specifications.

Cal. Com. Code § 2312(3).

For a breach of warranty claim, a party must show the seller was a merchant regularly dealing in goods of the kind, the goods were subject to a rightful infringement claim of any third party upon delivery, the buyer did not furnish specifications to the seller, and the parties did not form another agreement.  See e.g., 84 Lumber Co. v. MRK Technologies, Ltd., 145 F. Supp.2d 675, 678-679 (W.D. Pa. 2001).

Intervoice argues that Sony's claim fails as a matter of law because there was no rightful claim of infringement when the IVR software was delivered in February 2002 because none of the patents-in-suit had issued at the time.  Intervoice argues that original software purchase is the only basis for Sony's claim against Intervoice because the U.C.C. does not apply to transactions involving services and any software subsequently provided by Edify to Sony was either incidental to the original software purchase or freely dispensed as part of a services contract.  Sony contends that its subsequent 2005 purchase of version 9.5 software to obtain continuing technical support for its

United States District Court

For the Northern District of California

11

United States District Court

For the Northern District of California

1  system was not incidental to the original software purchase but rather the support services were

2  incidental to the software update and that sale of goods provides an independent basis for a breach of

3  warranty claim.

4      Intervoice's contention that Sony expressly limited its breach of warranty claim to the

5  original software purchase in its third-party complaint has been obviated by the court's granting of

6  Sony's motion to amend its complaint.  Accordingly, the court considers whether a genuine issue of

7  material fact exists as to the breach of warranty claim as asserted in the presently amended third-

8  party complaint.

9      A.    Merchant Regularly Dealing in Goods of the Kind

10      Sony contends that it chose Edify based on Edify's experience with IVR systems using

11  speech recognition, and Edify's implementation of pre-existing software in various customer

12  applications.  Christopher Dec. ¶ 4, Marsh Dec., Exh. 14.  The parties do not dispute that Edify was

13  a seller regularly dealing in technology for IVR systems.  Accordingly, the court finds that

14  Edify/Intervoice is a merchant regularly dealing in goods of the kind.

15      B.    Delivered Goods Subject to Rightful Infringement Claim

16          (i)    Delivered Goods

17      A breach of warranty requires a rightful infringement claim at the time the goods are

18  delivered.  U.C.C. § 2-312(3); Cal. Com. Code § 2312(3).  As amendment is granted above, Sony's

19  second amended third-party complaint includes the 2001 software purchase and the 2005 upgrade of

20  version 9.5 software.  Sony now asserts the breach of warranty claim pertains to the delivery of the

21  2005 software (the upgraded version 9.5 software) and not the delivery of the original software.

22  While Sony contends a separate cause of action began with goods being delivered in 2005,

23  Intervoice maintains that the 2005 software upgrade was incidental to the original sale in 2001 (and

24  delivery in 2002) of software and secondary to Edify's ongoing services provided to Sony.

25      Both the California Commercial Code ("California Code") and the U.C.C. apply to the sale

26  of goods, i.e., "transactions in goods."  See Cal. Comm. Code § 2102; TK Power, Inc. v. Textron,

27  Inc., 433 F. Supp.2d 1058, 1061 (N.D. Cal. 2006).  The California Code defines "goods" as things

28  "which are movable at the time of identification to the contract for sale."  Cal. Comm. Code § 2105;

United States District Court

For the Northern District of California

1   TK Power, 433 F. Supp.2d at 1061.  When a transaction involves both goods and services, the courts

2   must determine which predominates by examining the essence of the agreement.  TK Power,

3   433 F. Supp.2d at 1061; RRX Industries, Inc. v. Lab-Con, Inc., 772 F.2d 543, 546 (9th Cir. 1985).

4   When one predominates, the other is merely incidental to the transaction.  Id.  The Ninth Circuit

5   Court applies a case-by-case analysis to determine whether software packages are contracts for the

6   sale of goods or services.  RRX, 772 F.2d at 546.

7       In this case, Sony paid Edify in 2005 for an annual maintenance program that included Edify

8   product upgrades, software patches, and maintenance for speech recognition functions in the IVR

9   system.  See Laloge Dec., Exh. 2.  The customer order invoice included the word "maintenance" and

10  component parts with unit prices.  Id.  Because the customer order schedule included both software

11  and professional services, the resulting contract entered into between Edify and Sony was a mixed

12  one involving the sale of both goods and services.  The parties do not dispute that Edify delivered to

13  Sony the 9.5 version software upgrade in 2005 and that the 2005 upgrade was provided at no extra

14  charge, beyond the renewal fee for the services contract.  Brummet Dec. ¶ 4; Laloge Dec., Exh. 1–4.

15  The dispute centers around the contractual provisions under which the software upgrade was

16  provided.  Intervoice asserts the software upgrade was merely incidental to the original software

17  contract, whereas Sony argues the 9.5 version could not be incidental to the 2001 contract because

18  Edify allegedly refused to continue to support the 8.0 version software and the 9.5 version software

19  required new hardware.  Intervoice argues that the upgrade could not invoke a warranty because it

20  was not a sale but was free of charge, whereas Sony argues that it was required to obtain the updated

21  software to continue receiving technical support and thus a separate warranty of freedom from

22  infringement was invoked by that "sale" of goods.

23      The court finds a genuine issue of material fact exists as to whether the 2005 software

24  delivery was incidental to the earlier software sale, or whether it was the primary transaction under

25  the ongoing contract for goods and services.  While case law tends to favor the application of the

26  U.C.C. for mixed goods and services contracts when the services serve to support the goods,

27  material factual issues remain here as to which purchase order controls the 2005 provision of

28  software that prevents a determination of whether the software predominates as the primary

United States District Court

For the Northern District of California

1   transaction in the relevant purchase order.  If the 2005 software upgrade was merely incidental to the

2   earlier sale of software, and there was no exchange of consideration for the upgrade, the

3   consequence would be that the four-year statute of limitations for a breach of warranty claim has

4   run.  See Cal. Com. Code § 2725(1).  However, if the software upgrade came with, and

5   predominated over, secondary maintenance and software support in the later service contract, the

6   statute of limitations will not have run on the breach of warranty claim because Sony's third-party

7   complaint was filed in February 2007, within four years after the 2005 upgrade.  The unresolved

8   factual disputes between the parties concerning the essence of the applicable contract serves to

9   establish triable issues of facts that preclude a grant of summary judgment.

10                      (ii)      Rightful Infringement Claim

11          In an effort to focus the ongoing litigation, the court considers the next issue of whether the

12  delivery of the 2005 software gives rise to a rightful infringement claim, as required to sustain

13  Sony's breach of warranty claim.  To that end, the court takes judicial notice of the fact that the 2005

14  upgrade was delivered to Sony after three of the four asserted Phoenix patents had issued.  Sony and

15  Intervoice disagree, however, as to whether Phoenix infringement claims gave rise to rightful claims

16  under section 2312(3) of the California Code.  Sony argues that Phoenix's infringement claims

17  barred Sony from manufacturing, importing or using its IVR system and required Sony to pay

18  compensatory damages.  Davison Dec., Exh. 6 (Phoenix's Original Complaint).  Sony asserts these

19  allegations put into doubt Sony's rightful use of the IVR system, and Sony had to pay for its defense

20  against Phoenix.  Sony argues that Phoenix's claims may be rightfully infringed by software alone,

21  including the 2005 upgrade provided by Edify to Sony.  Intervoice argues that there is no competent

22  summary judgment evidence that the Phoenix infringement claims were rightful and that they

23  applied to the Edify 2005 upgrade.  Intervoice asserts that Phoenix's infringement claims only apply

24  to Sony's IVR system, as stipulated by Phoenix, that the 2005 software upgrade was only a

25  component in the accused IVR system, and that Sony's defenses to Phoenix's infringement claims

26  demonstrate the lack of a rightful claim.

27          The court agrees with Sony that its mere assertions of non-infringement defenses do not

28  inform whether Phoenix had a rightful infringement claim for the purposes of Sony's breach of

14

United States District Court

For the Northern District of California

1   warranty claim.  As such, the court is not disturbed by Sony's assertions that the Sony IVR system

2   did not infringe and that Phoenix's patents were invalid.  As this court has already recognized, the

3   Federal Rules of Civil Procedure liberally permit pleading in the alternative.  See Fed. R. Civ. P.

4   8(a); Docket No. 99 (Memorandum and Order Re: Intervoice's Motion to Dismiss).  The ultimate

5   success of the Phoenix infringement claims need not weigh into the rightful claim determination,

6   particularly since Phoenix did not advance far enough in litigation to consider whether the 2005

7   software upgrade alone infringed.[3]  For this reason and others, the court disagrees with Intervoice

8   that Phoenix previously bound itself to a non-infringement position in this action.

9          The California Court of Appeal has recently affirmed that the ultimate success of

10  infringement claims is not a prerequisite to assert the warranty against infringement under section

11  2312(3) of the California Code.  In a case that came down shortly after the parties had completed

12  their summary judgment briefing, the California Court of Appeal, Fourth Division, recognized the

13  lack of case law defining a "rightful claim" of infringement, beyond stating it falls somewhere

14  between a purely frivolous claim and a claim that has been proven to show liability.  Pacific

15  Sunwear of California, Inc. v. Olaes Enters., Inc., 84 Cal. Rptr.3d 182, 187 (Cal. Ct. App. 2008),

16  citing 84 Lumber, 145 F. Supp.2d at 680.  Accordingly, on an issue of first impression, the

17  California court undertook a construction of the term.  Relying on the statutory scheme of the

18  California Code, the official commentary to U.C.C. section 2-312, and underlying public policy

19  rationales, the court held that a "rightful claim" under section 2312(3) is a "non-frivolous claim of

20  infringement that has any significant and adverse effect, through the prospect of litigation or

21  otherwise, on the buyer's ability to make use of the purchased goods."  Pacific Sunwear, 84 Cal.

22  Rptr.3d at 194.  The court reasoned that the section 2312(3) warranty covers "a broad scope of

23  infringement claims . . .  not limited to claims that ultimately will prove successful in litigation" and

24  that it "except[s] only frivolous claims that are completely devoid of merit."  Id. at 193.

25         In the patent context, the law is consistent that a "rightful claim" does not require a trial on

26  infringement claims to assess a warranty against infringement.  See, e.g., Cover v. Hydramatic

27  Packing Co., 83 F.3d 1390, 1394 (Fed. Cir. 1996).  In Cover, despite the settlement of the patentee's

28  infringement claims, an indemnification claim under a state codification of U.C.C. 2-312(3) survived

**United States District Court**

For the Northern District of California

1   between the alleged infringing manufacturer and the alleged infringing buyer. Id. at 1391–1392.

2   The Federal Circuit made clear that the patent laws (or settlements thereunder) do not preempt state

3   law claims imposing liability for breach of warranty against infringement under 2-312 of the U.C.C.

4   Id. at 1394.  Although the Cover court avoided ruling on the issue of whether a "rightful claim"

5   under the U.C.C. equates with patent liability, it stated that it would not endorse a policy that

6   eschews settlement by forcing parties to go to trial to discern whether a rightful claim exists under

7   federal patent law.

8          This court is faced with the issue, therefore, of determining as a matter of first impression,

9   how far a patent infringement case must proceed in order to establish a rightful infringement claim

10  for the purposes of a breach of warranty under section 2312(3) of the California Code.  Neither this

11  case nor any other has explicitly ruled on whether claim construction is required to assess a "rightful

12  claim" of patent infringement to sustain a breach of warranty claim, as Intervoice argues is the case

13  here.  Because Pacific Sunwear was a trademark infringement case, it did not address whether a

14  comparison of patents at issue with the accused products was necessary.  The California Court of

15  Appeal did, however, state that the mere filing of litigation will not necessarily establish that a claim

16  is rightful, reasoning that "were we to agree that the warranty is triggered by the filing of litigation

17  without any evaluative inquiry into the merits of the underlying claim itself, we would effectively be

18  reading the term 'rightful' out of the statute."  Pacific Sunwear, 84 Cal. Rptr.3d at 194 n.10.

19         The court holds that a "rightful claim" for a breach of warranty against infringement does not

20  carry any special significance simply because the claim underlying the original litigation was a

21  patent infringement claim.  A rightful infringement claim under section 2312(3) defines the legal

22  relationship between two contracting parties, neither of which involves a patentee in this case.  As

23  the Federal Circuit stated in Cover, the state law adoption of the U.C.C. breach of warranty against

24  infringement does not purport to provide exclusive property rights to "creations that would

25  otherwise remain unprotected under federal law." 83 F.3d at 1394.  Accordingly, there is no reason

26  to construe section 2312(3) of the California Code any differently for patent cases.  The court thus

27  disagrees with Intervoice that claim construction is required to maintain Sony's breach of warranty

28  claim.  This does not mean that Sony is correct that non-infringement and validity issues are

16

**United States District Court**
For the Northern District of California

1   irrelevant in sustaining a rightful claim.  Rather, the court finds that Sony has met its burden of

2   asserting a rightful claim, for the present purposes of surviving summary judgment, because

3   Phoenix's infringement claims had a significant and adverse effect on Sony's  ability to make use of

4   its IVR system.  Pacific Sunwear, 84 Cal. Rptr.3d at 194.  Although Phoenix and Sony entered into a

5   settlement early in the litigation, the case advanced beyond more than the mere filing of an action.

6   The settlement terms, provided to the court under seal, indicate that an evaluative inquiry was made

7   into the merits of the underlying claim itself.  Id.

8          The court finds, therefore, that Phoenix asserted a rightful claim against Sony.  What is less

9   clear, however, is whether the delivery of the 2005 software necessarily gave rise to the rightful

10  claim.  Phoenix's complaint alleges infringement by Sony's operation of its "IVR system using a

11  combination of telephony hardware and computer server hardware" where "[s]uch hardware uses

12  supporting software that includes speech recognition and natural language engines . . . ."  See

13  Davison Dec., Exh. 6 (Phoenix's Original Complaint), ¶ 10.  Although Sony asserts it was running

14  the 2005 software when Phoenix asserted its infringement claims against Sony, the determination of

15  whether that software was rightfully at issue remains unresolved based on the material factual issues

16  in dispute already noted.  The court will hold Sony to its burden of providing this link, between the

17  2005 upgrade and the rightful claim, to sustain its breach of warranty claim going forward.  For the

18  moment, the court simply finds that genuine issues of material fact exist with respect to

19  consideration of the 2005 software upgrade as a basis for Sony's breach of warranty claim which

20  precludes summary judgment for either party.

21         C.     Customization Exception — Buyer Furnishing Specifications to the Seller

22          Because the court grants Sony's motion to amend its complaint, the relevant issue is whether

23  the 2005 software update falls within the customization exception to Sony's breach of warranty

24  claim.  Cal. Com. Code § 2312(3).  The general principle of this exception is that a buyer who

25  furnishes specifications to the seller must hold the seller harmless against any claim that arises out of

26  compliance with those specifications.  The seller is not subject to a breach of warranty of

27  infringement, therefore, for a claim that stems from the seller's compliance with fulfilling the

28  buyer's specifications.  See U.C.C. § 2-312(3), as adopted in Cal. Com. Code § 2312(3).

United States District Court

For the Northern District of California

1          The Federal Circuit has affirmed that, absent an agreement to a different patent liability

2  provision, this exception from liability for infringement includes liability for patent infringement.  In

3  interpreting the Pennsylvania codification of U.C.C. section 2-312(3), the Federal Circuit concluded

4  that "[o]n its face, § 2312(c) shifts all costs, including attorney fees, to the buyer who furnishes a

5  seller with specifications that leads to a 'rightful claim' of infringement." Cover, 83 F.3d at 1394.

6  At least one other circuit court has applied this guidance to comparable state enactments of this

7  U.C.C. provision to affirm that a buyer who furnishes specifications must hold a seller harmless

8  against the costs and fees associated with the patent infringement actions.  See, e.g., Bonneau Co. v.

9  AG Industries, Inc. 116 F.3d 155, 159 (5th Cir. 1997) (distributor provided specifications to

10  manufacturer so, under section 2.312(c) of the Texas Business and Commerce Code, manufacturer

11  could not be held liable for infringement of patents held by third parties), citing Cover, 83 F.3d at

12  1394.

13          In this case, Intervoice argues the customization exception applies to exclude Intervoice from

14  liability because Sony furnished specifications to Edify that resulted in the infringement claims.

15  Sony argues it did not specify the customizations that resulted in the IVR system to infringe

16  Phoenix's patents.  With respect to the 2005 upgrade in particular, Intervoice acknowledges that it

17  has engaged in no discovery to date relating to whether the upgrade was independently customized

18  for Sony's IVR system.  The court agrees that numerous fact questions must be resolved before

19  determining whether this provision applies and reviews the facts to help the parties focus their

20  ongoing discovery efforts.

21          Edify and Sony agreed on the functional requirements of Sony's IVR system in general

22  terms, by specifying the functions that the Edify software would do, perform and support.  The

23  parties dispute who had control over the customization of Sony's IVR system to perform those

24  functions.  Sony alleges that it specified the desired capabilities for its IVR system, while Edify

25  controlled the IVR system implementation and indicated the hardware necessary for the IVR system.

26  See Christopher Dec. ¶¶ 5, 7.  Sony contends that Edify told Sony that Edify used pre-existing

27  software for IVR systems of other clients, that Edify could develop the applications to perform the

28  functional requirements Sony desired in its system, and that Edify thereby controlled the

implementation of Sony's IVR system.  Id.  Intervoice contends that Sony specified a speech

recognition application and that Sony was closely involved in the customization of the Sony IVR

system.  Intervoice points to the original 2002 document, in which Sony responds to Edify inquiries

to focus on the client solution, and contends that Sony's agreement as to the functional requirements

demonstrates Sony's high level of involvement with the actual specifications of Sony's IVR system.

See Waln Dec., Exh. 4 (NLSG Requirements Analysis for Sony); Marsh Dec., Exh. 2; Waln Dec.,

Exh. 3 (Application Requirements For Sony Electronics, Inc.).  Intervoice also asserts that Sony's

IVR system includes hardware that was not provided by Edify.  Sony asserts that Edify told Sony

which additional third-party hardware was required to run the IVR.

Courts have held that a buyer should not use a seller's component in a system that results in

infringement liability to a patentee, and then simply pass the liability to the seller of the single

component.  See, e.g., Chemtron v. Aqua Prods., Inc., 830 F. Supp. 314, 315 (E.D. Va. 1993).

Intervoice argues Sony cannot transfer liability from Sony's allegedly infringing IVR system to

Edify's allegedly non-infringing software.[4]  The court finds that Intervoice's reliance on case law

that holds the manufacturer of constituent parts not liable for infringement is misplaced, or perhaps

premature, because it is not clear at this stage whether Intervoice's role is limited to being a mere

seller of non-infringing component parts.  The numerous factual disparities and disputes between the

parties in their moving papers and supporting declarations make clear that material factual issues

exist as to whether Edify merely provided Sony with one component – its software – that was

customized by Sony along with other hardware and software, or whether Edify/Intervoice played a

more substantive role in the design and operation of Sony's IVR system.  Going forward, the parties

should focus their discovery efforts on ascertaining the extent to which the 2005 software upgrade

might fall within the customization exception, i.e., whether it merely patched the prior Edify

software, whether it was customized and configured for Sony's IVR system according to Sony's

requirements, whether it was a substantial component of that system, or whether Sony otherwise

specified how the software should be implemented in its system.

United States District Court

For the Northern District of California

1    D.    Unless Otherwise Agreed

2    Intervoice argues, for the first time on sur-reply, that a software license agreement governs

3    the 2005 upgrade which expressly disclaims any warranty against infringement.  Intervoice argues

4    that, as a result of this express agreement, the services contract is not subject to the U.C.C. and Sony

5    has no remaining breach of warranty claim.  On oral argument, however, Sony countered that it

6    recently found a software license agreement that applies to the 2005 upgrade, which is different from

7    the license agreement Intervoice cites, and which contains an express indemnification clause.  The

8    court does not address these "newly-discovered" documents at this time.  To the extent that further

9    discovery reveals any other "agreements," which undoubtedly should have been discovered earlier,

10   the parties may find themselves cut off by virtue of the court denying relation back.

11

12   CONCLUSION

13   For the foregoing reasons, Sony's Motion for Leave to Amend its Third-Party Complaint is

14   GRANTED; Sony's Motion Summary Judgment is DENIED; Intervoice's Motion for Summary

15   Judgment is DENIED.  Sony shall file its amended  third-party complaint within twenty (20) days of

16   the date of this order and Intervoice shall file its answer within twenty (20) days thereafter.[5]

17

18   IT IS SO ORDERED.

19

20   Dated: June 4, 2009                                       _____

21                                                             MARILYN HALL PATEL
                                                               United States District Court Judge
22                                                             Northern District of California

23

24

25

26

27

28

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ENDNOTES**

1.  Unless otherwise noted, the declarations cited herein refer to the declarations accompanying the parties' moving papers.

2.  The court has already ruled that some of the purported facts set forth in the stipulation remain in dispute.  See Memorandum & Order Re: Intervoice's Motion to Dismiss, Docket No. 99 at 6:6-10.  The question of whether the Intervoice technology is infringing is not something that can be "stipulated away" by Phoenix and Intervoice, to the detriment of Sony as third-party plaintiff.  This is not a *stipulation pour autrui*, which serves to benefit a third-party.  The court has already noted its concerns regarding the potential for collusion between Phoenix and Intervoice.  Phoenix is no longer a party to the instant action.  More fundamentally, Sony makes factual allegations related to Intervoice's products that are contrary to some of the Phoenix-Intervoice stipulations.  The court will not accept as facts, and bind Sony, to those stipulations that have not been agreed to by Sony.

3.  In Sony's motion for summary judgment, Sony compares Phoenix's patent claims and the version 9.5 of the Edify software (i.e., the software upgrade) in claim charts.  Sony asserts that at least some of Phoenix's claims are infringed by the software alone and notes that Phoenix's preliminary infringement contentions did not involve Sony's IVR system with the 9.5 version Edify software because Phoenix and Sony's action settled before Phoenix was provided documents relating to the Sony IVR system with the 9.5 version software.  In response, Intervoice objects to Sony's claim charts in Sony's motion for summary judgment as being different from the preliminary contentions that Sony served Intervoice in June 2008.  Intervoice presents its own claim charts comparing the Phoenix claims with the Sony IVR system to assert that Sony's IVR system did not infringe Phoenix's patents.  Intervoice also asserts that if Sony's breach of warranty claim survives summary judgment, full claim construction will be necessary to determine whether a rightful claim of infringement could have been made against the Edify software under the court's interpretation of the patent claims.

4.  Intervoice continues to rely on Phoenix and Intervoice's stipulation that Phoenix's infringement claims center around the Sony-customized IVR system as a whole, and that Phoenix does not believe that Edify's non-customized software in Sony's IVR system infringes Phoenix claims. As the court has already stated, Intervoice cannot rely on the Phoenix stipulation to specify that Sony's customized IVR is infringing and Edify's component software is non-infringing. See supra, endnote 2.

5.  This amended order makes only minor technical changes, no substantive changes, and adds dates by which the amended complaint shall be filed and answered.